## UNITED STATES OF AMERICA

## IN THE WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

Derek Antol, individually and as next friend of
DSA, a minor, DSAII, a minor, and Tryston Antol,
     Plaintiffs,

File No: 1:17-cv-613

v.

Adam Dent, Kate Strauss,
Casey Bringedahl, Casey Trucks,
Pete Kutches, and Western Michigan
Enforcement Team, a public
body organized under the laws of the
State of Michigan,
     Defendants,

Hon.
U.S. District Court Judge

_____/

J. Nicholas Bostic   P40653
Attorney for Plaintiffs
909 N. Washington Ave.
Lansing, MI 48906
(517) 706-0132

_____/

## COMPLAINT and JURY DEMAND

Plaintiffs, for their complaint, state:

1. This is a civil action seeking money damages and equitable relief for violations of the United States Constitution and federal statutes under 42 U.S.C. §1983 and state law claims.

2. Plaintiff Derek Antol is, and at all relevant times was, a competent adult and a resident of Muskegon County in the State of Michigan.

3. Plaintiff DSA and DSAII are minors (Date of Birth: xx/xx/2001, and xx/xx/1999, respectively), the biological children of Plaintiff Antol and at all relevant times were residents of Muskegon County in the State of Michigan.

4. Plaintiff Tryston Antol, was a minor at the time of the incident, has reached the age of majority and is the biological child of Plaintiff Antol and at all relevant times was a resident of Muskegon County in the State of Michigan.

5. Defendant Adam Dent is a police officer for the City of Muskegon assigned to the West Michigan Enforcement Team, his county of residence is unknown, and his place of conducting business is Muskegon County in the State of Michigan.

6. Defendant Kate Strauss is a police officer for the Michigan State Police, is assigned to the Western Michigan Enforcement Team, her county of residence is unknown, and her place of conducting business is Muskegon County in the State of Michigan.

7. Defendants Casey Bringedahl (officer), Casey Trucks (trooper), and Pete Kutches (officer) are officers assigned to WEMET, they conduct their business in Muskegon County in the State of Michigan, and their residences are unknown.

8. Defendant Western Michigan Enforcement Team (WEMET) is a public body and a legal entity organized under the laws of the state of Michigan and maintains its principle place of business in Ottawa County in the Western District of Michigan.

9. This cause of action arose in Muskegon County, Ottawa County, and in the Western District of Michigan.

10. At all times relevant to this matter, Defendants were acting under color of law.

11. The damages exceed $25,000.00.

## GENERAL ALLEGATIONS

12. Paragraphs 1-11 are incorporated herein by reference.

13. On July 9, 2014, Non-Parties Schmitz, Marshall, Vogt, Parolini, and Defendant Straus entered the public portion of premises known as Deuces Wild Smoke Shop at 885 East Apple Avenue, Muskegon, Michigan.

14. The building houses two entities and only the northern portion, Deuces Wild Smoke Shop, is open to the public with the southern portion being restricted to licensed medical

marihuana patients associated with licensed (state) caregiver Samantha Conklin.

15.   The southern portion has signs and locked doors prohibiting entry except when escorted by Ms. Conklin.

16.   The signs and locked doors in place in July 2014 were arranged so as to comply with developments of state law during 2013.

17.   Mr. Schmitz arrived with Michigan Department of Treasury Agent Gregory A. Parolini who was there ostensibly to conduct a tobacco tax inspection and claimed that he was with the 6th District Tobacco Tax Team.

18.   Schmitz, Marshall, Parolini, Vogt and Defendant Straus along with police officers demanded entry into the southern portion of the building.

19.   Ms. Conklin denied them entry and explained that it was not open to the public.

20.   Ms. Conklin was threatened with arrest if she did not consent.

21.   Ms. Conklin refused to grant consent and Schmitt, Marshall, Vogt and Defendant Straus but they walked past her and into the southern portion of the building.

22.   Plaintiff Antol also notified Schmitt, Marshall, Vogt and Defendant Straus and that they were not allowed to enter the southern portion of the building.

23.   Once present, they observed medical marihuana which was lawfully possessed under state law.

24.   Defendant Straus interviewed Plaintiff Antol while at 885 E. Apple Avenue on July 9, 2014 during which interview he indicated that he owned and operated Deuces Wild Smoke Shop and that it was a completely separate entity from the operations in the southern portion of the building.

25.   Plaintiff Antol also informed Defendant Straus of the location of two residential

3

properties one of which he was purchasing on land contract in his name and the other which he was purchasing on a land contract as co-signer with Ms. Conklin.

