**EXHIBIT 2**

## Page 1

UNITED STATES OF AMERICA
IN THE WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

DEREK ANTOL, individually and as
Next Friend of DSA, a minor, DSAII,
a minor, and TRYSTON ANTOL,

    Plaintiffs,    Case No. 1:17-cv-613

-v-    HON. JANET T. NEFF

ADAM DENT, KATE STRAUS, CASEY
BRINGEDAHL, CASEY TRUCKS, PETE
KUTCHES, and WESTERN MICHIGAN
ENFORCEMENT TEAM, a public body
organized under the laws of the
State of Michigan,

    Defendants.
_____/

DEPOSITION OF CASEY BRINGEDAHL

Taken by the Plaintiffs on the 10th day of May, 2018,

at the offices of Cummings, McClorey, Davis & Acho, 2851

Charlevoix Drive, Suite 327, Grand Rapids, Michigan, at

3:57 p.m.

APPEARANCES:

For the Plaintiffs:    MR. J. NICHOLAS BOSTIC (P40653)
    909 N. Washington Avenue
    Lansing, MI 48906
    (517) 706-0132

For the Defendant    MR. ADAM P. SADOWSKI (P73864)
Casey Trucks:    MR. PATRICK MYERS (P81444)
    525 W. Ottawa Street
    P.O. Box 30736
    Lansing, MI 48909
    (517) 373-6434

## Page 2

For the Defendants    MR. CURT A. BENSON (P38891)
Straus, Bringedahl &    MR. BRADLEY WANALUNAS (P    )
Kutches:    2851 Charlevoix Drive, Suite 327
    Grand Rapids, MI 49546
    (616) 975-7470

Recorded by:    Denise L. Jamba, CER 0786
    Certified Electronic Recorder

## Page 3

TABLE OF CONTENTS

    PAGE

CASEY BRINGEDAHL:

Direct Examination by Mr. Bostic    5

EXHIITS:    IDENTIFIED
None.

## Page 4

1    Grand Rapids, Michigan
2    Thursday, May 10, 2018 - 3:57 p.m.
3    CASEY BRINGEDAHL
4    HAVING BEEN CALLED BY THE PLAINTIFFS AND SWORN:
5    MR. BOSTIC: Please state your name for the
6  record.
7    THE WITNESS: Casey Bringedahl.
8    MR. BOSTIC: Mr. Bringedahl, my name is Nick
9  Bostic and I represent Derek Antol and others in Antol
10  versus Dent and others, Western District of Michigan File
11  1:17-cv-613. Today is the time and date set for your
12  deposition, which will be used for all purposes as allowed
13  by the Michigan Rules — I'm sorry, Federal Rules of Civil
14  Procedure and the Federal Court Rules.
15    Counsel, any objection as to notice?
16    MR. BENSON: No.
17    MR. SADOWSKI: No.
18    MR. BOSTIC: Appearances for the record, please.
19    MR. BENSON: Curt Benson here with Sergeant
20  Bringedahl.
21    MR. WANALUNAS: Brad Wanalunas representing
22  Sergeant Bringedahl.
23    MR. SADOWSKI: Adam Sadowski on behalf of
24  Defendant Trucks.
25    MR. MYERS: Patrick Myers on behalf of Defendant

1 (Pages 1 to 4)

Electronically signed by Denise Jamba (201-416-670-8803) Major County Court Reporters    e98bfe9f-eeae-4d86-9810-60e245ebd151
248-608-9250

