### UNITED STATES OF AMERICA

### IN THE WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

Derek Antol, individually and as next friend of       File No: 1:17-cv-613
DSAII, a minor, and Derek S. Antol, Jr., and
Tryston Antol,
      Plaintiffs,

v.

Adam Dent, Kate Straus,                    Hon. Janet T. Neff
Casey Bringedahl, Casey Trucks,         U.S. District Court Judge
Pete Kutches, and Western Michigan
Enforcement Team, a public
body organized under the laws of the
State of Michigan,
      Defendants,

_____/

| | |
|---|---|
| J. Nicholas Bostic (P40653) | Allan C. Vander Laan (P33893) |
| Attorney for Plaintiffs | Curt A. Benson (P38891) |
| 909 N. Washington Ave. | Cummings, McClorey, Davis & Acho |
| Lansing MI 48906 | Attorneys for Defendants Adam Dent, |
| 517-706-0132 | Kate Straus, Casey Bringedahl & Peter Kutches |
| | 2851 Charlevoix Dr., S.E. - Suite 327 |
| Adam P. Sadowski P73864 | Grand Rapids MI 49546 |
| Assistant Attorney General | 616-975-7470 |
| Michigan Dep't of Attorney General | avanderlaan@cmda-law.com |
| Attorney for Defendant Casey Trucks | |
| 525 W. Ottawa St., P.O. Box 30736 | |
| Lansing, MI 48909 | |
| (517) 373-6434 | |

_____/

### PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS DENT, STRAUS, BRINGEDAHL, AND KUTCHES

Plaintiffs, for their opposition, state:

1. Defendants did not prepare a motion per se to accompany their brief.

2. There are genuine factual disputes on material facts such as the reasonableness of

Defendant Straus' decision to destroy the DVR in spite of the existence of state court orders and

constitutional property rights.

3. There are genuine factual disputes as to the exigency claimed to justify entry into the curtilage and dwelling (including who actually entered) and who made the decision.

4. There are factual disputes concerning whether probable cause existed for the search warrant in light of Defendant Dent's material omissions and the staleness of the 2013 purchases (as well as their legality).

5. There are factual disputes concerning whether Tryston's telephone was turned over based on threats by Defendant Dent and whether it was within the scope of the warrant.

When viewed in a light most favorable to Plaintiff to resolve some of these, constitutional violations have been established in Counts 1 through 5. Defendants are not entitled to qualified immunity due to the initial unconstitutional entry into the southern portion of the building, the violation of a court order, and material omissions from the search warrant affidavit.

RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request this Honorable Court deny the motion for summary judgment filed by Defendants Dent, Straus, Bringedahl and Kutches and allow these claims to proceed to trial.

10/10/2018

*/s/ J. Nicholas Bostic*
J. Nicholas Bostic P40653
Attorney for Plaintiffs

## UNITED STATES OF AMERICA

## IN THE WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

Derek Antol, individually and as next friend of        File No: 1:17-cv-613
DSAII, a minor, and Derek S. Antol, Jr., and
Tryston Antol,
         Plaintiffs,

v.

Adam Dent, Kate Straus,                                Hon. Janet T. Neff
Casey Bringedahl, Casey Trucks,                        U.S. District Court Judge
Pete Kutches, and Western Michigan
Enforcement Team, a public
body organized under the laws of the
State of Michigan,
         Defendants,
_____/

## BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS DENT, STRAUS, BRINGEDAHL, AND KUTCHES

### TABLE OF CONTENTS

Table of authorities ............................................................................................... v

Statement of issues presented .............................................................................. x

Controlling or most appropriate authority ........................................................ xiI

Statement of facts................................................................................................... 1

Argument ................................................................................................................ 1

I.  The seizure by destruction of the DVR was unreasonable ................................ 1

II. The entry into the curtilage and dwelling was not based on an exigent
circumstance or probable cause ............................................................................ 4

III. The search warrant was invalid due to the unconstitutionally gather
information and staleness as well as material omissions. ..................................... 10

IV. DSA II was seized and arrested based on the totality of circumstances.......................... 21

V. Tryston Antol's phone was not within the scope of the search warrant ........................... 23

VI. DSA II was arrested under state law without probable cause ........................................ 24

VII. Qualified immunity ................................................................................................. 25

Relief requested ............................................................................................................ 25

Index of Exhibits .......................................................................................................... 26

# TABLE OF AUTHORITIES

CONSTITUTIONAL PROVISIONS

U.S. Const., Amend IV ..................................................................................1, 2, 4, 10, 21

U.S. SUPREME COURT CASES

*Arizona v. Hicks*, 480 U.S. 321; 107 S.Ct. 1149; 94 L.Ed.2d 347 (1987) ...............................14

*Brigham City v. Stuart*, 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).....................8

*Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523,
    87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) ...............................................................................11

*Chapman v. United States*, 365 U.S. 610; 81 S.Ct. 776;
    5 L.Ed.2d 828 (1961) .........................................................................................................14

*City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000).............2

*City of Los Angeles, Calif. v. Patel*, __ U.S. __, 135 S.Ct. 2443,
    192 L.Ed.2d 435 (2015) ...............................................................................................16, 17

*Donovan v. Dewey*, 452 U.S. 594; 101 S.Ct. 2534; 69 L.Ed.2d 262 (1981) .....................16, 17

*Florida v. Jardines*, 569 US 1, 133 S. Ct. 1409, 185 LEd2d 495 (2013) ...................................4

*Franks v. Delaware*, 438 U.S. 154; 98 S.Ct. 2674; 57 L.Ed.2d 667 (1978).....................18, 19

*Georgia v. Randolph,* 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) .........................9

*G.M. Leasing Corp v. United States*, 429 US 338; 97 SCt 619; 50 LEd2d 530 (1977) ...........20

*Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) .....................23, 25

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ........................25

*Hope v. Pelzer*, 536 US 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ...................................12

*Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)........................23

*Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507,
    19 L.Ed.2d 576 (1967)..........................................................................................................4

*Kentucky v. King*, 563 U.S. 452, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) ..........................8, 9

*Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) ...................................................17

*Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) .......................21

*Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)................................8

*Kentucky v. King*, 563 U.S. 452, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) ..............................8

*Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).........................................7

*Rugendorf v United States*, 376 US 528; 84 SCt 825; 11 LEed2d 887 (1964) .........................19

*See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967)...........................11

*Sgro v United States*, 187 US 206; 53 SCt 138; 77 LEd 260 (1932).......................................15

*Silverman v. United States*, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) .......................4

*Soldal v. Cook County*, 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992)....................2, 25

*United States v. Biswell*, 406 U.S. 311; 92 S.Ct. 1593; 32 L.Ed.2d 87 (1972)................16, 17

*United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).........................................................10

*United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).........................................................2

*United States v. Leon*, 468 U.S. 897; 104 S.Ct. 3405; 82 L.Ed.2d 677 (1984) .......................19

*Welsh v. Wisconsin,* 466 U.S. 740, 752, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)................8, 9

*West v. Atkins*, 487 U.S. 42; 108 S.Ct. 2250; 101 L.Ed.2d 40 (1988) ....................................18

*Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560; 91 S.Ct. 1031; 28 L.Ed.2d 306 (1971).........................................................14

SIXTH CIRCUIT CASES

*Allinder v State of Ohio*, 808 F2d 1180 (CA6 1987) ............................................................17

*Brown v. Lewis*, 779 F.3d 401 (6th Cir. 2015).........................................................25

*Estate of Dietrich v. Burrows,* 167 F.3d 1007 (6th Cir.1999) ................................................22

*Ewolski v. City of Brunswick*, 287 F.3d 492 (6th Cir.2002) ............................................8, 9

*Fridley v. Horrighs*, 291 F.3d 867 (6th Cir. 2002) .....................................................21

*Gardenhire v. Schubert*, 205 F. 3d 303 (6th Cir. 2000) ...............................................22

*Hale v. Kart*, 396 F.3d 721 (6th Cir. 2005)...............................................................18

