## UNITED STATES OF AMERICA

## IN THE WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

Derek Antol, individually and as next friend of      File No: 1:17-cv-613
DSAII, a minor, and Devon S. Antol, and
Tryston Antol,
      Plaintiffs,

v.

Adam Dent, Kate Straus,                Hon. Janet T. Neff
Casey Bringedahl, Casey Trucks,       U.S. District Court Judge
Pete Kutches, and Western Michigan
Enforcement Team, a public
body organized under the laws of the
State of Michigan,
      Defendants,
_____/

## PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS DENT, STRAUS, BRINGEDAHL, AND KUTCHES

Attachment 8 – deposition of Matthew Roberts

MATTHEW ROBERTS
7/31/2018

---

**Page 1**

UNITED STATES OF AMERICA
IN THE WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

Derek Antol, individually and as next
friend of DSA, a minor, DSAII, a minor,
and Tryston Antol,
    Plaintiffs,
               CASE NO: 1:17-cv-613

v

Adam Dent, Kate Strauss,
Casey Bringedahl, Casey Trucks,
Pete Kutches, and Western Michigan
Enforcement Team, a public body
organized under the laws of the
State of Michigan,
    Defendants.
              /

    The Deposition of Matthew Roberts,

    taken before me, Cassandra M. Rodriguez, CER 8186, on July 31,

    2018, at 99 West Apple Avenue, Muskegon, Michigan 49440,

    commencing at or about 3:03 p.m.

APPEARANCES:

BY: J. NICHOLAS BOSTIC, ESQUIRE
909 North Washington Avenue
Lansing, Michigan 48906
517-706-0132
Appearing on behalf of the Plaintiffs.

BY: ADAM SADOWSKI, ESQUIRE
ASSISTANT ATTORNEY GENERAL
MICHIGAN DEPARTMENT OF ATTORNEY GENERAL
525 West Ottawa Street, P.O. Box 30736
Lansing, Michigan 48909
517-373-6434
Appearing on behalf of the Defendant Casey Trucks.

---

**Page 2**

BY: CURT A. BENSON, ESQUIRE
2851 Charlevoix Drive SE, Suite 327
Grand Rapids, Michigan 49546
616-975-7470
Appearing on behalf of the Defendants Adam Dent,
Kate Strauss, Casey Bringedahl & Peter Kutches.

---

**Page 3**

| | INDEX | | |
|---|---|---|---|
| WITNESS | | EXAMINED BY | PAGE |
| Matthew Roberts | | Mr. Bostic | 4 |
| | | Mr. Benson | 24 |
| | | Mr. Bostic | 25 |

    * * * *

INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit Number 1 | Emails | 14 |

---

**Page 4**

1              July 31, 2018

2              Muskegon, Michigan

3              3:03 p.m.

6       ** ** ** ** **

7       MATTHEW ROBERTS,

8  was thereupon called as a witness herein and, after having

9  been first duly sworn to tell the truth, the whole truth and

10  nothing but the truth, was examined and testified as follows:

11       ** ** ** ** **

12      MR. BOSTIC: Will you state your name for the

13  record, please?

14      THE WITNESS: Matthew James Roberts.

15      MR. BOSTIC: Today is the time and date set for

16  your deposition in Antol and others versus Dent and others,

17  Western District file number 1:17-CV-613. My name is Nick

18  Bostic. I represent the Plaintiffs in this matter. Counsel,

19  appearances for the record.

20      MR. SADOWSKI: Adam Sadowski on behalf of the

21  Defendant Trucks.

22      MR. BENSON: Curt Benson on behalf of the

23  remaining Defendants.

24      ** ** ** ** **

25      EXAMINATION

---

1 (Pages 1 to 4)

Electronically signed by Cassandra Rodriguez (101-163-830-7594)      6645d10c-6dd3-47ac-952f-7a8e548a347d

MATTHEW ROBERTS
7/31/2018

Page 5

1  BY MR. BOSTIC:
2  Q  Mr. Roberts, in June of 2013 did you hold any -- I'm sorry.
3     In 2014 did you hold any professional licenses in the state of
4     Michigan?
5  A  Yes.
6  Q  What was that?
7  A  To practice law.
8  Q  And as of today how long have you been an attorney?
9  A  I was licensed in -- it would have been October of 1999.  So
10    19 years, roughly.
11 Q  And when did you start with the Muskegon County Prosecutor's
12    Office?
13 A  July of 2001.
14 Q  And did you practice prior to that?
15 A  Yes.  I worked as a city attorney in East Lansing for a little
16    over a year and a half.
17 Q  And have you continuously been with the Muskegon County
18    Prosecutor's Office since July of 2001?
19 A  Yes.
20 Q  In July of 2014 what were your duties?
21 A  In July of 2014 I was a senior assistant prosecutor assigned
22    to handle circuit court felony cases.
23 Q  And at some point did some charges regarding Derek Antol and
24    Samantha Conklin come to your attention?
25 A  Yes.  Those were cases ultimately that I believe were assigned

Page 6

1     to me for trial purposes, so once they reach the circuit
2     court.
3  Q  As best you recall did you have anything to do with charging
4     those cases out?
5  A  I was involved in discussions about the charges.  I wasn't --
6     I don't believe I was the person that actually issued the
7     charge, but there were a group of us involved in discussions
8     about the charges before they were actually issued.
9  Q  And is it normal that a group would discuss charges?
10 A  It's not abnormal.  It doesn't happen on every case, but it
11    does happen on quite a few cases.
12 Q  Why did it happen with these cases?
13 A  There was a request by the West Michigan Enforcement Team to
14    have a couple of our assigned drug prosecutors take a look at
15    the charges.
16 Q  And who were the drug prosecutors?
17 A  At that time myself, I believe Rachel McEnhill was on the drug
18    team at that time.  I can't recall if Mr. Medema was on the
19    drug team at that point.  I don't think he was.
20 Q  Once these cases got up to circuit court and were assigned a
21    circuit judge were you the lead prosecutor?
22 A  Yeah.  I would have considered myself the lead prosecutor on
23    the case.
24 Q  Why was the assigned drug prosecutor not the lead prosecutor?
25 A  I actually was the lead drug prosecutor at that time, as well.

Page 7

1  Q  And those cases were resolved by plea at some point in 2015,
2     correct?
3  A  That's my recollection, yes, early 2015.
4  Q  And when something like that happens and there is a companion
5     forfeiture case under the public health code who handles that
6     portion?
7  A  Our office still handles the forfeiture cases and still
8     handles the forfeiture cases actually for the West Michigan
9     Enforcement Team, so we were handling the forfeiture case.
10 Q  But in terms of the individual prosecutor that would be
11    assigned to the forfeiture case is it always the same person
12    that handles the criminal?
13 A  No, no.  Usually we have one person assigned to handle
14    forfeiture cases and it's not always the same person that's
15    assigned to the criminal case.
16 Q  In this particular case were you assigned to handle the
17    forfeitures?
18 A  I don't recall.  I think I handled -- because, ultimately, if
19    you want to call it a package deal was what was reached in
20    terms of resolving the criminal case and the forfeiture cases.
21    I think I handled both of them at that point, but I don't know
22    if the forfeiture case was mine from the beginning.  But
23    usually somebody else files the paperwork on the forfeitures.
24 Q  Do you recall any particular reason why there were four
25    separate forfeiture files?

Page 8

1  A  No.  It was a little -- it seemed a little unusual that there
2     were four and as I recall two were in front of Judge Hicks
3     and two were in front of Judge Marietti, so I don't know how that
4     ended up happening.
5  Q  And like you said, there was a package deal.  When you say
6     package do you mean it included the criminal charges and the
7     forfeiture charges?
8  A  From our standpoint, yes.  The resolution of the criminal case
9     involved a disposition of the forfeiture cases, as well.
10 Q  In front of you we have Deposition Exhibit 1 from the
11    deposition of Lieutenant Fias.  Do you recognize those
12    documents?
13 A  These -- yes.  They appear to be the orders and stipulations
14    resolving the forfeiture cases.
15 Q  Well, there's three out of four there and it was my mistake,
16    but these are --
17 A  I was going to say there should be a fourth one.
18 Q  Yeah.  These are the three that related to Derek.  I think the
19    one that's missing related to Samantha.
20 A  Okay.
21 Q  Do you recognize your signature on the first page of each of
22    those orders?
23 A  Yes.
24 Q  Do you have any independent recollection of your discussions
25    with any representative of WEMET regarding resolving the

2  (Pages 5 to 8)

Electronically signed by Cassandra Rodriguez (101-163-830-7594)                    6645d10c-6dd3-47ac-952f-7a8e548a347d

MATTHEW ROBERTS
7/31/2018

**Page 9**

1    forfeitures?
2    A  I do recall discussing with WEMET resolving the forfeitures as
3       part of the resolution of the criminal cases, as well. And
4       certainly before we signed off on any type of agreement to
5       resolve any forfeiture case we consult with the investigating
6       agency involved in the forfeiture to get their agreement to it
7       because ultimately the -- whatever proceeds are getting from
8       the forfeiture go back to them anyway. We don't -- especially
9       for WEMET we don't keep any of the proceeds from the
10      forfeitures.
11   Q  And who would you have had those discussions with?
12   A  At the time it would have been most likely with Lieutenant
13      Fias.
14   Q  Do you recall, specifically, any conversations -- not the
15      content, but just the fact that you had a conversation with
16      Kate Strauss?
17   A  I have had a lot of conversations with Kate Strauss. Could
18      you be more specific?
19   Q  Well, regarding the Antol/Conklin forfeitures.
20   A  While the case was pending I don't recall having a
21      conversation with Kate Strauss about forfeitures.
22   Q  What about after it was no longer pending?
23   A  Once the cases were resolved we did have a discussion about
24      the property that WEMET still had that did not fall under the
25      property that they had seized that was subject to the

**Page 10**

1    forfeitures.
2    Q  Is it your understanding that they seized -- let's just use an
3       imaginary number of 50 items of property. That's what they
4       seized pursuant to the search warrants.
5    A  Right.
6    Q  Is it your understanding that not necessarily every single
7       item, non-contraband, would necessarily be named in a
8       forfeiture complaint?
9    A  Yes.
10   Q  Okay. So that's two categories of property right off the bat?
11   A  Right.
12   Q  Some of that other property, however, may be evidence or
13      potentially evidence on the criminal side, correct?
14   A  Right.
15   Q  And some of the property named in the forfeiture complaint may
16      also be evidence, correct?
17   A  Correct.
18   Q  At the time, again, we're talking 2015, did the prosecutor's
19      office or you have a policy about retaining property for a
20      period of time after a criminal case was concluded?
21   A  We don't have a policy because, technically, we don't retain
22      the property. Our typical position that we take with police
23      agencies is that we ask that any property that's seized as
24      potential evidence in a case is held during the pendency of
25      any appeal period related to the criminal conviction.