26.   Schmitz, Marshall and Defendant Straus then relayed their observations to Defendant Adam Dent and knew or should have known that there were two separate entities at 885 E. Apple Avenue and that the observations made by Schmitz, Marshall, and Defendant Straus were made while they were unlawfully present in the southern portion of the building.

27.   Defendant Dent prepared an affidavit for a search warrant and submitted it to a state court magistrate who authorized the search warrant for all three locations: 885 E. Apple Avenue, 423 Farr Road, and 1769 N. Green Creek Road.

28.   Defendant Dent failed to disclose that there were two separate business entities at 885 E. Apple and that Schmitz, Marshall, Vogt, and Defendant Straus unlawfully obtained their observations and information.

**COUNT I – UNLAWFUL SEIZURE BY DESTRUCTION**
(42 U.S.C. § 1983 - Fourth Amendment – DVR Recorder)

29.   Paragraphs 1-28 are incorporated herein by reference.

30.   On July 9, 2014, Defendant Dent seized surveillance/security equipment and a DVR (among other items) at E. Apple from Plaintiff Antol.

31.   Plaintiff Antol had lawful possession of the seized items.

32.   Plaintiff Antol did not give consent for the seizure of the listed items.

33.   Defendant Dent had no probable cause to seize the listed items.

34.   Defendant Dent or someone on his behalf provided Plaintiff Antol with a Notice of Seizure and Intent to Forfeit pursuant to MCL 333.7523.

35.   Plaintiff Antol posted a bond pursuant to MCL 3337523(1)(c) for the seized items.

36.   Defendant Dent turned over possession of the seized items to Defendant Fias and WEMET.

37.   In July and August 2014, the Muskegon County Prosecutor's Office on behalf of WEMET, instituted three civil forfeiture actions in the Muskegon County Circuit Court (14-49627-CF, 14-49628-CF and 14-49638-CF) but the surveillance/security equipment and DVR were not listed as items to be seized.

38.   The three civil forfeiture actions were resolved by forfeiting a portion of a cash seizure to WEMET and an order entered in each file which contained the following statement: "All personal property seized from Claimant and Claimant's minor children that does not contain THC shall be returned to Claimant."

39.   The orders were entered on June 29, 2015 (14-49627-CF) and June 22, 2015 (14-49628-CF and 14-49638-CF).

40.   The orders in 49628 and 49638 were served on counsel for WEMET on June 23, 2015.

41.   The order in 49627 was served on counsel for WEMET on July 8, 2015.

42.   On July 22, 2015, counsel for Plaintiff Antol sent the Assistant Prosecutor (Mr. Roberts) an e-mail asking him to have WEMET expedite return of the property, seized cash, and forfeiture bonds.

43.   On August 2, 2015, counsel for Plaintiff Antol sent an e-mail to the Assistant Prosecutor (Mr. Roberts) to follow up and expedite satisfaction of those judgments.

44.   Mr. Roberts acknowledged and responded on August 4, 2015 indicating that he had forwarded the orders to WEMET to process.

45.   On August 26, 2015, WEMET's team leader Andy Fias conducted an audit and confirmed the location of the DVR in his storage room.

46.     On September 8, 2015, WEMET notified counsel that checks were ready for Plaintiff to pick up representing payment of the seized cash.

47.     On September 9, 2015, counsel for Plaintiff Antol sent an e-mail to Mr. Roberts again seeking full compliance because the bond money return was still outstanding.

48.      On September 9, 2015, counsel for WEMET acknowledged and replied.

49.     On or about September 10, 2015, counsel for WEMET indicated that some property would not be returned because WEMET wanted to retain some of the property for the duration of the appeal period.

50.     As of September 14, 2015, Plaintiff Antol had received all property back except the DVR and security cameras and the refund of the forfeiture bond money was to occur on September 11, 2015.

51.     On September 18, 2015, the DVR only was authorized for destruction by the Michigan State Police and WEMET.

52.     As of September 23, 2015, WEMET had still failed to return the bond forfeiture payments to Plaintiff Antol.

53.     On November 9, 2015, counsel for Plaintiff Antol sent another e-mail once again asking that all property be returned (DVR and items considered "evidence").

54.     On December 8, 2015, the DVR only was destroyed by Defendant Straus by being thrown into an incinerator.

55.     On February 29, 2016, counsel for Plaintiff Antol sent a letter to the County Prosecutor, D.J. Hilson, warning him that he was in contempt of court for failure to comply with the orders in the civil forfeiture case and the criminal plea agreement.