Page 13

1   a buy or something like that? You -- you log almost every
2   movement, correct?
3   A   Yes.
4   Q   But when you go to do surveillance on a static location
5   just waiting for a warrant, do you typically do the same
6   type of surveillance notes?
7   A   Not generally. In this case, any -- any movement that I
8   saw was documented in the report. I didn't see the need
9   at that point to prepare any surveillance notes.
10  Q   But -- but you didn't document the time?
11  A   I don't know that. It might be in my report if I can
12  reference that.
13  Q   Let's check and see.
14  A   Okay. So according to my report, I began surveilling the
15  residence at approximately 13:50 hours. At approximately
16  14:15 hours, I observed the subject walk out of the house.
17  Q   And then what did you do after you made that observation?
18  A   I contacted Detective Sergeant Straus and advised her that
19  we had someone that was in and out of the residence.
20  Q   So did you say you detected movement at 14:15?
21  A   Correct.
22  Q   And then after talking to her, what happened?
23  A   It was requested that I go make contact with that subject,
24  identify him, find out what he's doing at the residence.
25  Obviously, at that point I was familiar with Ms. Conklin

Page 14

1   and Mr. Antol, knew who they were. It wasn't either one
2   of them, so I requested that Trooper Trucks go and make
3   contact with the subject.
4   Q   When he came out of the pole barn, where did he go?
5   A   At -- at that point, we had just contacted him. He
6   just -- he made -- by the time it took me to -- to, you
7   know, make the phone call and discuss what we were going
8   to do, he had -- he had kind of walked from the house to
9   the pole barn, you know, and to his car. He was just kind
10  of -- you know, the guy ended up being an electrician. He
11  was there probably getting tools out of his car, so on and
12  so forth.
13  Q   Were you able to see exactly what he was doing when he was
14  at his car?
15  A   I -- I couldn't, no.
16  Q   Was his car the car that you had mentioned earlier?
17  A   Yes.
18  Q   Okay. From your observations of him before Trooper Trucks
19  arrives, did you have any indication that he's aware of
20  your presence?
21  A   No.
22  Q   He did not appear to be aware of your presence?
23  A   No.
24  Q   So does Trooper Trucks then pull up at your request?
25  A   Yes.

Page 15

1   Q   In a marked unit?
2   A   Correct.
3   Q   Did this person that you're observing appear to be a minor
4   or an adult?
5   A   He was an adult.
6   Q   You could tell that from your surveillance position?
7   A   Yeah.
8   Q   Were you -- had you been informed that there was a minor
9   inside the home asleep?
10  A   I had not.
11  Q   Did you have any information given to you about who might
12  or might not be there?
13  A   I had none.
14  Q   So your instructions were to go watch the house pending a
15  warrant?
16  A   Correct.
17  Q   When Trooper Trucks pulled up, what did you observe?
18  A   I pulled up right behind him. We made contact with the
19  subject, identified him as Michael Tozer. I then took a
20  statement in regards to why he was -- he was at the home.
21  Q   What did he tell you?
22  A   He told me he was an electrician running a 220 line back
23  to the pole barn.
24  Q   Did you ask him about anyone else being in the home?
25  A   I did and he stated that he wasn't sure.

Page 16

1   Q   Did he take you around and show you the door that he had
2   been using to get into the building or did you determine
3   whether he had been in the dwelling itself?
4   A   He admitted that he had been. He had accessed through the
5   back door into the basement.
6   Q   Did he have access into the living portion?
7   A   I -- I don't know.
8   Q   After he told you that, what did you do?
9   A   I contacted Detective Sergeant Straus and advised her of
10  my findings.
11  Q   And then what happened?
12  A   She requested that officers enter the home to secure the
13  residence prior to the search warrant.
14  Q   Did Mr. Tozer indicate to you that he had spoken to
15  anybody inside the house?
16  A   He -- no. I asked several times if he thought anybody was
17  inside. He says, "I'm not sure." He says, "I just went
18  into the basement."
19  Q   Where is the marked patrol car parked at this point?
20  A   In the driveway.
21  Q   So what did you do after Sergeant Straus made her request?
22  A   I stayed outside with Mr. Tozer while Detective Kutches
23  and Trooper Trucks went inside and secured the residence.
24  Q   Did you -- were you able to see them at all while they
25  were inside the residence?

# EXHIBIT 2

# EXHIBIT 1