*Hays v. Jefferson County, Ky.*, 668 F.2d 869 (6th Cir. 1982)......................................7

*Hill v. McIntyre*, 884 F.2d 271 (6th Cir. 1989)..........................................................2

*Houston v. Clark County Sheriff Deputy John Does 1–5*, 174 F.3d 809 (6th Cir.1999) ..........22

*Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) .....................................18

*Smoak v. Hall*, 460 F.3d 768 (6th Cir. 2006)....................................................10, 25

*Thacker v. City of Columbus,* 328 F.3d 244 (6th Cir. 2003)..............................9, 21, 25

*Turner v. Scott*, 119 F.3d 425 (6th Cir. 1997)...........................................................7

*United States v. Carpenter*, 360 F.3d 591 (6th Cir.  2004).......................................*18*

*United States v. Czuprynski*, 46 F.3d 560 (6th Cir. 1995)  .....................................19

*United States v. Davis*, 430 F.3d 345 (6th Cir. 2005)..............................................21

*United States v. Frechette*, 583 F.3d 374 (6th Cir. 2009) ........................................15

*United States v. Hardnett*, 804 F.2d 353 (6th Cir. 1986).........................................23

*United States v. Hatcher*, 473 F.2d 321 (6th Cir. 1973) ..........................................14

*United States v. Heath*, 259 F.3d 522 (6th Cir. 2001) ..............................................23

*United States v Henson*, 848 F2d 1374 (6th Cir. 1988) ...........................................15

*United States v. McClain*, 444 F.3d 556 (6th Cir. 2005) ..........................................21

*United States v Spikes*, 158 F3d 913 (6th Cir. 1998) ..............................................15

*United States v. Tucker*, unpublished, #17-3503, Aug. 7, 2018 ................................21

*United States v. Watson*, Sixth Circuit #11-1331/2012 WL 3055781 (July 6, 2012)................9

OTHER FEDERAL CASES

*Bionic Auto Parts & Sales, Inc v. Fahner*, 518 F.Supp. 582 (N.D. Ill.1981) .......................... 17

*Jones v US Drug Enforcement Administration*, 801 FSupp 15
   (M.D. Tenn. 1992) ....................................................................................................... 18

*United States v. Davis,* 290 F.3d 1239 (10th Cir.2002) .................................................... 9

MICHIGAN CASES

*Barker v. Anderson*, 81 Mich 508, 45 N.W. 1108 (1890) .......................................... 24

*Burns v. Olde Discount Corp*., 212 Mich.App. 576, 538 N.W.2d 686 (1995) ........................ 24

*Donovan v. Guy*, 347 Mich. 457, 80 N.W.2d 190 (1956) .......................................... 24

*Lavigne v. Forshee*, 307 Mich. App. 530, 861 N.W.2d 635 (2014) ........................... 25

*Lewis v. Farmer Jack Div., Inc*., 415 Mich. 212, 327 N.W.2d 893 (1982) ............... 24

*Odom v. Wayne Co*., 482 Mich. 459, 760 N.W.2d 217 (2008).................................. 25

*People v. Beydoun,* 283 Mich App 314; 770 NW2d 54 (2008)................................ 20

*People v. Brown*, 297 Mich. App. 670; 825 N.W.2d 91 (2012) ............................... 18

*People v Green*, 299 Mich App 313; 829 NW2d 921 (2013)................................... 15

*People v. Hartwick*, 303 Mich. App. 247, 842 N.W.2d 545 (2013) ................... 16, 20

*People v. Jenkins*, 472 Mich. 26, 691 N.W.2d 759 (2005)...................................... 24

*People v. McQueen*, 493 Mich. 135; 828 N.W.2d 644 (2013) .......................... 15, 20

*People v Washington*, 134 Mich App 504; 351 NW2d 577 (1984)............................. 8

FEDERAL STATUTES

42 U.S.C. §1983.......................................................................................................... 2

MICHIGAN STATUTES

MCL 28.601.............................................................................................................. 17

MCL 28.602.............................................................................................................. 17

MCL 205.427 .................................................................................................20

MCL 780.652 .................................................................................................

OTHER

2 LaFave, *Search and Seizure*, § 4.4(b), pp. 492–93 (3d ed.1996)..........................................19

## STATEMENT OF ISSUES PRESENTED

I.     INTERPRETATIONS OF THE FOURTH AMENDMENT DEFINE SEIZURE TO INCLUDE DESTRUCTION OF PERSONAL PROPERTY. WHERE A SEIZURE BY DESTRUCTION IS NOT COURT AUTHORIZED, IT MUST BE REASONABLE. WHERE A STATE CIRCUIT HAD ISSUED WRITTEN ORDERS TO RETURN PLAINTIFF ANTOL'S DVR AND THE ORDERS HAD BEEN SERVED ON THE ATTORNEY REPRESENTING DEFENDANT STRAUS' AGENCY, WAS AGENT STRAUS' SUBSEQUENT DESTRUCTION OF THE DVR BY INCINERATION UNREASONABLE?

II.     WARRANTLESS ENTRIES INTO DWELLINGS ARE PRESUMED UNREASONABLE. WHERE THE DEFENDANTS WERE UNABLE TO ARTICULATE ANY FACTS TO CONCLUDE THAT PERSONS WERE IN THE DWELLING OR THAT EVIDENCE WAS ABOUT TO BE OR LIKELY TO BE DESTROYED AND THEY ENTERED THE DWELLING OVER TWO HOURS PRIOR TO WARRANTS BEING ACQUIRED, DID DEFENDANTS BRINGEDAHL, KUTCHES, AND TRUCKS ENTRY INTO THE CURTILAGE AND DWELLING AT GREEN CREEK ROAD AND DEFENDANT STRAUS'S INSTRUCTIONS TO THEM VIOLATE THE FOURTH AMENDMENT?

III. THE FOURTH AMENDMENT REQUIRES A WARRANT OR PROBABLE CAUSE AND A SPECIFIC EXCEPTION BEFORE POLICE MAY ENTER OR SEARCH A PRIVATE RESIDENCE. A WARRANT AFFIDAVIT THAT UTILIZES UNLAWFULLY OBTAINED INFORMATION DOES NOT SATISFY THE FOURTH AMENDMENT. WHERE A TOBACCO TAX TEAM UNLAWFULLY ENTERED A BUSINESS PREMISES AND RELAYED THEIR OBSERVATIONS TO THE AFFIANT AND WHERE THE AFFIDAVIT'S ONLY OTHER INFORMATION WAS STALE, WAS THE SEARCH OF GREEN CREEK ROAD AN UNREASONABLE INVASION OF PRIVACY?

IV. INTERPRETATIONS OF THE FOURTH AMENDMENT REQUIRE PROBABLE CAUSE FOR AN ARREST. WHERE A DETENTION IS AUTHORIZED, INTRUSIVENESS THAT EXCEEDS THE REASONABLENESS SUPPORT BY THE FACTS RIPENS A DETENTION INTO AN ARREST. WHERE PLAINTIFF DSA II WAS AWAKENED FROM SLEEP IN HIS BEDROOM, ORDERED AT GUNPOINT TO THE FOOT OF HIS BED, ORDERED TO GO WITH THE OFFICERS, ORDERED TO LEAVE HIS HOME, TOLD WHERE TO SIT AND TURNED OVER TO HIS MOTHER, DID THE BEHAVIOR OF THE DEFENDANTS RESULT IN THE ARREST OF DSA II?

V.    INTERPRETATIONS OF THE FOURTH AMENDMENT LIMIT THE SCOPE OF A SEARCH WARRANT TO ITEMS FOR WHICH PROBABLE CAUSE EXISTS IN THE AFFIDAVIT IN SUPPORT. WHERE TRYSTON ANTOL'S PHONE WAS NOT PRESENT AT THE TIME OF THE CONDUCT THAT INSTIGATED THE WARRANT OR INVESTIGATION AND WAS USED ONLY TO RECORD ABUSIVE CONDUCT ON THE PART OF THE POLICE, WAS THE SEIZURE OF THE PHONE UNREASONABLE?