**Page 11**

1    Q  And does that apply whether it's a jury trial or a plea?
2    A  Yes. Because, obviously, there's different timelines. But,
3       yeah, whether it's a plea or a trial it's -- we don't usually
4       authorize the removal or return of any property that was
5       seized until the appeal period is concluded.
6    Q  And what time frame do you tell the police that is?
7    A  We usually don't tell them. They usually contact us to
8       determine whether or not property can be released or not. In
9       fact, they go to our -- they usually go to our chief appellate
10      attorney to -- and he'll calculate whether or not the appeal
11      guidelines -- the appeal timelines have elapsed or not.
12   Q  Do you include -- if you know, does he include, he or she
13      include, the -- 21 days for a plea?
14   A  Right.
15   Q  Forty-two days for a trial and six months for delayed
16      application. Do you know which of those time frames he or she
17      uses?
18   A  I think he generally is conservative and goes with the
19      extended timeline, more the six month, to see if an appeal has
20      been filed or at least the paperwork requesting the
21      appointment of an attorney has been filed in that time period.
22   Q  Okay. Now, with that as the underlying framework when you
23      have an agreement that is resolved by an order and that order
24      requires items to be returned how is the delay from the appeal
25      period handled in that case?

**Page 12**

1    A  Well, an actual order to return the property would trump our
2       policy of saying to not return property that was seized until
3       the appeal period is done. If there's an order from the court
4       saying the property can be disposed of then we'll follow the
5       order of the court.
6    Q  Do you recall having any conversations with Kate Strauss where
7       you instructed her or told her that she could destroy the
8       remaining property?
9    A  I would -- I did not have a conversation with Kate Strauss
10      where I told her to destroy any property.
11   Q  Did you have a conversation with her where you told her she
12      could dispose of the remaining property?
13   A  I had a conversation with Kate Strauss where I told her that
14      property in this case that was not subject to the forfeiture,
15      not covered specifically by the forfeiture orders, that any
16      remaining property held as evidence they could be dealt with
17      pursuant to their normal departmental procedures.
18   Q  Do you agree that those orders require everything that did not
19      contain THC that was seized to be returned?
20   A  I don't know that I would agree with that because this -- my
21      understanding is these orders covered the property that was
22      subject to the forfeiture.
23   Q  Well, take a look -- let me see that. Would you read
24      paragraph 1 into the record?
25   A  "Except as expressed in paragraph 3 below, all personal

3  (Pages 9 to 12)

Electronically signed by Cassandra Rodriguez (101-163-830-7594)                    6645d10c-6dd3-47ac-952f-7a8e548a347d

MATTHEW ROBERTS
7/31/2018

Page 13

1  property seized from claimant and claimant's minor children
2  that does not contain THC shall be returned to claimant."
3  Q   So do you read that as limiting itself to what was in the
4      forfeiture complaint?
5  A   Yes.
6  Q   Do you think the parties can enter into an agreement that
7      covers property broader than what's in the forfeiture
8      complaint?
9  A   I don't know how the court would have jurisdiction over that
10     if it wasn't covered in the original forfeiture.
11 Q   If the parties reach an agreement and it becomes part of the
12     order to resolve the dispute you don't think it's enforceable?
13 A   I think it's enforceable as long as the property was seized
14     pursuant to the forfeiture orders because the forfeiture --
15     the original forfeiture actually contained a detailed listing
16     of all of the property that was seized pursuant to that
17     forfeiture.  I would expect that the property that is covered
18     by this order related to that particular property.
19 Q   So you don't think that if there's a piece of property that's
20     not listed in the forfeiture complaint that the court cannot
21     order the police to return it?
22 A   I don't know how the court would have the jurisdiction to do
23     that if it wasn't subject to the original complaint.
24 Q   Would you agree that the court had subject matter jurisdiction
25     over the forfeiture case?

Page 14

1  A   Yes.
2  Q   And is it your understanding that the DVR was not listed in
3      any of the forfeiture complaints?
4  A   Yes.
5          (Exhibit Number 1 was marked for identification
6          at 3:19 p.m.)
7  Q   (Continuing by Mr. Bostic):  I'm showing you what's been
8      marked as Deposition Exhibit 2.
9          COURT REPORTER:  Exhibit 1.
10         MR. BOSTIC:  Pardon me?
11         COURT REPORTER:  It's one for his deposition.
12         MR. BOSTIC:  Well, okay.  That's fine.  We'll
13     just leave it that way.
14 Q   (Continuing by Mr. Bostic):  One for Fias was previously
15     discussed.  Now, we're looking at number one for Roberts'
16     deposition.
17 A   Okay.
18 Q   If you would, take your time and review these.  One of the
19     things obviously I'm going to ask you is whether or not you
20     recognize them and can attest to whether they are true and
21     accurate copies of communications.
22 A   You previously provided me with copies of these and they
23     appear to be from my review of them, yes.
24 Q   Down at the bottom right corner of each page there's a Bates
25     number.

Page 15

1  A   Okay.
2  Q   Looking at 480.  It's the second page.
3  A   Okay.
4  Q   About a third of the way down there's an email that starts out
5      from me to you in the paragraph designated "A," it says,
6      "Regarding the seized cash, property, and the bond money."  Do
7      you agree that we included disposition of the bond money paid
8      in the forfeiture case as part of the agreement?
9  A   Yes.
10 Q   Do you think the court had jurisdiction over the bond money?
11 A   My assumption was that we were discussing the bond money that
12     was posted as bond for the forfeitures.
13 Q   Right.
14 A   Yes.
15 Q   So when the term property was used there and also in the last
16     sentence of that same paragraph where it says, "At the end of
17     the day," the rest of that sentence, you didn't -- you thought
18     that this was limited to the specific items named in the
19     forfeiture complaint?
20 A   I thought that's what we were discussing at that time, yes.
21 Q   Okay.  So with Bates number 482, again, about a third of the
22     way down there is a -- there's an email generated by you and
23     the second sentence of the first paragraph you're saying, "As
24     you can see, the surveillance system was not seized as part of
25     the forfeiture so I'm sure once the case is resolved, it can

Page 16

1  be released."  Do you see that sentence?
2  A   Yes.
3  Q   So with your acknowledgement there are you still of the
4      position that you thought we were not talking about anything
5      except items in the forfeiture complaint?
6  A   Yes.  Because I specifically mentioned that the surveillance
7      system was not part of the forfeiture complaint, so I was
8      addressing that separately from our discussion about anything
9      covered by the forfeiture.  Because the sentence before that
10     is, "It appears to embrace a 50/50 split on the items seized
11     as part of the forfeiture," and then it goes on to discuss the
12     surveillance system, which was not part of the forfeiture.
13 Q   I'm looking at the bottom of 483, an email from Kate Strauss
14     to you.  In the third paragraph it says, "Derek and Samantha
15     will receive their property back as part of their half."  And
16     then the things that she lists there, those items were
17     actually named in one of the forfeiture complaints, right?
18 A   I believe so, yes.
19 Q   But then going up the page you then ask her to clarify about
20     the security surveillance system.  Did you do that because you
21     and I had already had a conversation about it, specifically?
22 A   I don't have any independent recollection of why I asked that.
23     I might have had some confusion about whether or not the -- at
24     that time whether or not the surveillance system was seized as
25     part of the forfeiture, so I was looking for some

4 (Pages 13 to 16)

Electronically signed by Cassandra Rodriguez (101-163-830-7594)                    6645d10c-6dd3-47ac-952f-7a8e548a347d

MATTHEW ROBERTS
7/31/2018

Page 17

1  clarification on that.
2  Q  And then above that she answers you back.
3  A  Right. And says it was seized -- not forfeited, only seized
4     as evidence, which then prompted my email to you where I
5     talked about it -- it was not forfeited, so once the case was
6     resolved it could be released.
7  Q  And, specifically, as it relates to Bates number 482 and 483
8     do you have any concerns at all -- well, actually, part of
9     hers goes over to 484. Do you have any concern that these are
10    not true and accurate representations of your email exchanges?
11 A  I don't have any concern about that, no.
12 Q  And then going into July and August did at some point you
13    become aware that there were problems in getting the property
14    returned?
15 A  Yes. I think you had communicated to me that you were
16    frustrated about the speed at which some of the property was
17    being released.
18 Q  As far as you know, did your office get any orders accepting
19    the evidence or the seized property from the court's orders?
20 A  Could you repeat that? I'm not sure I understand the
21    question.
22 Q  You mentioned earlier that an order would trump your policy?
23 A  Right.
24 Q  So my question is did you get any orders from the circuit
25    court to exclude items from the return required by that order?