56.     On March 21, 2016, Lt. Andy Fias finally admitted to counsel for Plaintiff Antol that the DVR had been destroyed.

57.     Lt. Andy Fias asserted that the reason for the destruction was because it contained images of undercover officers.

58.     The DVR was not contraband.

59.     No property interest was ever obtained by the Michigan State Police, WEMET, or any Defendant in the DVR.

60.     No statute or court order authorized the retention of the DVR.

61.     No statute or court order authorized the destruction of the DVR.

62.     Plaintiff Antol did not consent to the destruction of the DVR.

63.     Defendants WEMET, and Straus had knowledge of the court orders to return the DVR because they returned all other personal property except the DVR and security cameras which were seized at the same time as those items.

64.     Defendants Straus, and WEMET's destruction of the DVR was deliberate and intentional.

65.     On December 8, 2015, it was clearly established that the physical destruction of personal property was a seizure that had to be based on a valid and judicially issued warrant or otherwise mandated by law.

66.     The destruction of the DVR on December 8, 2015 was unreasonable and violated the Fourth Amendment privacy rights of Plaintiff Antol.

67.     No reasonably trained and experienced police officer would have believed that the destruction of the DVR on December 8, 2015 was lawful.

68.     Plaintiff Antol was damaged as a result of the unlawful seizure by destruction of the DVR in that he suffered the loss of the protection of the Fourth Amendment to the United States

Constitution, the loss of value of the item, emotional distress, anxiety, and mental anguish and interruption to his lawful business operations.

WHEREFORE, Plaintiff Antol requests that this Court enter judgment in favor of Plaintiff Antol and against Defendants Straus, and WEMET in an amount not less than $25,000.00.

**COUNT II – UNLAWFUL SEARCH – NO WARRANT**
(42 U.S.C. § 1983 - Fourth Amendment – Greencreek – initial entry)

69.  Paragraphs 1-68 are incorporated herein by reference.

70.  On July 9, 2014, Defendants Bringedahl, Trucks and Kutches unlawfully entered into the Green Creek address before the search warrant was obtained by Defendant Dent without a warrant, without probable cause and without an exception to the warrant requirement.

71.  In gaining entry, Defendants Bringedahl, Trucks, and Kutchess broke down a closed door causing damage without a warrant, without probable cause, and without an exception to the warrant requirement.

72.  Plaintiff DSA was lawfully present at the time of the initial entry into the Green Creek address.

73.  The initial entry and search of the Green Creek address on July 9, 2014 violated the rights to privacy guaranteed by the Fourth Amendment to the United States Constitution held by Plaintiffs DSA, DSAII, and Tryston Antol.

74.  On July 9, 2014, it was clearly established that a search had to be based on a valid and judicially issued warrant or supported by probable cause and a valid, recognized exception to the warrant requirement.

75.  No reasonably trained and experienced police officer would have believed that the entry and search of the Green Creek address on July 9, 2014 was lawful.

8

76.   Plaintiffs DSA, DSAII, and Tryston Antol were damaged as a result of the initial entry and unlawful search of the Green Creek address in that they suffered the loss of the protection of the Fourth Amendment to the United States Constitution and significant emotional distress due to the occupants being minors, and damage to the building.

WHEREFORE, Plaintiffs DSA, DSAII, and Tryston Antol request that this Court enter judgment in favor of Plaintiffs and against Defendants Bringedahl, Trucks, and Kutches in an amount not less than $25,000.00 each.

### COUNT III – UNLAWFUL SEARCH  (42 U.S.C. §1983)
(Fourth Amendment – invalid warrant – N. Greencreek)

77.   Paragraphs 1 through 76 above are incorporated herein by reference.

78.   On July 9, 2014, Defendant Dent swore to the facts in an affidavit requesting a search warrant for the residential address of 1769 N. Green Creek.

79.   The Green Creek address was also used as the residence of Plaintiffs DSA, DSAII, minors, and Tryston Antol.

80.   Defendant Dent's affidavit failed to establish any nexus between the observations at 885 E. Apple and the Green Creek address.

81.   Defendant Dent's affidavit falsely alleges and suggests that Plaintiff Antol's business operated in the southern portion of the building at 885 E. Apple.

82.   Defendant Dent's affidavit utilizes the information unlawfully obtained by Schmitz, Marshall, Vogt, and Defendant Straus but fails to inform the state magistrate that Defendant Dent knew or should have known that the information was unlawfully acquired.