VI. THE INTENTIONAL TORT OF FALSE ARREST IS MADE OUT UNDER MICHIGAN
LAW WHERE A PERSON IS RESTRAINED OF HIS LIBERTY WITHOUT LAWFUL
AUTHORITY. WHERE DSA II WAS HELD AT GUNPOINT IN HIS BEDROOM
OBVIOUSLY UNARMED AND ORDERED TO MOVE ABOUT AND THEN OUTSIDE OF
HIS DWELLING WITHOUT PROBABLE CAUSE, ARE DEFENDANTS BRINGEDAHL,
KUTCHES, AND STRAUS LIABLE FOR FALSE ARREST?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Summary judgment standards:

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986) – the record is reviewed in a light most favorable to the non-moving party to identify genuine issues of material fact for trial.

*Hope v. Pelzer*, 536 US 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) - identical fact patterns are not required for conduct to be clearly established as unlawful.

I.  The seizure by destruction of the DVR was unreasonable.

*Soldal v. Cook County*, 506 U.S. 56, 71, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); *Hill v. McIntyre*, 884 F.2d 271, 278 (6th Cir.1989).

II. The entry into the curtilage and dwelling was not based on an exigent circumstance or probable cause.

*Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006); *Kentucky v. King*, 563 U.S. 452, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011); *Smoak v. Hall*, 460 F.3d 768 (6th Cir. 2006).

III. The search warrant was invalid due to the unconstitutionally gathered information and staleness as well as material omissions.

*Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930. 385 U.S. 808, 87 S.Ct. 31, 17 L.Ed.2d 50 (1967); *See v. City of Seattle*, 387 U.S. 541, 543; 87 S.Ct. 1737; 18 L.Ed.2d 943 (1967); *Sgro v United States*, 187 US 206, 210; 53 SCt 138; 77 LEd 260 (1932); *City of Los Angeles, Calif. v. Patel*, __ U.S. __, 135 S.Ct. 2443, 2456, 192 L.Ed.2d 435 (2015)

IV. DSA II was seized and arrested based on the totality of circumstances.

*Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003); *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir.2000); *Smoak v. Hall*, 460 F.3d 768, 780-781 (6th Cir. 2006).

V. Tryston Antol's phone was not within the scope of the search warrant.

*Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).

VI. DSA II was arrested under state law without probable cause.

*People v. Jenkins*, 472 Mich. 26, 691 N.W.2d 759 (2005); *Barker v. Anderson*, 81 Mich 508, 45

N.W. 1108 (1890); *Donovan v. Guy*, 347 Mich. 457, 80 N.W.2d 190 (1956).

## STATEMENT OF FACTS[1]

On June 4, 2013, Plaintiff Derek Antol was purchasing a building under land contract at 885 E. Apple Ave., Muskegon, Michigan for business purposes. Deposition of Derek Antol, 5/10/2018, p. 30. The northern portion of the building was used as retail space by Deuces Wild Smoke Shop which was a limited liability company created by Mr. Antol. *Id.*, 8, 12. During early 2014, Mr. Antol had received sample products from some of his suppliers that - unknown to him - contained regular tobacco. *Id.*, 12. On July 9, 2014 in the morning, he was running errands with his two older sons. *Id.*, 22.

The building was separated into two portions and the southern portion had its own electric meter, a wall with a locking door separating it from the northern retail area, and signs prohibiting entry except for medical marihuana purposes. *Id.*, 33, 38; See Attachment 2, Business filings. Mr. Antol explained that at the time he set up the operation, it was legal under Michigan's Medical Marihuana Act because all of the persons dispensing were registered caregivers. Mr. Antol was of the opinion that tobacco tax team's entry was a ruse. *Id.,* 35-45.

Regarding Tryston's phone, Mr. Antol explained that he was recording the officers because of the behavior of the officers. Once his phone battery was exhausted, he used Tryston's phone to continue recording. *Id.*, 55. Mr. Antol was very specific about the vulgar threat made by Defendant Dent to acquire Tryston's phone. *Id.*, 57:5-8.

## LAW/ARGUMENT

I. DESTRUCTION OF PERSONAL PROPERTY WITHOUT A WARRANT IS AN UNREASONABLE SEIZURE (Plaintiff Derek Antol Sr., as to Defendant Straus).

A.      Fourth Amendment concepts.

---

[1] The factual assertions throughout are severely limited due to the denial of Plaintiffs' Motion to Exceed Page Limits of the local rule.

Destruction of property is a meaningful interference with an individual's property interests and is, therefore, considered a "seizure" under the Fourth Amendment. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). In order to be actionable, the seizure must be unreasonable. *Soldal v. Cook County*, 506 U.S. 56, 71, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). Reasonableness is a "predominantly objective inquiry." *City of Indianapolis v. Edmond*, 531 U.S. 32,47, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). The reasonableness determination must reflect a careful balancing of governmental and private interest*. Soldal*, 506 U.S. at 71, 113 S.Ct. 538. The manner in which the seizure is conducted is reviewed for "reasonableness, and in a §1983 action a District Court must determine not whether the destruction was 'reasonably necessary to effectively execute the search warrant' but whether the plaintiff has raised factual issues to be submitted to a jury on this point." *Hill v. McIntyre*, 884 F.2d 271, 278 (6th Cir.1989).

B.     Analysis.

Asst. Prosecutor Matthew Roberts recalled that a package deal was entered for the forfeiture and criminal charges resulting from July 2014. Deposition of Matthew Roberts, 7/31/2018, p. 5; Attachment 8. *Id*., 7-8. He identified the orders that resolved the forfeiture cases. *Id*., 8; See Attachment 8. Mr. Roberts specifically denied any conversation with Defendant Straus where he told her to destroy any property (*Id*., 12:6-10) and told her that their normal departmental procedures would apply. *Id*, 12:11-17. The orders stated "[e]xcept as expressed in paragraph 3 below, all personal property seized from claimant and claimant's minor children that does not contain THC shall be returned to claimant." He had communicated in several e-mail and letter exchanges which collectively established his true understanding. *Id*., 12:18-13:4. See Exh. 8.

Defendant Straus was a detective sergeant with the Muskegon Police Department assigned to WEMET on July 9, 2014. Straus Deposition, 5/10/2018, pp. 5-6; Attachment 7. When they

received the call from Sgt. Schmitz, Defendant Dent was sent to prepare the warrants and other officers were headed to 885 E. Apple and the other two addresses. *Id*., 12-13. Defendant Straus recalled that it was at least an hour and one-half before the search warrants arrived. *Id*., 13. She recalled seizing the DVR from the building at 885 E. Apple Ave. Her justification for not including it on the forfeiture forms was that she considered it evidence. *Id*., 15-16. Because of this distinction in her mind, the DVR would be destroyed when the case was over. *Id*., 16. When reminded it was private property owned by a citizen, she said "I wait for the prosecutor to let me know how to handle all the evidence and I do what they tell me to do." *Id*., 16:19-21.

Defendant Straus claimed that she had never seen the orders from the state forfeiture case until the day prior to her deposition in 2018. *Id,* 21. She claimed that APA Roberts, via telephone, told her that all the items on the forfeiture forms could go back to Plaintiff and Ms. Conklin and all of the evidence could be destroyed. *Id*, 21:24-22:12 and 22:17-21. Defendant Straus was certain that her conversations with APA Roberts were by telephone and did not recall any e-mail conversations with him about the Antol property. *Id*., 26. She reviewed the property report log and confirmed that the authorization to destroy was entered into the computer system by her on September 18, 2015. *Id*., 27. The items are destroyed by tossing them into an incinerator. *Id*., 28.