Page 18

1  A  To exclude them, no. What we would have received in all
2     likelihood -- there are copies of these orders.
3  Q  Right. But in terms --
4  A  Saying about what -- talking about the disposition of certain
5     -- the property covered by the forfeiture.
6  Q  But in terms of withholding some of the property for the
7     appeal period did you get any orders from the circuit court
8     excluding things, so that you could comply with your policy?
9  A  No.
10 Q  Did WEMET ask you to get any orders excluding property?
11 A  No.
12 Q  And do you agree that at some point you were -- your office
13    was served with true copies of those three orders?
14 A  I would assume that. I mean, I don't recall seeing them as
15    true copies, but it certainly would be unusual for us not to
16    receive them.
17 Q  In your Exhibit Number 1 --
18 A  Yeah.
19 Q  -- if you would look at Bates page 486. There's a short email
20    there at the top from you to me and the content suggests that
21    you had the orders. Do you agree?
22 A  Yes.
23 Q  Now, if you would look at 488 at the top there's an email from
24    you to me. Would you read the content of that email into the
25    record?

Page 19

1  A  The one from me to you?
2  Q  Yes.
3  A  "It is my understanding we have everything covered by the
4     forfeiture taken care of. There are some items seized as
5     'evidence' that obviously cannot be returned until after the
6     appeal period has run, but as for the money and the gun, which
7     I'm very uneasy about returning, we should be all set."
8  Q  So if WEMET -- the way you worded that if WEMET held property
9     that was not listed in the forfeiture complaint it would be
10    your position that the circuit court didn't have jurisdiction
11    to order the return?
12 A  Yes.
13 Q  If WEMET held some property as evidence that was listed in the
14    forfeiture complaint would you agree that WEMET violated the
15    order? Let me rephrase that. WEMET wasn't a party. Would
16    you agree that the order wasn't followed?
17 A  Could you say that one more time?
18 Q  Let's make it a specific example. The phones, the phones had
19    recordings on them the state seem to think were important.
20 A  Okay.
21    MR. BENSON: Who is "they"?
22    MR. BOSTIC: That WEMET seemed to think were
23    important.
24 Q  (Continuing by Mr. Bostic): If WEMET held those phones for
25    the appeal period do you agree that the orders of the circuit

Page 20

1  court were not followed?
2  A  If those phones were originally subject to the forfeiture and
3     they still held onto them then that would be violating the
4     court's order.
5  Q  And going back to 483, we had talked about -- that's what I
6     was referring to is you thought that those two Motorolas, the
7     one iPhone 5, the laptop, were named in one of the forfeiture
8     complaints?
9  A  I was assuming they were at that point, yes.
10 Q  Right. So working with that assumption --
11 A  Yes.
12 Q  -- if WEMET then withheld one of those items then that's what
13    I was referring to, that they would not have been complying
14    with the order. Do you agree with that?
15 A  I would agree with that.
16 Q  So looking at page 488, that email that you read into the
17    record was dated September 10, 2015.
18 A  Okay.
19 Q  Do you recall when the criminal judgments were entered?
20 A  I want to say maybe March. I don't really have any
21    independent recollection of when that happened. I know we
22    were -- by this time I know we were a few months removed from
23    the criminal cases being --
24 Q  Well, and that's what I'm getting at is the six-month appeal
25    period, the extended appeal period, would probably not have

5  (Pages 17 to 20)

Tri-County Court Reporters
248-608-9250

Electronically signed by Cassandra Rodriguez (101-163-830-7594)              6645d10c-6dd3-47ac-952f-7a8e548a347d

MATTHEW ROBERTS
7/31/2018

## Page 21

1 been over in September?

2 A Probably not, but it -- my recollection is it would have been
3 getting close.

4 Q Now, looking at page 490, a letter from me to Mr. Hilson, do
5 you recall this letter being brought to your attention?

6 A Yes.

7 Q And then looking at page 492 of the exhibit there's an email
8 from you to me on March 3rd, 2016.

9 A Okay.

10 Q Do you think by this point in time we're beyond any appeal
11 period?

12 A I would imagine we were past the appeal period at that point,
13 yes.

14 Q What efforts did you take once you had this letter brought to
15 your attention to resolve the problem, if anything?

16 A The February letter?

17 Q Yes.

18 A I think Mr. Hilson brought it to my attention and I think --
19 yeah, I think I sent you an email probably just as he brought
20 it to my attention and then I would assume we had a phone
21 conversation at that point.

22 Q Well, not so much with me, but what did you do in terms of
23 dealing with WEMET, if anything, to resolve this?

24 A I don't recall exactly what I did. I assume I would have
25 contacted Lieutenant Fias and found out what property hadn't

## Page 22

1 been returned.

2 Q When did you find out that the DVR had been destroyed?

3 A To the best of my recollection it was around -- it would have
4 been after you sent the letter in February of 2016.

5 Q Did you ever have any conversations with anybody at WEMET that
6 involved destroying the DVR because it contained the images of
7 undercover officers?

8 A I did not.

9 Q Once you found out that the DVR was destroyed did you provide
10 any advice to WEMET?

11 A No.

12 Q Did they ask you for any advice?

13 A No. As I recall I had a conversation with Lieutenant Fias.
14 That's when I found out about it and he indicated he was going
15 to reach out to you and try to make arrangements to replace it
16 or compensate Mr. Antol for the DVR.

17 Q Did you ever have any conversations with anybody at WEMET
18 about them taking their investigation for federal prosecution?

19 A I don't recall any. Oftentimes in some of these cases
20 involving larger amounts of controlled substances we say has
21 there been a discussion with the feds about the feds taking
22 the case over, but we don't -- we basically just wait for the
23 feds to decide if they're going to take the case or not. We
24 don't usually refer cases to the feds.

25 Q Right. I didn't mean a referral from your office. I just

## Page 23

1 meant a discussion where WEMET was considering -- or a member
2 of WEMET.

3 A I don't recall WEMET discussing whether or not they referred
4 it federally. My recollection is at the time the feds weren't
5 taking any medical marijuana cases, so I'm not sure how
6 fruitful any discussions would have been.

7 Q Did you ever have any conversations with the members of the
8 Tobacco Tax Team as you were processing this case or getting
9 ready for trial?

10 A If I did it would have been briefly probably in preparation
11 for the prelim I think if they were to be witnesses at the
12 prelim, but I don't recall any lengthy discussions with them
13 about anything.

14 Q Did you ever see the footage from the DVR where they cornered
15 Samantha Conklin in the building?

16 A I never saw any of the footage from the DVR.

17 Q Did you ever have a discussion with Mr. Dent about the
18 circumstances surrounding the DVR or its destruction?

19 A No.

20 Q Did you ever have a conversation with Kate Strauss about the
21 DVR or its destruction?

22 A We had a conversation about the DVR prior to it being
23 destroyed, but -- the one I've referenced. I don't recall
24 having a conversation with her after that.

25 Q Yeah. Other than what's reflected --

## Page 24

1 A Yeah.

2 Q -- in the emails in Exhibit 1 --

3 A Right. Yeah.

4 Q -- do you have -- I mean, any conversation you would have had
5 with her would it have been along the same lines as what's in
6 there?

7 A Yes. It would have been related to property not covered by
8 the forfeiture. It was seized as evidence and what could be
9 done with it once -- pursuant to normal WEMET procedures once
10 the appeal period was ready and they were ready to return
11 whatever property could be returned.

12 Q Did you ever have a conversation about the destruction of the
13 DVR with Officer Bringedahl?

14 A No.

15         MR. BOSTIC: I have no further questions.

16         * * * * * * * *

17         EXAMINATION

18 BY MR. BENSON:

19 Q Mr. Roberts, I'm Curt Benson. I represent Sergeant Strauss
20 among other Defendants. So just so I'm clear, you never
21 instructed Sergeant Strauss to return the DVR to the
22 Plaintiffs, correct?

23 A To return it?

24 Q Correct.

25 A I did not instruct her to return it, no.

6 (Pages 21 to 24)

Electronically signed by Cassandra Rodriguez (101-163-830-7594)          6645d10c-6dd3-47ac-952f-7a8e548a347d

MATTHEW ROBERTS
7/31/2018

Page 25

1  Q  And nor did you ever provide her with a copy of this court
2     order dated -- the June 29th, 2015 court order by Judge Hicks,
3     correct?
4  A  I didn't provide Kate Strauss with a copy of that order, no.
5  Q  Are you aware of anybody providing her with a copy?
6  A  I am not.
7        MR. BENSON:  I have nothing further.
8        MR. SADOWSKI:  I don't have any questions.
9        ** ** ** ** ** **
10       RE-EXAMINATION
11 BY MR. BOSTIC:
12 Q  On your Exhibit 1 there, page 486.
13 A  My Exhibit 1?  Okay.  486.  Okay.
14 Q  Your August 4, 2015 email to me you said you forwarded the
15    orders to WEMET for them to process.  How did you forward them
16    to WEMET?
17 A  I likely just emailed them to Lieutenant Fias.
18 Q  Okay.
19 A  I don't recall who I specifically forwarded them to.
20 Q  Did you guys have like a box, a mailbox inside your office,
21    where they would pick things up time to time?  Could it have
22    been going that way?
23 A  It's possible, but that's just whoever comes to pick up
24    subpoenas or notices would have gotten it.
25 Q  Court runner or whatever?