83.   The allegations in the affidavit fail to establish probable cause that evidence of any criminal activity was ongoing on July 9, 2014 at the Green Creek address.

84.  Police officers certified in the State of Michigan are not empowered to enforce federal law.

85.  The search of the Greencreek address caused by Defendant Dent and executed by Defendants Bringedahl, Trucks, Kutches, and Strauss, on July 9, 2014 was without a valid warrant supported by probable cause.

86.  The search of the Greencreek address caused by Defendant Dent and executed by Defendants Bringedahl, Trucks, Kutches, and Strauss on July 9, 2014 was without probable cause.

87.  The search of the Greencreek address caused by Defendant Dent and executed by Defendants Bringedahl, Trucks, Kutches, and Strauss on July 9, 2014 was without any valid exception to the warrant requirement of the Fourth Amendment.

88.  The search of the Greencreek address caused by Defendant Dent and executed by Defendants Bringedahl, Trucks, Kutches, and Strauss on July 9, 2014 was unreasonable.

89.  The search of the Greencreek address caused by Defendant Dent and executed by Defendants Bringedahl, Trucks, Kutches, and Strauss on July 9, 2014 violated Plaintiff DSA's, DSAII's, and Tryston Antol's rights to privacy guaranteed by the Fourth Amendment to the United States Constitution.

90.  On July 9, 2014, it was clearly established that a search had to be based on a valid and judicially issued warrant or support by probable cause and a valid, recognized exception to the warrant requirement.

91.  No reasonably trained and experienced police officer would have relied on the search warrant used on July 9, 2014 to search the Greencreek address.

92.  No reasonably trained and experienced police officer would have believed that the search of the Green Creek address caused by Defendant Dent and executed by Defendants Bringedahl, Trucks, Kutches, and Strauss on July 9, 2014 was lawful.

93.  Plaintiffs DSA, DSAII, and Tryston Antol were damaged as a result of the unlawful search of the Greencreek address in that they suffered the loss of the protection of the Fourth Amendment to the United States Constitution, significant emotional distress, the seizure of their property, and damage to the closed door.

WHEREFORE, Plaintiffs DSA, DSAII, and Tryston request that this Court enter judgment in favor of Plaintiffs and against Defendants Bringedahl, Trucks, Kutches, and Strauss in an amount not less than $25,000.00 each.

## COUNT IV - UNREASONABLE SEIZURE/FALSE ARREST
(42 U.S.C. § 1983 - Fourth Amendment DSA

94.  Plaintiff hereby incorporates paragraphs 1 through 93 above by reference.

95.  Plaintiff DSA was in his dwelling on July 9, 2014 when Defendants Bringedahl, Trucks, Kutches, and Strauss executed the unlawfully obtained warrant.

96.  Defendants Bringedahl, Trucks, Kutches, and Strauss, pursuant to the unlawful warrant obtained by Defendant Dent, ordered Plaintiff DSA from his bedroom at gunpoint, restricted his movements, and detained him while waiting for the search warrant to arrive.

97.  The Fourth Amendment of the U.S. Constitution protects against unreasonable seizures of persons.

98.   Defendants Bringedahl, Trucks, Kutches, and Strauss may only detain a citizen when there is a reasonable, articulable suspicion that criminal activity has occurred or is occurring.

99.  Defendants Bringedahl, Trucks, Kutches, and Strauss may only arrest or cause the arrest of someone with a warrant or probable cause.

100.  Defendants Bringedahl, Trucks, Kutches, and Strauss did not have a reasonable, articulable suspicion or probable cause to detain or arrest Plaintiff DSA.

101.  On July 9, 2014, Defendants Bringedahl, Trucks, Kutches, and Strauss caused the unlawful detention or arrest of Plaintiff DSA by ordering him to leave his bedroom and restricting his movements while waiting for and executing the search warrant knowing that a reasonable, articulable suspicion or probable cause were lacking.

102.  As of July 9, 2014, it was clearly established law that law enforcement officers who detain, arrest or cause the arrest of citizens without probable cause are violating the Fourth Amendment of the United States Constitution.

103.  On or about July 9, 2014, no reasonably trained law enforcement officer would have believed that probable cause for an arrest warrant existed under the circumstances in this case.

104.  The conduct of Defendants Bringedahl, Trucks, Kutches, and Strauss caused Plaintiff DSA to be deprived of his liberty.

105. Plaintiff DSA was damaged by the conduct of Defendants Bringedahl, Trucks, Kutches, and Strauss in that Plaintiff DSA suffered stress, anxiety, embarrassment, humiliation, and loss of liberty.