Lieutenant Andrew Fias was the Michigan State Police Lieutenant in charge of WEMET. Deposition of Andrew Fias, 7/31/2018, pp. 5-6; Attachment 9. Lt. Fias determined that Defendant Straus made an error because she was handling a lot of complaint review at the time. She mistakenly thought it was a forfeited piece of property and authorized it for destruction. *Id*., 15. He indicated that Defendant Straus was counseled about her error. *Id*., 16. Lt. Fias said that he became aware that Plaintiff and his family believed they had been mistreated. His response was to sit the entire team down and explain to them to be nice to people unless the circumstances require

3

otherwise. Regarding Defendant Dent, he did not single him out in this case but had "conversations" with him about his demeanor on other things. *Id*, 19:24-20:10.

The state court orders were dated June 22 and June 29, 2015. See Attachment 8. The facts above establish that Defendant Straus engaged in a meaningful interference with Plaintiff's possessory interest in the DVR when she tossed it into an incinerator in violation of a court order and the Fourth Amendment. The authorization for destruction and destruction occurred after the orders were served and is therefore unreasonable.  When it no longer has evidentiary value, it must be returned.

## II.  THE WARRANTLESS ENTRIES INTO THE CURTILAGE AND DWELLING WERE UNREASONABLE (all four Plaintiffs as to Defendants Bringedahl, Kutches, and Straus).

A.    Fourth Amendment concepts.

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
> U.S. Const., Am. IV.

All warrantless searches are presumed to be unreasonable and in violation of the Fourth Amendment unless within a well-delineated exception to the warrant requirement. ***Katz v. United States***, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); ***Florida v. Jardines***, 569 US 1, 133 S. Ct. 409, 1414, 185 LEd2d 495 (2013), citing ***Silverman v. United States***, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961).

Defendant Dent asked Defendant Bringedahl to conduct surveillance at Green Creek Road on July 9, 2014. Deposition of Casey Bringedahl, 4/30/2015, p. 18; Attachment 6. He documented his arrival time at 1:50 p.m. Attachment 6. When he observed a man walk from the back of the residence to a pole barn, he, Defendant Kutches (different vehicle) and Defendant Trucks (marked

vehicle) approached the man (Mr. Tozer). *Id*, 18-19; 19:23-20:7. The man identified himself as an electrician doing work for Plaintiff Antol. *Id*. Defendant Bringedahl notified Defendant Straus about Mr. Tozer's presence on the property and he had agreed to leave. Defendant Straus replied that the Defendants needed to enter the house to prevent destruction of any evidence. *Id.*, 20:9-21:13. Defendant Straus did not recall a request from Defendant Bringedahl for guidance. *Id.*, 30:4-31:5. Her recollection was that "he" had entered the residence. *Id.*, 30:24-31:1.

When Defendant Bringedahl looked at the house from where he confronted Mr. Tozer, he could see two dogs in a window and hear them barking. *Id*, 22:24-23:2. When asked what else is going on with the house, Defendant Bringedahl's answer was "Nothing, in particular." *Id,* 24:21-34. Defendant Bringedahl told Defendant Straus that he was unsure if anyone else was in the house. *Id.,* 24:2-9. Defendant Bringedahl admitted that he did not have a warrant at the time and claimed that Defendants Kutches and Trucks entered the house while he was still outside with Mr. Tozer. Defendant Bringedahl denied entering the house until the warrant was signed. *Id.*, 26:7-15.

DSA II turned 17 in August 2018 making him 13 in July 2014. Deposition of DSA, a minor, 6/28/2018, p. 4; 20:6-15; Attachment 10. After hockey practice for an hour and one-half at 8:30 a.m., he had a meal and took a nap. He was awakened with the officers in his doorway. He was very specific that there were three officers. *Id.*, 5-6. He described two WEMET officers in front and the state officer in the back. The two in front were in plainclothes and the other was in uniform. *Id.*, 12-19; see also, 25:10-23. Both WEMET officers had their guns drawn. *Id.*, 6:20-7:2; see also, 26:25-27:14.

When they noticed him moving, they told him to go to the end of his bed. One officer walked toward him and lowered his weapon. The other one went to the closet with his weapon still out and searched it. The officer that searched the closet then searched under the bed. The officer

that had walked toward him then searched his dresser. *Id*., 7:12-19; 8:17-23; see also, 27:6-10. They then took him through the house and outside where he called his mother. *Id*., 7:20-8:2; see also, 28:14-21. The Defendants directed him to sit in a plastic chair until his mother arrived. *Id*., 14:20-25. DSA II was very unequivocal that the object aimed at him was not a taser and was a firearm. *Id*., 9:5-9.

DSA II explained that he could hear the state trooper going through closets in the bathroom. He was specific and consistent in his explanation of hearing the noises that led him to conclude that the trooper was opening doors and cabinets in the bathroom. *Id*., 10:3-12:19.

The Fourth Amendment violation here is the entry into the curtilage and the house by Defendants Bringedahl, Kutches, and Trucks. Even though they observed Mr. Tozer, they had no reason to believe anyone was alerted to their presence. Surveillance had only been established for 15 minutes and it was simply not possible that substantial work had been done on the warrants in that period of time. The alert to any occupant of police presence was instigated by the police arriving in a marked car and uniform. Mr. Tozer was confronted outside the dwelling and did not know if anyone else was present. The police essentially justified their intrusion on what they did NOT know instead of any reasonable, articulable fact.

Even Defendant Dent was uncertain if he had enough evidence to get a records-only warrant. The week before he had a meeting with the prosecutor's office. As a result, his goal of the July 8, 2014 surveillance was to "shear" up some addresses and "if I had enough information, possibly seek to obtain a record search warrant based on my prior buys and new surveillance or updated surveillance."[2] Dent Deposition, March 30, 2015, p. 36:1-10.[3] The surveillance of July 8,

---

[2] He probably meant "shore up."
[3] See also, *Id*., 44:22-45-5.

2014 revealed only that Plaintiff Antol and Ms. Conklin left the N. Green Creek residence. *Id*, pp 36:21 to 37:6. No evidence has been presented by Defendants that a single gram of marihuana was sold from 885 E. Apple after June 28, 2013. When this information and the two failed attempts in late 2013 are imputed to Defendants Bringedahl, Kutches, and Straus and the illegally observed marihuana from July 9, 2014 is removed from the analysis, there was absolutely no probable cause to believe that evidence of any type was inside the N. Green Creek Road address.

B.   Individual participation, supervisory participation or failure to intervene.

Each individual officer can be liable based upon evidence that he or she (1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force. ***Turner v. Scott***, 119 F.3d 425, 429 (6th Cir.1997). "Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." ***Turner***, 119 F.3d at 429. A supervisory official can be liable if it is shown that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. ***Hays v. Jefferson County, Ky***., 668 F.2d 869, 873-874 (6th Cir. 1982), citing ***Rizzo v. Goode***, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

1.   *Defendant Bringedal*

In a light most favorable to Plaintiffs, he entered the curtilage, he entered the dwelling and failed to prevent an improper search before the warrant arrived. Bringedahl Deposition, 4/30/2015, 21 -22. The pole barn was within the clearing for the yard*., Id*., 23-24.

2.   *Defendant Kutches*

He entered the curtilage, entered the dwelling and performed a search before the warrant arrived. He also failed to prevent an improper search.

3. *Defendant Straus*

She instructed Defendant Bringedahl to enter the dwelling and secure it and failed to prevent the unlawful entry when she had the opportunity over the phone to do so.

C.   Exigent circumstances exception.

One well-recognized exception applies when " 'the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The Supreme Court has stated that the need to prevent the imminent destruction of evidence has been recognized as a sufficient justification for a warrantless search. *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).

In *Kentucky v. King*, 563 U.S. 452, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011), the U.S. Supreme Court held that the exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable. If the police create the exigency, or threaten to engage in conduct that violates the Fourth Amendment, their conduct will be unreasonable and violate the Fourth Amendment. As a general matter, "the determination of exigent circumstances is normally a question for the jury," unless "a finder of fact could reach but one conclusion as to the existence of exigent circumstances ... as a matter of law." *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir.2002).