Page 26

1  A  Right, right.  I just want to clarify something.  It wouldn't
2     normally be me as the attorney on the case that would disperse
3     an order once we got it.  I can't speak to whether or not the
4     secretary that's assigned to Judge Marietti cases or Judge
5     Hicks cases would have dispersed the order.  But to me,
6     personally, if I referenced forwarding the orders to WEMET
7     like you said it might have been through the box or it might
8     have been through an email to Lieutenant Fias.  I just want to
9     clarify that.  It wouldn't normally be me that does that.
10 Q  You mean the physical aspect of --
11 A  Yeah.  The actual act of here's a copy of the order, you know,
12    whether that's through email or in person or through the
13    mailbox.
14       MR. BOSTIC:  Okay.  I don't have anything else.
15       MR. BENSON:  Either do I.
16       MR. BOSTIC:  We're all done.
17       MR. SADOWSKI:  Yeah.
18       (The deposition concluded at 3:43 p.m.)
19
20
21
22
23
24
25

Page 27

1  STATE OF MICHIGAN      )
2                         ) ss:
3  COUNTY OF KENT         )
4
5
6        I hereby certify that the foregoing attached pages
7  are a full and complete transcript of the proceedings held
8  on the date and at the place hereinbefore set forth.  I
9  reported electronically the proceedings held in the matter
10 hereinbefore set forth, and the testimony so reported was
11 subsequently transcribed under my direction and supervision,
12 and the foregoing is a full, true and accurate transcript of
13 my original electronic recording.
14
15
16       Cassandra M. Rodriguez, CER-8186
17
18
19
20
21
22 Notary Public
23 Kent County, Michigan
24 My Commission Expires:
25 May 6, 2023

7 (Pages 25 to 27)

Electronically signed by Cassandra Rodriguez (101-163-830-7594)      6645d10c-6dd3-47ac-952f-7a8e548a347d

STATE OF MICHIGAN

IN THE 14th CIRCUIT COURT FOR MUSKEGON COUNTY

People of the State of Michigan,
    Plaintiff,

Docket No. 14-49627-CF

v.

$21,021.00 in U.S. Currency    **FILED**    Hon. Timothy G. Hicks
    Defendant.                            District Court Judge

Derek Antol,              JUN 2 9 2015
    Claimant

CIRCUIT COURT RECORDS

| Matthew Roberts P59198 | J. Nicholas Bostic P40653 |
| Assistant Prosecutor | Attorney for Defendant |
| 990 Terrace St., 5th Floor | 909 N. Washington Ave. |
| Muskegon, MI 49442 | Lansing, MI 48906 |
| (231)724-6435 | (517) 706-0132 |

## CONSENT JUDGMENT FOR ORDER OF PARTIAL FORFEITURE

The Parties hereby inform the Court of the following agreement:

1. Except as expressed in Paragraph 3 below, all personal property seized from Claimant

and Claimant's minor children that does not contain THC shall be returned to Claimant.

2. The bond paid by Claimant to preserve his rights to contest this forfeiture shall be

returned to Claimant.

3. Both Parties agree that the amount of Twelve Thousand One Hundred Twenty and

00/100 Dollars ($12,120.00) shall be forfeited to the Western Michigan Enforcement Team.

4. The Parties agree that this disposition forecloses all further claims for forfeiture by

Plaintiff with prejudice and without costs or attorney fees to either party.

WHEREFORE, the Parties respectfully request this Honorable Court enter an order

reflecting the above agreement.

Matthew Roberts P59198              Nicholas Bostic P40653
Assistant Prosecutor                  Attorney for Claimant

Page 1 of 2



EXHIBIT
CR.
Hos-1
7-31-18

## CONSENT ORDER OF PARTIAL FORFEITURE

At a session of said court held the 24 day of
June, 2015 in the city of Muskegon,
Muskegon County, Michigan:

Hon. Timothy G. Hicks, presiding:

Upon the filing and reading of the above stipulation, IT IS HEREBY ORDERED that the

sum of Twelve Thousand One Hundred Twenty and 00/100 Dollars ($12,120.00) shall be

forfeited to the Western Michigan Enforcement Team, all other property not containing THC

shall be returned to Claimant, and all other claims for forfeiture are precluded. Each party shall

bear its own costs and attorney fees. This is a final order that disposes of all claims by all parties

and closes this case.

Timothy G. Hicks
Circuit Court Judge

Page 2 of 2

P - 000019

STATE OF MICHIGAN

IN THE 14th CIRCUIT COURT FOR MUSKEGON COUNTY

People of the State of Michigan,
    Plaintiff,

Docket No. 14-49628-CF

v.

$124.00 in U.S. Currency
    Defendant.

Hon. William C. Marietti
Circuit Court Judge

Derek Antol,
    Claimant

---

Matthew Roberts P59198
Assistant Prosecutor
990 Terrace St., 5th Floor
Muskegon, MI 49442
(231)724-6435

J. Nicholas Bostic P40653
Attorney for Claimant
909 N. Washington Ave.
Lansing, MI 48906
(517) 706-0132

---

## STIPULATION AND ORDER OF DISMISSAL WITH PREJUDICE

The Parties hereby inform the Court of the following agreement:

1. All personal property seized from Claimant and Claimant's minor children that does not

contain THC shall be returned to Claimant.

2. The bond paid by Claimant to preserve his rights to contest this forfeiture shall be

returned to Claimant.

3. Both Parties agree that this matter is dismissed with prejudice without costs or attorney

fees to either party.

WHEREFORE, the Parties respectfully request this Honorable Court enter an order

reflecting the above agreement.

Matthew Roberts P59198
Assistant Prosecutor

J Nicholas Bostic P40653
Attorney for Claimant

Page 1 of 2

P - 000020

ORDER OF DISMISSAL

At a session of said court held the ʲ ᴸday of
June, 2015 in the city of Muskegon,
Muskegon County, Michigan:

Hon. William C. Marietti, presiding:

Upon the filing and reading of the above stipulation, IT IS HEREBY ORDERED that this

matter is dismissed with prejudice without costs and without attorney fees. This is a final order

that disposes of all claims by all parties and closes this case.

William C. Marietti
Circuit Court Judge

Page 2 of 2

P - 000021

STATE OF MICHIGAN

IN THE 14th CIRCUIT COURT FOR MUSKEGON COUNTY

People of the State of Michigan,
    Plaintiff,

Docket No. 14-49638-CF

v.

$1935.00 in U.S. Currency
    Defendant.

Hon. William C. Marietti
Circuit Court Judge

Derek Antol,
    Claimant

| | |
|---|---|
| Matthew Roberts P59198 | J. Nicholas Bostic P40653 |
| Assistant Prosecutor | Attorney for Claimant |
| 990 Terrace St., 5th Floor | 909 N. Washington Ave. |
| Muskegon, MI 49442 | Lansing, MI 48906 |
| (231)724-6435 | (517) 706-0132 |

## STIPULATION AND ORDER OF DISMISSAL WITH PREJUDICE

The Parties hereby inform the Court of the following agreement:

1. All personal property seized from Claimant that does not contain THC shall be returned to Claimant.

2. The bond paid by Claimant to preserve his rights to contest this forfeiture shall be returned to Claimant.

3. Both Parties agree that this matter is dismissed with prejudice without costs or attorney fees to either party.

WHEREFORE, the Parties respectfully request this Honorable Court enter an order reflecting the above agreement.

_____
Matthew Roberts P59198
Assistant Prosecutor

_____
J Nicholas Bostic P40653
Attorney for Claimant

Page 1 of 2

P - 000022

ORDER OF DISMISSAL

At a session of said court held the 2nd day of
June, 2015 in the city of Muskegon,
Muskegon County, Michigan:

Hon. William C. Marietti, presiding:

Upon the filing and reading of the above stipulation, IT IS HEREBY ORDERED that this

matter is dismissed with prejudice without costs and without attorney fees. This is a final order

that disposes of all claims by all parties and closes this case.

William C. Marietti
Circuit Court Judge

Page 2 of 2

5/19/15

## Nick Bostic

| | |
|---|---|
| **From:** | Roberts, Matthew <RobertsMa@co.muskegon.mi.us> |
| **Sent:** | Friday, June 19, 2015 4:22 PM |
| **To:** | 'barristerbostic@att.net' |
| **Subject:** | RE: Antol/Conklin |

I've explained your position to WEMET and have received no indication that they are not in agreement at this point. I think it is safe to say we have an agreement, and we can finalize the details on Monday.

Matt Roberts
Chief Trial Attorney
Muskegon County Prosecutor's Office
990 Terrace, Fifth Floor
Muskegon, MI 49442
231-724-6435



**From:** Nick Bostic [mailto:bosticjn@yahoo.com] **On Behalf Of** barristerbostic@att.net
**Sent:** Friday, June 19, 2015 12:05 PM
**To:** Roberts, Matthew; jcs@parmenterlaw.com; K.J. Wistrom; 'Fedynsky, John (AG)'
**Subject:** RE: Antol/Conklin

Okay, here is some progress.

A. Regarding the seized cash, property and bond money: Each of my letters confirming our discussions very clearly treated the seized cash, the personal property and the bond money separately. See for example, my letter of May 21, Item 4 and my June 17 letter, Item 3, Item 4, Item 7, and Item 8. When we met on June 15, you indicated a complete understanding of this dichotomy. Furthermore, when you indicated to us that WEMET was at 70WEMET/30claimants, you made no distinction that you were talking about any different set or subset of property. We had every reason to believe you were talking about the seized cash only. Each time any one of us discussed the total value of seized property, I clarified that the split was for seized cash only. At the end of the day, all personal property not containing THC is returned, all bond money is returned, and WEMET retains $12,120.00 of the seized cash.