WHEREFORE, Plaintiff DSA requests that this Court enter judgment in favor of Plaintiff DSA and against Defendants Bringedahl, Trucks, Kutches, and Strauss in an amount not less than $25,000.00 each.

## COUNT V UNREASONABLE SEIZURE (42 U.S.C. § 1983)
### (Fourth Amendment – Greencreek - TAA)

106. Paragraphs 1 through 106 above are incorporated herein by reference.

107. Defendant Dent initially released Tryston Antol to his biological mother.

108. Defendant Dent then realized that Plaintiff Antol had used Tryston's cell phone to record

portions of the unlawful conduct of the Defendants.

109. Defendant Dent then ordered Plaintiff to produce the cellular telephone belonging to Plaintiff Tryston.

110. Plaintiff explained that the child had been released to his mother.

111. Defendant Dent then threatened Plaintiff Antol by making a statement to the effect of "if you think I'm a prick now, if you don't get that phone over here you'll regret what I'm going to rdo to your business."

112. Plaintiff then convinced his ex-wife to return with the child and the phone.

113. Defendant Dent then seized an IPhone from Tryston Antol.

114. Plaintiff Tryston Antol had lawful possession of the seized phone.

115. Plaintiff Tryston Antol did not give consent for the seizure of the phone.

116. Defendant Dent had no probable cause to seize the phone.

117. Defendant Dent had no court order authorizing the seizure of the phone.

118. Defendant Dent's seizure of the phone was without any valid exception to the warrant requirement of the Fourth Amendment.

119. Defendant Dent's seizure of the phone on July 9, 2014 was unreasonable.

120. Defendant Dent's seizure of the phone on July 9, 2014 violated Tryston Antol's rights to privacy guaranteed by the Fourth Amendment to the United States Constitution.

121. On July 9, 2014, it was clearly established that a seizure had to be based on a valid and judicially issued warrant or supported by probable cause and a valid, recognized exception to the warrant requirement.

122. No reasonably trained and experienced police officer would have believed that the seizure of the phone on July 9, 2014 was lawful.

123. Tryston Antol was damaged as a result of the unlawful seizure of the phone in that he suffered the loss of the protection of the Fourth Amendment to the United States Constitution, the loss of value of the items, significant emotional distress, anxiety, and mental anguish.

WHEREFORE, Tryston Antol requests that this Court enter judgment in favor of Plaintiff Tryston Antol and against Defendant Dent in an amount not less than $25,000.00.

## COUNT VI – FALSE ARREST
State Law – Plaintiff DSA

124. Paragraphs 1through 123 above are incorporated herein by reference.

125. Defendants Bringedahl, Trucks, Kutches, and Strauss did not have probable cause to arrest or detain Plaintiff DSA on July 9, 2014.

126. Defendants Bringedahl, Trucks, Kutches, and Strauss did not have a warrant to arrest or detain Plaintiff DSA on July 9, 2014.

127. The arrest or detention caused by Defendants Bringedahl, Trucks, Kutches, and Strauss was unreasonable and in violation of the Fourth Amendment to the United States Constitution.

128. As a result of the illegal arrest or detention, Plaintiff DSA suffered humiliation, anxiety, and loss of liberty, and emotional distress.

WHEREFORE, Plaintiff DSA requests this Honorable Court enter judgment for Plaintiff DSA and against Defendants Bringedahl, Trucks, Kutches, and Strauss in an amount not less than $25,000.00 each.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that judgment enter for Plaintiffs and

1. against all Defendants as specified in an amount not less than as stated and proven in the individual counts as asserted above;

2. against all individual Defendants for exemplary damages in an amount not less than

$25,000.00 each;

3. against all Defendants for attorney fees as allowed by 42 USC §1988;

4. against all Defendants for interest on the award to the date of filing of this complaint;

5. granting such other relief as allowed by law.

VERIFICATION AND SIGNATURE BY PARTY:

7-6-17
Date

_____
Derek Antol, individually and as next
friend for DSA and DSA II
Plaintiffs

9-6-17
Date

_____
Tryston Antol

SIGNATURE BY ATTORNEY:

Date

/s/ J. Nicholas Bostic
J. Nicholas Bostic P40653
Attorney for Plaintiffs

**JURY DEMAND**

Plaintiffs hereby demand trial by jury on all counts.

/s/ J. Nicholas Bostic
J. Nicholas Bostic P40653
Attorney for Plaintiffs
909 N. Washington Ave.
Lansing, MI 48906

15

Scanned by CamScanner