"The exigent-circumstances exception is narrowly drawn to cover cases of real and not contrived emergencies." *Welsh v. Wisconsin*, 466 U.S. 740, 752, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (brackets omitted). In a "person in danger" situation, officers have a right "to enter a

8

dwelling to protect a resident from domestic violence; so long as they have good reason to believe such a threat exists." *Georgia v. Randolph*, 547 U.S. 103, 118, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). But if officers do not have reason to believe that a threat exists inside the home, the officers do not have the right to enter. *United States v. Davis*, 290 F.3d 1239, 1244 (10th Cir.2002). In a situation where a warrant is going to be acquired for drugs, the Sixth Circuit has previously established its requirements. The Sixth Circuit defines exigent circumstances as "situations where 'real immediate and serious consequences' will 'certainly occur' if the police officer postpones action to obtain a warrant." *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003) (emphasis added) (quoting *Ewolski v. City of Brunswick*, supra at 501.

In *United States v. Watson*, Sixth Circuit #11-1331/2012 WL 3055781 (July 6, 2012) (unpublished, Attachment 13), the Sixth Circuit addressed a situation involving drugs post-*Kentucky v. King*. A traffic stop was conducted on a car that left a house where a controlled buy had occurred. The officers were aware from the informant and the occupants of the car that an unknown man was still in the home. Fearing that someone in the neighborhood would notify the man of the traffic stop to destroy evidence, an officer entered without a warrant, took custody of the occupant, searched his person and searched the home for other persons. The Sixth Circuit upheld suppression of the evidence from the man's person and his subsequent statements because the conclusion that a call to destroy evidence would be made was speculation.

In the instant case, the officers had only established surveillance for about 15 minutes. The only information they had concerning occupants was observing a man walking from the house. Based on this and nothing more, Defendants Bringedahl and Defendant Kutches entered the curtilage. Defendant Bringedahl's description of the area where he was speaking to Tozer at the very least creates a jury question as to whether he was within the curtilage. The police cannot

justify a search on what they do not know. The information they did have was certainly not "real" or "immediate" and did not lead to a conclusion that destruction would "certainly occur."

Defendant Dent's failure to include the failed attempts to purchase during the last half of 2013 not only should have been included in the warrant affidavit, those failures are imputed to Defendants Straus, Bringedahl and Kutches. The unlawful behavior of the tax team members to make the initial observations at 885 E. Apple on July 9, 2014 is also imputed to Defendant's Straus, Bringedahl, and Kutches. Police officers can act on "collective knowledge" but if the information that is relayed is provided in the absence of probable cause, then the ultimate police action is unconstitutional. In *United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the United States Supreme Court held that a police officer can rely on a flyer or bulletin that has been issued on the basis of articulable facts that support a reasonable suspicion that a person has committed an offense. In the same breath, the Court held that the inverse is also true: if the flyer or bulletin was issued in the absence of reasonable suspicion, then the arrest, stop, or search violate the Fourth Amendment. By analogy, a dispatcher and the officers making a traffic stop based on unsupported assertions from a dispatcher can lead to liability for all persons that cause the deprivation. *Smoak v. Hall*, 460 F.3d 768 (6th Cir. 2006).

Even the entry into the curtilage was unlawful but then rather than exercise any patience whatsoever, the officers consulted with Defendant Straus and decided to enter the home. This would alert any occupants to their presence. There is a factual dispute among the Defendants as to whether Defendant Straus was consulted but this would be a jury question. There is a factual dispute as to whether Defendant Bringedahl entered the dwelling.

III. THE WARRANT ULTIMATELY OBTAINED FOR N. GREEN CREEK IS INVALID (all four Plaintiffs as to Defendants Dent, Straus, Bringedahl, and Kutches).

A.     Fourth Amendment principles.

Fourth Amendment principles as to residential property equally apply to commercial premises. *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930. 385 U.S. 808, 87 S.Ct. 31, 17 L.Ed.2d 50 (1967); *See v. City of Seattle*, 387 U.S. 541, 543; 87 S.Ct. 1737; 18 L.Ed.2d 943 (1967). All four Plaintiffs resided at the N. Green Creek Road address and used it as their dwelling. Derek Antol Deposition, p.28; Tryston Antol Deposition, 5; Devon Antol Deposition, 13; DSA II Deposition, 4, 20.

The factual section above sets forth the establishment of Deuces Wild and the medical marihuana facility. The facts and analysis in Issue II above are also incorporated herein. Defendant Dent had been a police officer for 12 years by 2014. Deposition of Adam Dent, 3/30/2015, p. 4-7, Attachment 4. Defendant Dent identified the search warrant he drafted on July 9, 2014 as Exhibit 1 at his deposition. *Id*, pp. 12-13. See Attachment 4. He acknowledged being the person that went into the southern portion of the building on June 4, 2013 and June 18, 2013. *Id*, pp. 13 – 24. Ms. Conklin screened his fictitious paperwork and allowed him into the southern portion of the building. *Id*., 17. Once there he purchased one-eighth of an ounce of marihuana for $45.00. *Id*., 19. The person operating the counter was Nick (last name unknown). *Id*., 18.

On June 18, 2013, Defendant Dent again entered Deuces Wild in an undercover capacity. On this occasion, Nick screened his application and Ms. Conklin made the sale of two grams of marihuana for $30.00. *Id*., 21-11. He did not recall seeing any signs by the door to the southern portion of the building in 2013 but did recall seeing them during execution of the search warrant on July 9, 2014. *Id*, pp. 20-21. Defendant Dent indicated that he was aware of and assisted in the two attempted buys during the latter part of 2013 by Detective Bahorski. *Id*, pp. 25 – 27. Defendant Dent acknowledged that he took a legitimate medical marihuana application and fictionalized it with his undercover name and identifiers and created a fake cancelled check and used these when

he entered Deuces Wild in 2013. *Id*, pp.14-15. Defendant Dent recalled that Detective Bahorski was turned away because neither Ms. Conklin nor Plaintiff Antol were there to approve his paperwork. *Id*, pp. 27-28.

Regarding the search warrant affidavit, Defendant Dent confirmed that it "slipped his mind" to include Detective Bahorski's two failed attempts to make purchases. *Id*, p. 36. He acknowledged Detective Marshall receiving a call from the tax team and being told that the tax team found marihuana inside 885 East Apple. *Id*, p. 37. Defendant Dent recalled that the warrants were typed and he was walking to the judge when he heard that officers had already entered the Green Creek Road address. *Id*, pp. 48 – 49.[4] Defendant Dent acknowledged he and Defendant Straus arrived at 885 E. Apple with the warrants at 4:37:24 p.m. *Id*., pp. 53:11-54:14. See Attachment 1 to Derek Antol's Affidavit (Attachment 2 to this Motion Response) for a still shot showing their entry.[5] Dent Deposition, 3/30/2015, p. 53:13-24. Defendant Dent could not identify a law enforcement need to retain the seized electronic devices. *Id*., 67:14-68:9.

For the next 12 months, WEMET and Defendant Dent did nothing. The supervisors, including Defendant Straus, made monthly journal entries indicating a need to make more purchases and showed the status as pending further investigation. On July 8, 2014, Defendants Dent and Bringedahl conducted surveillance of the residence of Plaintiff Antol and Ms. Conklin at 1769 N. Green Creek Rd. The only thing they learned was that both of them left the front door of the residence. *Id*., 26-27. In what Defendants claim is a stunning coincidence, the MSP Sixth District Tobacco Tax Team just happened to do a tobacco tax inspection at 885 E. Apple Ave. on

---

[4] The question and answer unfortunately do not definitively establish if the "half-hour" time frame is from when they actually entered or when he heard they had entered.
[5] The video stops at 4:38:15 p.m. or this is all the police decided to preserve when it complied with the discovery demands in the state forfeiture case.

July 9, 2014. In their depositions, the tax team members and all Defendants have denied any collusion in the timing of the tax team's inspection.