B. I still need the "no up front jail" agreement from you on Samantha's misdemeanor plea.

C. The clients are in agreement to drop paragraph 17.

D. The December 31, 2015 deadline for moving business operations is acceptable.

E. The dismissal of the federal suit will be with prejudice.

F. Global releases of liability are acceptable. I thought about having releases signed by law enforcement and your office so that no one tries to charge them with something still lying around or tries to submit a warrant request via a different officer. Again, enforceability becomes a problem. You are inherently correct. If I find out that Dent or anyone on his

1



EXHIBIT C2
Roberts-1
7-31-18

## Nick Bostic

| | |
|---|---|
| **From:** | Fedynsky, John (AG) <FedynskyJ@michigan.gov> |
| **Sent:** | Friday, June 19, 2015 4:40 PM |
| **To:** | barristerbostic@att.net |
| **Subject:** | RE: Antol/Conklin |

Not sure what you want me to review here, Nick. Was there supposed to be an attachment or some other material?

I would stipulate to dismissal of the federal lawsuit with prejudice. Otherwise I'm not sure to what the remainder of your message refers.

John

**From:** Nick Bostic [mailto:bosticjn@yahoo.com] **On Behalf Of** barristerbostic@att.net
**Sent:** Friday, June 19, 2015 12:05 PM
**To:** 'Roberts, Matthew'; jcs@parmenterlaw.com; K.J. Wistrom; Fedynsky, John (AG)
**Subject:** RE: Antol/Conklin

Okay, here is some progress.

A. Regarding the seized cash, property and bond money: Each of my letters confirming our discussions very clearly treated the seized cash, the personal property and the bond money separately. See for example, my letter of May 21, Item 4 and my June 17 letter, Item 3, Item 4, Item 7, and Item 8. When we met on June 15, you indicated a complete understanding of this dichotomy. Furthermore, when you indicated to us that WEMET was at 70WEMET/30claimants, you made no distinction that you were talking about any different set or subset of property. We had every reason to believe you were talking about the seized cash only. Each time any one of us discussed the total value of seized property, I clarified that the split was for seized cash only. At the end of the day, all personal property not containing THC is returned, all bond money is returned, and WEMET retains $12,120.00 of the seized cash.

B. I still need the "no up front jail" agreement from you on Samantha's misdemeanor plea.

C. The clients are in agreement to drop paragraph 17.

D. The December 31, 2015 deadline for moving business operations is acceptable.

E. The dismissal of the federal suit will be with prejudice.

F. Global releases of liability are acceptable. I thought about having releases signed by law enforcement and your office so that no one tries to charge them with something still lying around or tries to submit a warrant request via a different officer. Again, enforceability becomes a problem. You are inherently correct. If I find out that Dent or anyone on his behalf attempts to retaliate, the federal lawsuit will be swift. My warning, however, that any federal indictment that results from information WEMET, MSP, Muskegon Police, or your office sent to the feds concerning the events in the current litigation will void this entire agreement.

If WEMET will take that $12,120.00, it appears we have a deal.

We still need to hear from Mr. Fedynsky.

1

P - 000480

J. Nicholas Bostic
Attorney at Law
909 N. Washington Ave.
Lansing, MI 48906
517-706-0132
Fax: 517-484-2330
barristerbostic@att.net

**From:** Roberts, Matthew [mailto:RobertsMa@co.muskegon.mi.us]
**Sent:** Friday, June 19, 2015 11:26 AM
**To:** 'barristerbostic@att.net'
**Subject:** RE: Antol/Conklin

So what is the bottom line that you want me to tell them? I'm sure we can work it out but I'm a little confused between the property, the bond money, and the cash as to exactly what we are talking about. To be clear, I don't know that WEMET is changing their position, since this is the first time I have discussed the numbers specifically with them.



Matt Roberts
Chief Trial Attorney
Muskegon County Prosecutor's Office
990 Terrace, Fifth Floor
Muskegon, MI 49442
231-724-6435

**From:** Nick Bostic [mailto:bosticjn@yahoo.com] **On Behalf Of** barristerbostic@att.net
**Sent:** Friday, June 19, 2015 10:56 AM
**To:** Roberts, Matthew; jcs@parmenterlaw.com; K.J. Wistrom
**Cc:** 'Fedynsky, John (AG)'
**Subject:** RE: Antol/Conklin

Here are my findings after looking at the forfeitures and the search warrant returns:

| | |
|---|---|
| 49626-Samantha | Pistol, Motorola Droid phone, $1160.00, Great American Double Action pistol |
| 49627-Derek | $21,021.00. |
| 49628 Derek | $124.00, Apple Iphone5, ASUS computer, Motorola Droid. |
| 49638 Derek | $1935.00 |
| **Total cash** | **$24,240.00. Fifty percent is $12,120.00 to WEMET.** |

The search warrant for Apple Avenue shows 4 phones:
Motorola Droid (0567)
iPhon5 (no SN)

2

Motorola Droid (6473)
Samsung (8022).

In forfeiture case 49626 the Great American double action revolver is listed in the complaint so it must be returned. Because it is listed in the complaint as subject to forfeiture, it must be returned because this means it was never administratively forfeited.

Your offer to us was %50 of the seized money with the bond money being returned to the Claimants. Nothing was ever mentioned about putting a value on the property and putting it in the mix.

These are my observations. I still need to discuss this with my client but WEMET's change in position here is not good faith.

**From:** Roberts, Matthew [mailto:RobertsMa@co.muskegon.mi.us]
**Sent:** Friday, June 19, 2015 9:49 AM
**To:** 'barristerbostic@att.net'; 'wistromlaw@gmail.com'
**Subject:** FW: Antol/Conklin

Below you will find that email communication I received from WEMET this morning.  It appears to embrace a 50/50 split on the items seized as part of the forfeiture.  As you can see, the surveillance system was not seized as part of the forfeiture so I'm sure once the case is resolved, it can be released.  I am also going to forward to you the email I received from Mr. Schrier regarding his concerns so that they may be incorporated.

As it relates to item 17, Detective Dent, neither Chief Lewis from the Muskegon Police Department, nor Mr. Schrier, the city's corporate attorney can or will agree to a provision that Detective Dent be excluded from an investigation.  However, two things are important as it relate to your concerns.  First, Detective Dent's assignment to WEMET is due to end later this summer once some Federal investigations conclude and he will be returning to the Muskegon Police Department as a road officer.  Second, I have spoken with Detective Dent and he has assured me that he will, of his own volition, not participate in any investigation into Derek or Samantha.

I do not believe Detective Dent has a personal agenda, but I don't expect to convince you anymore than you could convince me.  I would hate to see a carefully negotiated agreement come undone because of a virtually unenforceable provision not being included.  I'm sure if there were any future investigation or "harassment" by Detective Dent, you would take swift action against him and the department, regardless of the outcome of this case.

I hope that this will bring these matters to a close.  At the outset of this case, the idea of Ms. Conklin receiving a misdemeanor was so far from the realm of possibility that I can hardly believe WEMET is alright with this resolution.  I'm sure I will take some grief from my boss about it, but given the sheer number of competing interests involved, I can justify it in my own mind.

Matt Roberts
Chief Trial Attorney
Muskegon County Prosecutor's Office
990 Terrace, Fifth Floor
Muskegon, MI 49442
231-724-6435



3

**From:** Straus, Kathryn (MSP) [mailto:StrausK1@michigan.gov]
**Sent:** Friday, June 19, 2015 9:01 AM
**To:** Roberts, Matthew
**Subject:** RE: Antol/Conklin

Matt,

No the security system is not part of the agreement because it was not forfeited, only seized as evidence.

Kate

**From:** Roberts, Matthew [mailto:RobertsMa@co.muskegon.mi.us]
**Sent:** Friday, June 19, 2015 8:58 AM
**To:** Straus, Kathryn (MSP)
**Subject:** RE: Antol/Conklin

Kate,

Sounds good. I will let Botic and Wistrom know. What about the security/surveillance system seized from the store, or are you including that in the calculation?

Matt Roberts
Chief Trial Attorney
Muskegon County Prosecutor's Office
990 Terrace, Fifth Floor
Muskegon, MI 49442
231-724-6435



**From:** Straus, Kathryn (MSP) [mailto:StrausK1@michigan.gov]
**Sent:** Friday, June 19, 2015 8:54 AM
**To:** Roberts, Matthew
**Subject:** Antol/Conklin

Matt,

I talked to Michelle and Andy yesterday in regards to the Antol/Conklin case. We looked at the forfeitures that they posted bond on. Here is what we are willing to agree to in regards to the forfeiture. Anything short of this and we are done negotiating, and would like to take the case to trial.

Total currency and property seized, and bond amount between 885 E Apple, 1769 N. Green Creek is $27,395.00.

Derek and Samantha will receive their property back as part of their half, 2 Motorola phones, 1phone5, ASUS laptop, and Sam's Kel-Tec 9mm with a total value of $450.00. These items are assigned a value by the Detectives and are usually worth more. Value is placed low at time of incident to assist with a reasonable bond amount.

4

With a value assigned of $450.00 for property, Derek and Samantha will receive a check for $13,022.50.

WEMET will retain a total of $13,922.50.

The only other item in question is a very old gun that was located on Farr Rd. They did not post bond on this item and therefore it's not involved in this agreement. We are only willing to return Sam's gun (9mm Kal Tec) to her because of the misdemeanor plea. However, if she does not want it, we will be happy to destroy it. But this agreement still stands.