Greg Parolini was a former police officer and an agent for the Michigan Department of Treasury in July 2014. Deposition of Greg Parolini, April 30, 2015, pp. 4 – 7 (Attachment 1). His unit is required to exist and make collection efforts to receive Michigan's portion of the universal tobacco litigation settlement. *Id*, p. 8. Part of the reason for the enforcement of smuggling and counterfeiting is to protect the interests of the tobacco manufacturers. *Id*, p. 9.

Parolini coordinated his inspection of 885 E. Apple Ave. with Sergeant Schmitz of the MSP District Team. The MSP team's funding is also from the tobacco settlement. *Id,* 9-10. He seized approximately $400.00 worth of Hookah tobacco and cigar wraps that had been submitted to Mr. Antol over the internet or as samples. *Id*, pp. 13-17. Mr. Antol never received a tax assessment from the inspection of July 9, 2014. See Affidavit of Derek Antol, Attachment 2. Sergeant Schmitz and two other state police members all arrived in plainclothes. *Id*, pp. 20 – 23. Mr. Parolini made contact with Samantha Conklin in the main retail area and noticed clothing, pipes, and cigar wraps. *Id*, 23-24. He asked Ms. Conklin for identification and she said it was in a separate room in the back and she would go get it. He said he would come with her but she protested. He then told her that the Tobacco Tax Act allowed him to look anywhere in the building. During their discussion, two of the troopers came over nearby. *Id*, 25-26. He did not claim any other authority to enter the southern portion of the building. *Id*, 27. He admitted that he did not know if there were tobacco products in the southern portion of the building. *Id*, 27-28. He indicated that because she was going into an unknown area "I just wasn't going to allow that to happen." *Id,* 28:1-3. Mr. Parolini described the confrontation near the door and confirmed that one of the troopers pulled his handcuffs out and lifted them up. The trooper then stated (paraphrased) "Well,

you need to do what you're supposed to do" or "You need to allow us back there or this is – you could be under arrest." *Id*, p. 28:22-29:4. Once in that area, they observed marihuana. Ms. Conklin produced four or five cards for her medical marihuana patients. The troopers stayed in the back and Mr. Parolini went back to the retail area after seeing her identification. *Id*, 30-31.

 Karl Schmitz was in charge of the MSP's Sixth District Tobacco Act Tax Team in July 2014. Deposition of Karl Schmitz, March 30, 2015, p. 5-6, 10, See Attachment 3. Mr. Schmitz explained how the tobacco tax team originated for the purpose of marshalling the $3 to $4 million dollars in grant money from the settlement. *Id,* p. 9. He confirmed that he told her that if she hinders their inspection that she is subject to arrest (*Id*, 24-25) and that Trooper Vogt pulled out his handcuffs. *Id*, 27. She submitted to their demand and they all entered the southern portion of the building where he observed marihuana. *Id*, 29. He confirmed that he called WEMET. *Id,* 31 -32.

The Defendants are relying on the tax team's authority to inspect pursuant to statute which in turn allows their presence in the southern portion of the building to be lawful and the 2013 purchases to justify the warrant. From their "inspection" vantage point, they rely on the plain view exception. First, not only must the item be in plain view; its incriminating character must also be "immediately apparent." ***Arizona v. Hicks***, 480 U.S. 321, 326-327; 107 S.Ct. 1149, 1153; 94 L.Ed.2d 347 (1987). Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself. ***Chapman v United States***, 365 US 610; 81 SCt 776; 5 LEd2d 828 (1961).

The review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four-corners of the affidavit, ***Whiteley v. Warden, Wyoming State Penitentiary***, 401 U.S. 560, 565 n. 8; 91 S.Ct. 1031; 28 L.Ed.2d 306 (1971); ***United States v. Hatcher***, 473 F.2d 321, 324 (6th Cir. 1973). The information concerning conduct in 2013 is stale.

A warrant must be supported by "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v United States*, 187 US 206, 210; 53 SCt 138; 77 LEd 260 (1932) (emphasis added); *United States v Henson*, 848 F2d 1374, 1382 (6th Cir. 1988). Relevant variables include "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v Spikes*, 158 F3d 913, 923 (6th Cir. 1998) (internal citation omitted). In the context of drug crimes, information goes stale very quickly "because drugs are usually sold and consumed in a prompt fashion." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009).

In the instant case, the officers were not lawfully present to make their observations. The doorway was posted with signs indicating that it was a medical marihuana facility. See Affidavit of Derek Antol, Attachment 2 and Affidavit of Samantha Conklin, Attachment 5. The signs are relevant because they prevent the incriminating nature of the observations from being immediately apparent. While irrefutably stale, the two alleged deliveries in June of 2013 are not helpful to the probable cause inquiry regardless of their age. In February 2013, the Michigan Court of Appeals decided *People v Green*, 299 Mich App 313; 829 NW2d 921 (2013) which held that patient to patient transfers were lawful notwithstanding a connection between those patients or caregiver/patients through the Medical Marihuana Program. A different case, *People v. McQueen*, 493 Mich. 135; 828 N.W.2d 644 (2013) on significantly different facts was decided in February 2013. The *Green* decision was not mentioned in *McQueen*. Defendant Dent failed to disclose to the examining magistrate that *McQueen* was a public nuisance case, not a criminal case. The *Green* decision, upon which Mr. Antol and Mr. Conklin were relying, however, was not reversed

by the Michigan Supreme Court until June 19, 2013 – after the two alleged sales. This makes the omission of the two failed attempts extremely important because it demonstrates that their enterprise conformed to the law as it developed. See Deposition of Derek Antol, 5/19/2018, p.74.

Defendant Dent inserted quotes from *People v. Hartwick*, 303 Mich. App. 247, 842 N.W.2d 545 (2013) in his search warrant affidavit. What he failed to mention to the reviewing magistrate is that the Court of Appeals version of *Hartwick* was not decided until November 19, 2013 – four months after the sales at issue. The language he quotes in the affidavit parallel exactly what Mr. Antol was describing. Each provisioner was a licensed caregiver and made certain that each purchaser had established the medical need with the state prior to the sale.

Even in a highly regulated business, a warrantless inspection is valid only if three criteria are met. First, there must be a "*substantial*" government interest that informs the regulatory scheme pursuant to which the inspection is made. See *Donovan v. Dewey*, 452 U.S. 594, 602; 101 S.Ct. 2534; 69 L.Ed.2d 262 (1981)(health and safety conditions in underground and surface mines"); *United States v. Biswell*, 406 U.S. 311, 315; 92 S.Ct. 1593; 32 L.Ed.2d 87 (1972)(regulation of firearms is important to prevent violent crime). Second, the warrantless inspections must be "necessary to further [the] regulatory scheme." In *City of Los Angeles, Calif. v. Patel*, __ U.S. __, 135 S.Ct. 2443, 2456, 192 L.Ed.2d 435 (2015), an ordinance that required hotels to maintain and provide guest information upon inspection to police was not necessary to further a regulatory scheme and made the ordinance facially unconstitutional. Finally, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." *Id*. In other words, the statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the

discretion of the inspecting officers. See *Marshall v. Barlow's, Inc*, *supra*, 436 U.S., at 323. To perform this first function, the statute must be "sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." *Patel*, 135 S.Ct. at 2456. In defining how a statute limits the discretion of the inspectors, the Supreme Court has observed that it must be "carefully limited in time, place, and scope." *United States v. Biswell*, 406 U.S., at 315.[6]

These elements are not satisfied on this record. The testimony of Mr. Parolini establishes that this inspection scheme is revenue based to benefit tobacco manufacturers in exchange for funding from tobacco litigation settlement. The remedy for a person refusing to cooperate in an administrative or tax inspection is to seek a warrant and take whatever action the regulatory scheme creates for the refusal. In *Allinder v State of Ohio*, 808 F2d 1180 (6th Cir. 1987), a statute authorizing warrantless inspection of bee aviaries was held to be unconstitutional. This was in large part due to the statute giving too much discretion to the official doing the inspection. Once Mr. Parolini entered, he insisted on complete control of Ms. Conklin's movements.