Thanks for your assistance in this matter Matt,

Kate

5

P - 000484

## Nick Bostic

| | |
|---|---|
| **From:** | Roberts, Matthew <RobertsMa@co.muskegon.mi.us> |
| **Sent:** | Wednesday, July 22, 2015 11:30 AM |
| **To:** | 'barristerbostic@att.net' |
| **Subject:** | RE: Antol/Conklin |

Did you send me copies of the signed orders? It seems like I saw one but aren't there 4 cases?



Matt Roberts
Chief Trial Attorney
Muskegon County Prosecutor's Office
990 Terrace, Fifth Floor
Muskegon, MI 49442
231-724-6435

**From:** Nick Bostic [mailto:bosticjn@yahoo.com] **On Behalf Of** barristerbostic@att.net
**Sent:** Wednesday, July 22, 2015 11:03 AM
**To:** Roberts, Matthew
**Subject:** Antol/Conklin

Can you talk to WEMET and expedite the return of the property, cash and bonds on the forfeitures?

Nick Bostic

1

P - 000485

## Nick Bostic

| | |
|---|---|
| **From:** | Roberts, Matthew <RobertsMa@co.muskegon.mi.us> |
| **Sent:** | Tuesday, August 04, 2015 9:32 AM |
| **To:** | 'barristerbostic@att.net' |
| **Subject:** | RE: Antol/Conklin |

I have forwarded the orders to WEMET for them to process.



Matt Roberts
Chief Trial Attorney
Muskegon County Prosecutor's Office
990 Terrace, Fifth Floor
Muskegon, MI 49442
231-724-6435

**From:** Nick Bostic [mailto:bosticjn@yahoo.com] **On Behalf Of** barristerbostic@att.net
**Sent:** Sunday, August 02, 2015 9:24 AM
**To:** Roberts, Matthew
**Cc:** K.J. Wistrom
**Subject:** Antol/Conklin

Matt,

On July 8, 2015, we served a copy of the judgment for partial order of forfeiture in 49627 ($21,021.00) and on June 23, 2015, we served a copy of the orders of dismissal in 49628 and 49638. All three of these involve Derek. Apparently, when I sent 49626 and 49627 to the clerk in the same envelope, they did not read them and realize there were two different files. They have never returned 49626 to me which involves Samantha.

Derek is in immediate need of the cash from all three. The proceedings and seizures have placed him in significant financial strain regarding his dwelling. Please instruct WEMET that they are to immediately get the money in his hands including all bond money. I know it usually takes time to process payments through government entities but they only had 21 days from the date of the orders to satisfy them. They need to make whatever exceptions are necessary to have this money in his hands by Tuesday. If their delay causes him to get evicted or lose his land contract, we will have no choice but to ask the court to set aside the civil portions of our settlement.

At this point, I am entitled to garnish WEMET's bank accounts to enforce these judgments. That will entail additional costs and attorney fees which we will be WEMET's responsibility.

J. Nicholas Bostic
Attorney at Law
909 N. Washington Ave.
Lansing, MI 48906

1

P - 000486

517-706-0132
Fax: 517-484-2330
barristerbostic@att.net

2

P - 000487

**Nick Bostic**

| | |
|---|---|
| **From:** | Roberts, Matthew <RobertsMa@co.muskegon.mi.us> |
| **Sent:** | Thursday, September 10, 2015 8:40 AM |
| **To:** | 'barristerbostic@att.net' |
| **Subject:** | RE: Samantha's forfeiture |

It is my understanding we have everything covered by the forfeiture taken care of.  There are some items seized as "evidence" that obviously cannot be returned until after the appeal period has run, but as for the money and the gun, which I'm very uneasy about returning, we should be all set.



Matt Roberts
Chief Trial Attorney
Muskegon County Prosecutor's Office
990 Terrace, Fifth Floor
Muskegon, MI 49442
231-724-6435



**From:** Nick Bostic [mailto:bosticjn@yahoo.com] **On Behalf Of** barristerbostic@att.net
**Sent:** Wednesday, September 09, 2015 5:39 PM
**To:** Roberts, Matthew
**Subject:** RE: Samantha's forfeiture

I heard there was a conversation setting up a conversation for tomorrow. Hope they come through.

**From:** Roberts, Matthew [mailto:RobertsMa@co.muskegon.mi.us]
**Sent:** Wednesday, September 09, 2015 1:07 PM
**To:** 'barristerbostic@att.net'
**Subject:** RE: Samantha's forfeiture

It should be taken care of now.



Matt Roberts
Chief Trial Attorney
Muskegon County Prosecutor's Office
990 Terrace, Fifth Floor
Muskegon, MI 49442
231-724-6435

1



**From:** Nick Bostic [mailto:bosticjn@yahoo.com] **On Behalf Of** barristerbostic@att.net
**Sent:** Tuesday, September 08, 2015 4:47 PM
**To:** Roberts, Matthew; K.J. Wistrom
**Subject:** Samantha's forfeiture

Matt,

Attached is the order dismissing the forfeiture regarding Samantha with prejudice. This order was served on you on August 17, 2015. Am I really going to have to file motions to enforce compliance with these orders or for sanctions? Enough is enough.


J. Nicholas Bostic
Attorney at Law
909 N. Washington Ave.
Lansing, MI 48906
517-706-0132
Fax: 517-484-2330
barristerbostic@att.net

2

*2/29/16*

# BOSTIC & ASSOCIATES

Attorneys at Law

J. Nicholas Bostic
Senior Litigation Attorney

909 N Washington Ave · Lansing MI 48906
T: 517.706.0132 · F: 517.484.2330
www.barristerbostic.com

Pamela J. Bostic
Legal Secretary
Danette K. Axel
Secretary

February 29, 2016

Dale J. Hilson
Muskegon County Prosecutor
990 Terrrace St – Floor 5
Muskegon MI 49442

RE:    People v. Conklin, File #15-65976-FH*
Antol et al. v. Dent, et al., Western District #1:14-cv-00793
People v. $21,160.00 (Claimant Conklin), File #14-49636-CF*
People v. $21,021.00 (Claimant Antol), File #14-49627-CF*
People v. $124.00 (Claimant Antol), File#14-49628-CF*
People v. $,1925.00 (Claimant Antol), File #14-49638-CF*

Dear Mr. Hilson,

Enclosed you will find a draft motion and order to show cause seeking to hold you in contempt for failing to honor the judgments in the above matters. Those marked with an asterisk had a specific provision for the return of all property. We served the orders in the forfeiture cases in June and July 2015. On July 22, 2015, I sent Mr. Roberts an e-mail asking him to have WEMET expedite return of the property, seized cash, and forfeiture bonds. On August 2, 2015, I sent an e-mail to Mr. Roberts to follow up and expedite satisfaction of those judgments. He responded on August 4, 2015. Eventually, all bond money and property except a DVR were returned. WMET wanted to retain certain things during the appeal period. While this was not worked out in advance as part of the agreement, we did not object. On September 9, 2015, I sent an e-mail to Mr. Roberts again seeking full compliance (bond money return still outstanding). On September 10, 2015, he replied. On November 9, 2015, I sent another e-mail once again asking that all property be returned (DVR and items considered "evidence").

As it stands right now, I believe the only thing not returned is the DVR. I obviously should have just taken post-judgment enforcement action in September and not extended any courtesies to the drug team or your office. If I have to file this motion and order to show cause, we will seek costs, attorney fees and sanctions. Additionally, we have no reason to not simply reinstate the civil rights lawsuit. The DVR must be delivered to my client by the close of business on March 7, 2016 or we will initiate all available means of enforcement of the court's orders.

Sincerely,

J. Nicholas Bostic
Attorney at Law

JNB/pjb
Cc:    Derek Antol/Samantha Conklin
       Client file

Admitted to Practice
All Michigan Courts–state and federal
United States Supreme Court · U.S. Court of Appeals–6th and 9th Circuits

Approved, SCAO

| | Original - Court<br>1st copy - Subject | 2nd copy - Return<br>Additional copies as needed<br>PROBATE JIS CODE: MOT, OSC |

| STATE OF MICHIGAN | | MOTION AND/OR ORDER TO<br>SHOW CAUSE | CASE NO. |
|---|---|---|---|
| 14th | JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | | 14-49627-CF |

Court address                                                                                        Court telephone no.
990 Terrace St., Muskegon, MI 49442

| Plaintiff(s)/Petitioner(s)<br>People | v | Defendant(s)/Respondent(s)/Probationer<br>$1,1600.00 (Antol Claimant) |

☐ Probate    ☐ Juvenile    In the matter of _____

## MOTION AND AFFIDAVIT

1. I am interested in this matter as **Attorney for Claimant** _____.

2. **D. J. Hilson**                    ☑ has failed to comply with an order dated **06/29/2015** ____.
   Name (type or print)                ☐ is in contempt for _____.
   State with particularity admissible facts establishing this motion.
   **Failing to return all personal property to Claimant Derek Antol**

3. I request an order directing **D J Hilson** _____ to show cause why
                                 Name (type or print)

   ☑ a. he/she should not be found in  ☑ civil  ☑ criminal   contempt of court.
   ☐ b. judgment should not be entered against him/her (as surety/agent) for the full amount of recognizance.
   ☐ c. judgment should not be entered against him/her for failure to file a garnishee disclosure.
4. This affidavit is made on my personal knowledge and, if sworn as a witness, I can testify competently to the facts in this motion
   and affidavit.

                                                                    Signature
Subscribed and sworn to before me on _____ ___DRAFT_____ , _____ County, Michigan.
                                        Date

My commission expires: _____ __Signature_____
                          Date

Notary public, State of Michigan, County of _____

## ORDER

TO:    ⌐ D J. Hilson, Muskegon County Prosecutor    ⌐    If you require special accommodations to use
       990 Terrace St.                                    the court because of a disability or if you require
       Muskegon, MI 49442                                 a foreign language interpreter to help you fully
                                                          participate in court proceedings, please contact
       ∟                                          ⌐       the court immediately to make arrangements.