B.    State law enforcement officers cannot enforce federal law.

Notwithstanding that the tax team violated the federal Constitution when they entered the southern portion of the building, what they observed was lawful under state law. Police officers in Michigan are not empowered to enforce federal law.[7] MCL 28.601. Where a state search warrant is obtained to search for or seize property, that property must be possessed, controlled, or used

---

[6] See, *Bionic Auto Parts & Sales, Inc v. Fahner*, 518 F.Supp. 582, 585-586 (N.D. Ill.1981), aff'd in part, vacated in part, and remanded in part, 721 F2d 1072 (7th Cir. 1983) (unbridled discretion was fatal to inspection scheme, quoting *Donovan v. Dewey*, *supra* at 603).

[7] MCL 28.602(l)(i) "(l) 'Police officer' or 'law enforcement officer' means . . . (i) A regularly employed member of a law enforcement agency authorized and established by law, including common law, who is responsible for the prevention and detection of crime and the enforcement of the general laws of this state."

wholly or partially in violation of a law of the state of Michigan. MCL 780.652(1)(c); see also, **Jones v US Drug Enforcement Administration**, 801 F.Supp. 15 (M.D. Tenn. 1992) (seizure by state officers at an airport assigned to a task force were not federally deputized until after the seizure was a state seizure); see also, **West v. Atkins**, 487 U.S. 42; 108 S.Ct. 2250; 101 L.Ed.2d 40 (1988), (the source of the officers' power drives their status as state actors or federal actors).

C.     False and misleading statements.

**Franks v. Delaware**, 438 U.S. 154; 98 S.Ct. 2674; 57 L.Ed.2d 667 (1978), extends to circumstances in which an officer omits evidence in a search-warrant affidavit that is critical to determining the existence of probable cause. **United States v. Carpenter**, 360 F.3d 591, 596 (6th Cir. 2004) ("[T]his court has recognized that material omissions are subject to **Franks**.").

In **People v. Brown**, 297 Mich. App. 670; 825 N.W.2d 91 (2012), the Michigan Court of Appeals did not require that medical marihuana information be included unless it is obvious. This is clearly contrary to federal law which prohibits an officer from deliberately suppressing facts that point away from probable cause or toward legal conduct. The **Brown** Court did, however, qualify this by saying that where it is obvious that medical marihuana may be involved the omission could be fatal to any probable cause determination made without the information. *Id.*, at 677, n.5.

A challenge under **Franks** requires a showing of an intent to mislead by excluding crucial information and that the omission is critical to the finding of probable cause. **Hale v. Kart**, 396 F.3d 721, 727 (6th Cir. 2005), citing **Mays v. City of Dayton**, 134 F.3d 809, 816 (6th Cir. 1998). It is well understood that affiants can rely on hearsay and hearsay from other officers is generally understood as reliable without further inquiry. But **Franks** applied this both ways:

In characterizing the affidavit in *Rugendorf* as raising no question of integrity, the Court took as its premise that police could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity.[8]

*Franks*, 438 U.S. at 164 n. 6; 98 S.C. 2674.

Other courts have incorporated this premise into specific holdings where the informant who provides the errant information to the search warrant affiant is also a government agent or police officer. See 2 LaFave, *Search and Seizure*, § 4.4(b), pp. 492–93 (3d ed.1996).

D.   Good faith exception in reliance on the warrant.

1.       The search warrant and affidavit.

The "good-faith inquiry is confined to the objective question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances ... may be considered." ***United States v. Leon***, 468 U.S. 897, 922-23 n.23; 104 S.Ct. 3405; 82 L.Ed.2d 677 (1984). All of these officers were highly and specifically trained as well as very experienced. There was no excuse for their disregard of the clearly established principles cited above.

The good-faith defense fails where: "1) the supporting affidavit contains information the affiant knew or should have known is false; 2) the issuing magistrate lacked neutrality and detachment; 3) the affidavit is devoid of information that would support a probable cause determination making any belief that probable cause exists completely unreasonable; or 4) the warrant is facially deficient." ***United States v. Czuprynski***, 46 F.3d 560, 563–64 (6th Cir. 1995) (citing ***Leon***, 468 U.S. at 923), opinion supplemented by 65 F3d 169 (6th Cir. 1995).

In the instant case, the police conduct includes the unlawfully obtained observations and misleads the magistrate into believing that the marihuana sales were occurring under the auspices

---

[8] ***Rugendorf v United States***, 376 US 528; 84 SCt 825; 11 LEd2d 887 (1964).

of the Deuces Wild Smoke Shop. The affidavit omits critical facts concerning medical marihuana by failing to acknowledge Defendant's caregiver status, the appropriate quantities of marihuana, the rejected attempts to buy, the decision date in *Hartwick,* and the nature of the *McQueen* case.

2.     The Warrantless Search, the Tobacco Products Tax Act and *Beydoun*.

Defendants may assert that the inspection was valid because the tax investigators acted in reliance upon the TPTA and *People v. Beydoun*.[9] The statute is clearly unconstitutional both facially and as applied under the federal standards cited above.

The first and most obvious failure in this case is that for just a routine inspection, it is unreasonable from the outset to use three armed police officers to collect a tax of .10 cents per cigarette. See MCL 205.427(1). The next obvious reason for rejecting application of the TPTA is the existence of the Michigan Medical Marihuana Act. The law clearly contains an immunity provision for persons complying with its provisions. The signs near the door and the verbal information from Ms. Conklin put the tax team on notice that a medical marihuana facility was present. They simply used the pretext of a tax inspection to completely ignore this obvious and objective information. Such conduct is completely lacking in good faith and results from a lack of appropriate time and scope limitations. Where officers have authority to search but they exceed that authority, their conduct is not in good faith. Their inspection under the TPTA should have been limited to the retail portion of the store.

3.     Financial incentive and State Police budgetary incentives.

D/Sgt. Karl Schmitz of the MSP tax team admitted a budgetary incentive. Deposition of Karl Schmitz, 3/30/2015, 8:8 to 10:7). He admitted to seeing some kind of sign near the door.[10] *Id*,

---

[9] 283 Mich App 314; 770 NW2d 54 (2008).
[10] Those signs are at Attachment 6.

at 27:24-28:15. The Fourth Amendment still applies to tax investigations. *G.M. Leasing Corp v. United States*, 429 US 338; 97 SCt 619; 50 LEd2d 530 (1977).

4.      The exclusionary rule in warrantless searches.

The Sixth Circuit is in a state of conflict as to whether the good faith exception can apply. In *United States v. McClain*, 444 F.3d 556 (6th Cir. 2005), they allowed the good faith exception to be applied where initial unlawful observations were placed into a warrant for a subsequent search. *McClain* was limited to its unique facts. *Id*., 565-566. In *United States v. Davis*, 430 F.3d 345 (6th Cir. 2005),[11] the Sixth Circuit – without qualification – held that the good faith exception does not apply to a warrant that relies on illegally seized evidence. *Id*., at 358, n. 4. To further complicate this, in *United States v. Tucker*, unpublished, #17-3503, Aug. 7, 2018,[12] a panel said that the holding in *Davis* about the good faith exception was dicta. The facts in the instant case are closer to *Davis*. Defendant Dent made several material omissions and his statements about two Michigan cases were misleading.

IV. DEFENDANTS' ACTIONS REGARDING DSA II RESULTED IN AN ARREST (DSA II by Plaintiff Derek Antol Sr. as to Defendants Bringedahl and Kutches).

To state a claim for false arrest under the Fourth Amendment, a Plaintiff must show that he was arrested without probable cause. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). In *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003), probable cause was defined as the "facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Id.* (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)). This requires an examination

---

[11] Issued 10 days before *McClain*.
[12] See Attachment 13.

of all the facts and circumstances "*within an officer's knowledge at the time of an arrest.*" **Estate of Dietrich v. Burrows**, 167 F.3d 1007, 1012 (6th Cir.1999). The existence of probable cause is a jury question, unless there is only one reasonable determination that is possible. *Id.* at 581; **Gardenhire v. Schubert**, 205 F.3d 303, 315 (6th Cir.2000).