**IT IS ORDERED:**
5. You must appear before this court on _____ at _____ at ☐ the court address above ☐ courtroom no. _____
                                          Date        Time
   ☐ _____
   to show cause why
   ☐ you should not be held in ☐ civil ☐ criminal  contempt
      ☐ for failure to comply with the order of this court as follows: _____
      ☐ for the reasons stated in the motion.
   ☐ a judgment should not be entered against you.
   ☐ your case should not be dismissed.
   ☐ other: _____
6. Failure to appear for a contempt hearing may result in a bench warrant being issued for your arrest.
7. A copy of this must be served  ☐ personally ☐ by mail  on the person ordered to appear at least _____ days before the
   hearing.

Date _____          Judge _____          Bar no. _____
MC 230  (5/13)  **MOTION AND/OR ORDER TO SHOW CAUSE**          MCR 2.107(B), MCR 2.108(D), MCR 3.606(A), MCR 5.108

P - 000491

3/3/16

## Nick Bostic

| From: | Roberts, Matthew <RobertsMa@co.muskegon.mi.us> |
|-------|------------------------------------------------|
| Sent: | Thursday, March 03, 2016 5:11 PM |
| To: | 'barristerbostic@att.net' |
| Subject: | Antol |

Can you call me on my cell phone? 231-288-7087. DJ passed along your letter and proposed show cause regarding the Antol forfeiture and I want to discuss it with you so we can work this out.

*[signature]*

Matt Roberts
Chief Trial Attorney
Muskegon County Prosecutor's Office
990 Terrace, Fifth Floor
Muskegon, MI 49442
231-724-6435



1

P - 000492

3/4/16

# BOSTIC & ASSOCIATES
### Attorneys at Law

J. Nicholas Bostic
Senior Litigation Attorney

909 N Washington Ave · Lansing MI 48906
T: 517.706.0132 · F: 517.484.2330
www.barristerbostic.com

Pamela J. Bostic
Legal Secretary
Danette K. Axel
Secretary

March 21, 2016

D. J. Hilson
Muskegon County Prosecutor
990 Terrace St – Floor 5
Muskegon MI 49442

> RE:  People v. Conklin, File #15-65976-FH*
> Antol et al. v. Dent, et al., Western District #1:14-cv-00793
> People v. $1,160.00 (Claimant Conklin), File #14-49626-CF*
> People v. $21,021.00 (Claimant Antol), File #14-49627-CF*
> People v. $124.00 (Claimant Antol), File#14-49628-CF*
> People v. $1,935.00 (Claimant Antol), File #14-49638-CF*

Dear Mr. Hilson,

Since my communication to you of February 29, 2016, I had a telephone conversation with Mr. Roberts and Lt. Fias of WEMET. Lt. Fias indicated to me that the DVR may have been destroyed because it contained captured images of undercover officers. The destruction would have been pursuant to MSP policy but he was going to check into that and call me back. I never heard from him again. I believe my conversation with him was on March 7 or 8. I even gave him my cell phone number since I was going to be on the road. He may have called from a number I did not recognize but – if he did – he did not leave a message. This may also explain why I have never received any meaningful response to my requests to your office over the last 8 months. We served the orders in the forfeiture cases in June and July 2015. On July 22, 2015, I sent Mr. Roberts an e-mail asking him to have WEMET expedite return of the property, seized cash, and forfeiture bonds. On August 2, 2015, I sent an e-mail to Mr. Roberts to follow up and expedite satisfaction of those judgments. He responded on August 4, 2015. I now believe that the excuse of WEMET wanting to retain property during the period of appeal was simply a subterfuge and WEMET hoped the issue would go away.

Lt. Fias seemed genuinely surprised when I told him that the defense had been given copies of the portions of the DVR recordings from July 2014 where undercover officers were visible on the recording inside the store. We were also provided with copies of the videos taken by cell phone where multiple undercover officers were not only visible but continuously making smart-ass comments. The undercover purchases in 2013 were obtained by body cameras so the officers' faces were not displayed. Notwithstanding the inconsistency, it appears that the DVR has been destroyed (at the very least it has not been produced) contrary to a specific written agreement in each file above marked with an asterisk. The position of MSP is absurd in light of the fact that the cellphones were returned

Admitted to Practice
All Michigan Courts–state and federal
United States Supreme Court · U.S. Court of Appeals–6th and 9th Circuits

P - 000493

and the images of the undercover officers could simply be deleted. Is MSP really going to take the position that when they voluntarily enter a commercial building for an investigation that they are entitled to seize and destroy any recording devices?

Lt. Fias indicated to me that he may have to buy Mr. Antol a new system. To say the least, that is insufficient to address what I now believe is a deliberate violation of these court orders. To resolve this problem without litigation, I propose that we enter into a stipulated modification of the consent judgment in 14-49627-CF. In 14-49627-CF, the current judgment will be modified to reflect that the $12,120.00 forfeited to WEMET shall be refunded to Mr. Antol. Additionally, WEMET or your office will pay Mr. Antol and Ms. Conklin costs and attorney fees in the amount of $500.00 each for violating the five court orders and for my efforts in attempting to enforce those orders.

This offer is non-negotiable. The alternative is for Mr. Antol and Ms. Conklin to move to set aside the final order in 14-49627-CF and move for relief from the order of dismissal in *Antol et al. v. Dent, et al.*, Western District. #1:14-cv-00793. I will advise them on all possible legal courses of action to hold accountable those responsible for this.

I cannot emphasize strongly enough how this breach is viewed by my clients. Please understand that the behavior of Det. Dent toward my clients for years culminated in this incident in 2014. He deliberately omitted vital information in the search warrant affidavit. The behavior of the undercover officers from WEMET on the cell phone videos speaks for itself. An armed police officer entered my clients' dwelling and aimed a pistol at a teenage boy all without a warrant. Det. Dent then demanded that another son of Mr. Antol's return to give up his cell phone after he had been told he could leave. The "tobacco tax team" physically surrounded Ms. Conklin in her business premises and threatened arrest if she attempted to prevent their blatantly unconstitutional conduct. Mr. Antol had his request for work release deliberately delayed by a corrections officer. A corrections officer called Ms. Conklin at around midnight to confirm Mr. Antol's employment at his own store. Ms. Conklin has been harassed during her probation regarding participating in drug rehab for use of a drug which is not only legal but was specifically approved by the trial court. Enough is enough. Attempting to excuse this conduct by simply saying "they are criminals" will be a very serious mistake on your part. The underlying convictions will be completely irrelevant to this breach of these judgments. I have advised my clients to wait until March 28, 2016 to take further enforcement action.

Sincerely,

Nicholas Bostic
Attorney at Law

JNB/pjb

Cc:    Derek Antol/Samantha Conklin
        Client file



*3/23/16*

OFFICE OF THE
## MUSKEGON COUNTY PROSECUTOR

HALL OF JUSTICE
FIFTH FLOOR
990 TERRACE STREET
MUSKEGON, MICHIGAN 49442

CRIMINAL DIVISION        (231) 724-6435
VICTIM SERVICES          (231) 724-6676
CRIMINAL DIVISION FACSIMILE  (231) 724-6685
www.co.muskegon.mi.us/prosecutor/

March 23, 2016

J. Nicholas Bostic
Bostic & Associates
909 N. Washington Ave.
Lansing, MI 48906

RE: People v Conklin

Dear Mr. Bostic:

I am in receipt of your March 21, 2016 letter. Please allow me to respond. First and foremost, as it relates to the DVR system, I am dissapointed that you would demand a return of $12,100 and threaten seeking $500 in legal fees when you yourself, in our phone conversation earlier this month, acknowledged that the DVR was not part of the forfeitures. I fail to see how our office or WEMET could be held responsible for violating a court order when the court never had jurisdiction over the DVR. While I recognize and respect your zealous representation of your client, I have never known you to be a person who would pursue an action when you clearly lack a legal basis to do so.

It seems to me that the offer of WEMET to replace the DVR is fair under the circumstances and would serve to put your clients in exactly the same position they would have been in had the DVR been returned. Seeking to undo the negotiations which brought about closure to these matters based on a used piece of computer equipment would seem to be more clearly motivated by your distaste for law enforcement more than grounded in sound legal principles. Ultimately, however, the decision is yours, but as it relates to our office's involvement, we will vigorously defend any attempt to accuse us of violating a court order.

As it relates to the probation department, I already offered to make a phone call if you requested, but until I received your letter, I did not realize you still had any concerns. I would still be willing to assist in that regard if you want me to make a call. Again, the decision is yours.

Very truly yours,

Matt J. Roberts
Chief Trial Attorney

P - 000495

# BOSTIC & ASSOCIATES
## Attorneys at Law

J. Nicholas Bostic
Senior Litigation Attorney

909 N Washington Ave · Lansing MI 48906
T: 517.706.0132 · F: 517.484.2330
www.barnsterbostic.com

Pamela J. Bostic
Legal Secretary
Danette K. Axel
Secretary

---

March 29, 2016

Matthew Roberts
Chief Trial Attorney
990 Terrace St.
Muskegon. MI 49442

RE:    Antol DVR

Dear Mr. Roberts,

In response to your letter of March 23, 2016, I must concede that you may have a point about the orders in the forfeiture cases. Even though it says all property not containing THC must be returned. it is likely that a court would still determine that it had no jurisdiction over property not listed in the complaint. I did acknowledge that there were a few items seized that were not designated for forfeiture.