When the intrusiveness of a **Terry** stop exceeds the reasonableness supported by the available facts, it ripens into an arrest. **Smoak v. Hall**, 460 F.3d 768, 780-781 (6th Cir. 2006). The factors to consider are the length of the detention, the manner in which it is conducted, and the degree of force used in determining whether an investigative stop is "reasonably related to the basis for the original intrusion." **Houston v. Clark County Sheriff Deputy John Does 1–5**, 174 F.3d 809, 814 (6th Cir.1999).

DSA II was 13 in July 2014. Deposition of DSA II, a minor, 6/28/2018, p. 4: Attachment 10. He was awakened with the two WEMET officers in the doorway with their guns pointed at him. *Id.*, 6:20-7:2; see also, 26:25-27:14. When they noticed him moving, they told him to go to the end of his bed. They then took him through the house and outside where he called his mother. *Id.*, 7:20-8:2; see also, 28:14-21. They told him they were going outside. *Id.*, 8:24-9:4. They then had him sit down at the bottom of the hill in what he described as "somewhat backyard" until his mother arrived. *Id.*, 8:3-7. The Defendants directed DSA II to sit in a plastic chair until his mother arrived. *Id.*, 14:20-25. DSA II was very unequivocal that the object aimed at him was not a taser and was a firearm. *Id.*, 9:5-9. This creates a fact question as to whether an arrest occurred.[13]

---

[13] Defendants in their brief (p. 10) assert that Count IV (false arrest) must fail because officers can handcuff persons present when executing a warrant. Paragraph 96 of the Complaint (R. 1, PageID#11) incorrectly asserts that DSA or DSA II were present at execution of the search warrant. It was not until later analysis of the disclosed reports established that the warrantless entry occurred several hours before the warrant arrived. Paragraph 96 of the Complaint is inaccurate to the extent it describes the Defendants' conduct while executing the warrant.

The use of two firearms aimed at a sleepy 13-year-old child is unreasonable. ***United States v. Hardnett***, 804 F.2d 353, 356–57 (6th Cir. 1986). Transporting a person from where they are found can also result in an arrest. ***United States v. Heath***, 259 F.3d 522, 531 (6th Cir. 2001).

V.   THE SEIZURE OF TRYSTON ANTOL'S PHONE WAS UNREASONABLE (Tryston Antol only as to Defendant Dent only).

A.      Fourth Amendment principles.

If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more. ***Horton v. California***, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). There is no question that the warrant allowed seizure of cellular telephones. See Attachment 4. But the inclusion of items to be searched for and seized must be supported by probable cause contained within the affidavit for the warrant otherwise it is a prohibited general warrant. ***Groh v. Ramirez***, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).

B.      Analysis.

Tryston Antol was 17 years old in 2014. Deposition of Tryston Antol, 6/28/2018, p. 4. After he left the store late in the afternoon, his step-father received a call indicating that the police wanted his phone back because he and Plaintiff had recorded some of the officers on it. They returned and turned over the phone. *Id*., 6-8. He had also recorded abusive behavior from two of the undercover officers at the store. *Id.*, 14 -16. He described how the police had damaged it while trying to access the contents. *Id*., 7-8. In this case, the warrant could not have possibly contemplated a cellular telephone owned and used by Tryston Antol that was not at the scene when the warrant was prepared or at any time relevant to the allegations in the affidavit. It arrived after the police took control of the scene and was used by Plaintiff after the police were present only to record the arrogant and abusive behavior of the police officers. In keeping with the philosophy

behind destroying the DVR, Defendant Dent simply did not want video/audio recordings of the officers to be left in the hands of Plaintiff. Defendant Dent denied making any threats about Tryston Antol's phone but acknowledged that he wanted it brought back for seizure. *Id*, p. 54 - 56. The phone had absolutely no investigative value and is not within the scope of this warrant.

VI.     State law false arrest claim (Plaintiff DSA II through Derek Antol against Defendants Bringedahl and Kutches).

A.     Legal concepts.

A false arrest is an illegal or unjustified arrest, and the guilt or innocence of the person arrested is irrelevant. *Lewis v. Farmer Jack Div., Inc*., 415 Mich. 212, 218, 327 N.W.2d 893 (1982). To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause. *Id*.; *Burns v. Olde Discount Corp*., 212 Mich.App. 576, 581, 538 N.W.2d 686 (1995). In applying these principles, the Michigan Supreme Court uses the seizure definition under Fourth Amendment jurisprudence which is defined as "in view of all the circumstances, a reasonable person would have believed that he was not free to leave." *People v. Jenkins*, 472 Mich. 26, 691 N.W.2d 759 (2005).

In Michigan, a false imprisonment is subsumed in false arrest. *Lewis*, *supra*, at 232. n. 4. In *Barker v. Anderson*, 81 Mich 508, 45 N.W. 1108 (1890), the Michigan Supreme Court held that when a person establishes that he has been restrained of his liberty, there is a presumption that it was unlawful. The burden then switches to the other party to show that it was legally justified. See also *Donovan v. Guy*, 347 Mich. 457, 80 N.W.2d 190 (1956).

B.     Analysis.

Defendants Bringedahl and Kutches cannot justify the legality of the circumstances in which they held DSA II at gunpoint, removed him from his bed, removed him from his home, and controlled his movements until a parent retrieved him. He had every right to remain in his

24

home unmolested by the officers until the warrant arrived (assuming it was valid).[14]

VII.    Qualified immunity.

Regarding the DVR (Count 1), unreasonable destruction of personal property was established as a constitutional violation in 1992. *Soldal*, *supra* (1992). Regarding the entry into the southern portion of the building, obtaining compliance through threats of arrest was established as unconstitutional in 1982. *Harlow*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); see also *Lavigne v. Forshee*, 307 Mich. App. 530, 861 N.W.2d 635 (2014). This unconstitutional conduct is imputed to all other Defendants. *Smoak*, *supra*. The requirements of an exigent circumstance to pose a real and immediate threat were established in 2003. *Thacker*, *supra* (2003). The concepts of staleness were established in 1932. *Sgro*, supra. These concepts address Counts 2 and 3.

Regarding the seizure of DSA II in his bedroom (Count 4), using a degree of force or other types of intrusive conduct was clearly established as a constitutional violation in July 2014. *Brown v. Lewis*, 779 F.3d 401, 416 (6th Cir. 2015) citing *Smoak*, *supra*, at 782 (2006). Regarding the seizure of Tryston's phone (Count 5), the scope of a seizure pursuant to a warrant was clearly established in 2004. *Groh*, *supra* (2004).

WHEREFORE, Plaintiffs respectfully request this Honorable Court deny the motion for summary judgment filed by Defendants Dent, Straus, Bringedahl and Kutches and allow these claims to proceed to trial.

10/10/2018                                      */s/ J. Nicholas Bostic*
                                                J. Nicholas Bostic P40653
                                                Attorney for Plaintiffs

---

[14] Defendants did not raise the affirmative defense of governmental immunity. The burden is on them to raise and prove it. *Odom v. Wayne Co*., 482 Mich. 459, 760 N.W.2d 217 (2008).

**INDEX OF EXHIBITS**

1. Deposition of Gregory Parolini

2. Affidavit, Deposition, and supporting documents of Derek Antol Sr.

3. Deposition of Karl Schmitz

4. Depositions and search warrant affidavit of Defendant Dent.

5. Affidavit and supporting documents of Samantha Conklin.

6. Deposition of Defendant Casey Bringedahl.

7. Deposition of Defendant Kate Straus.

8. Deposition of Matthew Roberts

9. Deposition of Andrew Fias.

10. Deposition of DSA II, a minor

11. Deposition of Devon Antol.

12. Deposition of Tryston Antol.

13. Unpublished cases.