This leaves the focus in the criminal case and raises two interesting points. First, the written plea agreement and the agreement placed on the record were clearly violated by the plain language of both. Second. the simple replacement of the DVR is an unacceptable solution for two reasons:

1. This was not an accident. They did not drop it or spill liquid into it. *This was a deliberate choice based upon pursuing their purpose and nothing else.* Furthermore, the purpose and goal in this case were stupid beyond description. The officers voluntarily went into the area recorded. The offending footage had already been disclosed to the defense. The file could simply have been deleted. The phones had additional footage of undercover officers and no issue was raised. This destruction was deliberate, calculated, punitive, and retaliatory.

2. Someone has been lying about this for months. If WEMET would have stepped up when it happened and said "we screwed up," that is something that can be worked out. Instead, you and I have spent who knows how much time trying to figure out why WEMET will not simply comply. This was not the only problem either. We had considerable delay with the cash and return of the bond money as well. Someone, somewhere took it upon themselves to try to lie and delay their way out of this. That is simply unacceptable.

Your letter suggests that I have a general disdain for law enforcement. To the contrary, I have devoted over 25 years of my professional life to law enforcement as a military police officer, police officer and prosecutor. I have taught countless police officers, prosecutors, attorneys, and students various aspects of litigation, investigation, and advocacy. My decision to pursue civil rights matters was a continuation of attempting to maintain the profession. I accomplish that by

Admitted to Practice
All Michigan Courts—state and federal
United States Supreme Court · U.S. Court of Appeals–6ᵗʰ and 9ᵗʰ Circuits

holding accountable those officers that abuse their power and in fact create public disdain for law enforcement.

This brings me to the proposed solution. MCL 780.655(2) which states:

(2) The officer shall file the tabulation promptly with the judge or district court magistrate. The tabulation may be suppressed by order of the judge or district court magistrate until the final disposition of the case unless otherwise ordered. The property and things that were seized shall be safely kept by the officer so long as necessary for the purpose of being produced or used as evidence in any trial.

The disposition of property seized pursuant to a warrant has been controlled by Michigan common law for over 30 years. *People v. Washington*, 134 Mich.App. 504; 351 N.W.2d 577 (1984). The Court of Appeals over 40 years ago made it clear that the responsibility was on the seizing officers. *People v. Hernandez*, 52 Mich.App. 56; 216 N.W.2d 438 (1974). This, of course, brings us back to the notorious Mr. Dent.

Of more help, however, is MCL 780.657 which states:

Sec. 7. Any person who in executing a search warrant, willfully exceeds his authority or exercises it with unnecessary severity, shall be fined not more than $1,000.00 or imprisoned not more than 1 year.

Someone here has exceeded their authority by unlawfully disposing of the seized property. Accordingly, this letter is an official request that your office bring criminal charges against the responsible party or turn the matter over to an uninvolved prosecutor's office. The Attorney General's Office will have a conflict of interest and I will object to their involvement.

We will have to agree to disagree that simply replacing the DVR is sufficient under the circumstances here. Please respond within 7 days to confirm that your office will criminally prosecute the responsible party or that you have conflicted this matter out to a different prosecutor's office. Otherwise, we will initiate enforcement action and seek appropriate sanctions as allowed by law.

Sincerely,

Nicholas Bostic
Attorney at Law

JNB/dka

Cc      Derek Antol/Samantha Conklin
        Client file

P - 000497

# BOSTIC & ASSOCIATES
### Attorneys at Law

J. Nicholas Bostic
Senior Litigation Attorney

909 N Washington Ave · Lansing MI 48906
T: 517.706.0132 · F: 517.484.2330
www.barristerbostic.com

Pamela J. Bostic
Legal Secretary
Danette K. Axel
Secretary

---

August 22, 2016

D. J. Hilson
Muskegon County Prosecutor
990 Terrace St - 5th Floor
Muskegon MI 49442

    RE:   People v. Conklin, File #15-65976-FH
            Antol, et al., v. Dent, et al., Western District #1:14-cv-00793
            People v. $1,160.00 (Claimant Conklin), File #14-49626-CF
            People v. $21,021.00 (Claimant Antol), File #14-49627-CF
            People v. $124.00 (Claimant Antol), File#14-49628-CF
            People v. $1935.00 (Claimant Antol), File #14-49638-CF

Dear Mr. Hilson,

Since my last communication to you in March 2016, I did a Freedom of Information Act request to the Michigan State Police for the property records concerning the DVR. Those records are enclosed and show that the DVR was authorized for destruction on September 18, 2015. Those records also show that the DVR was destroyed on December 8, 2015 by being thrown into an incinerator. This is a timeline for this matter:

14-49626-CF, $1160.00 in currency. Conklin only. Order requiring property to be returned signed by Judge Hicks on August 6, 2016.

14-49627-CF, $21,021.00 in currency. Antol only. Order requiring property to be returned signed by Judge Hicks on June 29, 2015.

14-49628-CF, $124.00 in currency. Antol only. Order requiring property to be returned signed by Judge Marietti on June 22, 2015.

14-49638-CF, $1935.00 in currency. Antol only. Order requiring property to be returned signed by Judge Marietti on June 22, 2015.

The orders in 49628 and 49638 were served on the prosecutor's office on June 23, 2015.

The order in 49627 was served on the prosecutor's office on July 8, 2015.

On July 22, 2015, I sent Mr. Roberts an e-mail asking him to have WEMET expedite return of the property, seized cash, and forfeiture bonds.

Admitted to Practice
All Michigan Courts–state and federal
United States Supreme Court · U.S. Court of Appeals–6th and 9th Circuits

P - 000498

14-49626-CF, $1160.00 in currency. Conklin only. Order requiring property to be returned signed by Judge Hicks on August 6, 2016.

14-49627-CF, $21,021.00 in currency. Antol only. Order requiring property to be returned signed by Judge Hicks on June 29, 2015.

14-49628-CF, $124.00 in currency. Antol only. Order requiring property to be returned signed by Judge Marietti on June 22, 2015.

14-49638-CF, $1935.00 in currency. Antol only. Order requiring property to be returned signed by Judge Marietti on June 22, 2015.

The orders in 49628 and 49638 were served on the prosecutor's office on June 23, 2015.

The order in 49627 was served on the prosecutor's office on July 8, 2015.

On July 22, 2015, I sent Mr. Roberts an e-mail asking him to have WEMET expedite return of the property, seized cash, and forfeiture bonds.

On August 2, 2015, I sent an e-mail to Mr. Roberts to follow up and expedite satisfaction of those judgments. He responded on August 4, 2015.

The justification for not returning some property was a claim that WEMET wanted to retain some of the property for the duration of the appeal period.

The order in 49626 was served on the prosecutor's office on August 17, 2015.

On September 9, 2015, I sent an e-mail to Mr. Roberts again seeking full compliance (bond money return still outstanding). On September 9, 2015, he replied.

On November 9, 2015, I sent another e-mail once again asking that all property be returned (DVR and items considered "evidence").

On February 29, 2016, I sent a letter to you warning you that you were in contempt of court for failure to comply with the orders in the civil forfeiture case and the criminal plea agreement.

On March 21, 2016, it was finally admitted to me that the DVR had been destroyed. The reason – it contained images of undercover officers – is dubious at best.

On August 2, 2015, I sent an e-mail to Mr. Roberts to follow up and expedite satisfaction of those judgments. He responded on August 4, 2015.

The order in 49626 was served on the prosecutor's office on August 17, 2015.

The justification for not returning some property was a claim that WEMET wanted to retain some of the property for the duration of the appeal period.

On September 9, 2015, I sent an e-mail to Mr. Roberts again seeking full compliance (bond money return still outstanding). On September 9, 2015, he replied.

On November 9, 2015, I sent another e-mail once again asking that all property be returned (DVR and items considered "evidence").

On February 29, 2016, I sent a letter to you warning you that you were in contempt of court for failure to comply with the orders in the civil forfeiture case and the criminal plea agreement.

On March 21, 2016, it was finally admitted to me that the DVR had been destroyed. The reason – it contained images of undercover officers – is dubious at best.

At one point, Mr. Roberts pointed out that the DVR was never listed in any of the forfeiture cases and therefore there was no contempt. On the contrary, your office specifically agreed to the consent order which required the return of all seized property that did not contain THC. The express language did not limit itself to the items listed in the forfeiture. Furthermore, the language "that does not contain THC" would have been pointless if items other than the items listed in the complaint were not contemplated. Also, the criminal plea agreement was reduced to writing and also required the return of all seized items.

I have never been provided with a copy of any policy that would require destruction and the policy would not control over the written plea agreement. I made three demands before destruction was authorized and a fourth demand before the item was destroyed. The only plausible conclusion is that this destruction was a deliberate and willful violation of the Court orders, the agreement, and the due process clause of the Fourteenth Amendment. Lt. Fias' offer to simply replace the DVR is insufficient. The agency and perhaps your office deliberately misled me about the status of the item. The team's motivation was to make sure that the unprofessional behavior of the officers could not be exposed. Additionally, I have expended several hours attempting to enforce the agreement and that time must be compensated.

Please refer this matter to your risk management entity or civil attorney for resolution of the claim. After conducting further research to identify the proper party(ies), I will be filing the motion for an order to show cause for contempt.

Sincerely,

Nicholas Bostic
Attorney at Law

JNB/pjb
Cc: Derek Antol/Samantha Conklin
    Client file

Admitted to Practice
All Michigan Courts–state and federal
United States Supreme Court · U.S. Court of Appeals–6th and 9th Circuits