UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

DEREK ANTOL, individually, and as next
friend for DSA II; DEVON ANTOL
and TRYSTON ANTOL,

Case No. 1:17-cv-00613

Hon. JANET T. NEFF

Plaintiffs,

ADAM DENT, KATE STRAUS, CASEY
BRINGEDAHL, CASEY TRUCKS, PETE
KUTCHES, and WESTERN MICHIGAN
ENFORCEMENT TEAM, a public body
organized under the laws of the State of
Michigan,

Defendants.

| | |
|---|---|
| J. Nicholas Bostic<br>Bostic & Associates<br>Attorney for Plaintiffs<br>909 N. Washington Ave.<br>Lansing, MI 48906<br>(517) 706-0132<br>barristerbostic@att.net | Adam P. Sadowski (P73864)<br>John G. Fedynsky (P65232)<br>Assistant Attorneys General<br>Attorneys for Defendant Trucks<br>Civil Litigation Employment & Elections<br>P.O. Box 30736<br>Lansing, MI 48909<br>(517) 373-6434<br>sadowskia@michigan.gov<br>fedynskyj@michigan.gov |
| Allan C. VanderLaan (P33893)<br>Bradley Charles Yanalunas (P80528)<br>Curt A. Benson (P38891)<br>Cummings McClorey Davis & Acho PLC<br>Attorneys for Defendants Dent, Strauss,<br>Bringedahl, & Kutches<br>327 Centennial Plaza Bldg.<br>2851 Charlevoix Dr., SE<br>Grand Rapids, MI 49546<br>(616) 975-7470<br>avanderlaan@cmda-law.com<br>byanalunas@cmda-law.com<br>cbenson@cmda-law.com | Douglas M. Hughes (P30958)<br>John M. Karafa (P36007)<br>Williams Hughes, PLLC<br>Attorneys for Defendants Kutches &<br>Western MI Enforcement Team<br>120 W. Apple Ave.<br>P.O. Box 599<br>Muskegon, MI 49440<br>(231) 726-4857<br>doughughes@williamshugheslaw.com<br>johnkarafa@williamshugheslaw.com |

# EXHIBIT A

# ANTOL, ET AL. v. DENT, ET AL.

## DEREK ANTOL

May 10, 2018

*Prepared for you by*



**US Legal Support**

The Power of Commitment™

**Bingham Farms/Southfield • Grand Rapids**
Ann Arbor • Detroit • Flint • Jackson • Lansing • Mt. Clemens • Saginaw • Troy

DEREK ANTOL
May 10, 2018

### Page 2

```
 1   APPEARANCES:
 2
 3   J. NICHOLAS BOSTIC
 4   Bostic & Associates
 5   909 North Washington Avenue
 6   Lansing, Michigan 48906
 7   (517) 706-0132
 8   barristerbostic@att.net
 9       Appearing on behalf of Plaintiffs.
10
11   CURT A. BENSON
12   BRADLEY C. YANALUNAS
13   Cummings McClorey Davis & Acho
14   2851 Charlevoix Drive, SE
15   Suite 327
16   Grand Rapids, Michigan 49546
17   (616) 975-7470
18   cbenson@cmda-law.com
19   byanalunas@cmda-law.com
20       Appearing on behalf of Defendants Dent, Strauss,
21       Bringedahl, and co-counsel for Defendant Kutches.
22
23
24
25
```

### Page 3

```
 1   ADAM P. SADOWSKI
 2   PATRICK MYERS
 3   Michigan Department of Attorney General
 4   525 West Ottawa Street
 5   Lansing, Michigan 48909
 6   (517) 373-6434
 7   SadowskiA@michigan.gov
 8   MyersP@michigan.gov
 9       Appearing on behalf of Defendant Casey Trucks.
```

### Page 4

```
          TABLE OF CONTENTS

WITNESS                              PAGE
DEREK ANTOL

EXAMINATION
BY MR. BENSON:                         5
EXAMINATION
BY MR. SADOWSKI:                      77
EXAMINATION
BY MR. BOSTIC:                        79


               EXHIBITS

EXHIBIT                              PAGE
(Exhibits attached to transcript.)

DEPOSITION EXHIBIT 1                  73
DEPOSITION EXHIBIT 2                  76
```

### Page 5

```
 1   Grand Rapids, Michigan
 2   Thursday, May 10, 2018
 3   10:43 a.m.
 4
 5              DEREK ANTOL,
 6   was thereupon called as a witness herein, and after
 7   having first been duly sworn to testify to the truth,
 8   the whole truth and nothing but the truth, was
 9   examined and testified as follows:
10              EXAMINATION
11   BY MR. BENSON:
12   Q. Mr. Antol, my name is Curt Benson, and I represent
13      some of the officers that you filed this lawsuit
14      against.
15              Have you ever been deposed before?
16   A. No.
17   Q. Okay. Well, I'm sure you talked to your lawyer about
18      it. Let me give you just some basic -- or some basic
19      instructions.
20   A. Sure.
21   Q. If you, for some reason, don't understand a question
22      I'm asking, would you please ask me to either repeat
23      it or restate it so you understand exactly what it is
24      you're answering?
25   A. Certainly.
```



DEREK ANTOL
May 10, 2018

**Page 74**

1  BY MR. BENSON:
2  Q. All right, I'll hand you what's been marked as 1, that
3     is the Affidavit of Adam Dent. You've had the
4     opportunity to review that, correct?
5  A. Correct.
6  Q. Just now, correct?
7  A. Correct.
8        MR. BENSON: Okay. Could you read the
9     question back to the witness?
10       (The requested portion of the record was
11       read by the reporter at 12:14 p.m.)
12 A. Okay, the statements made on the first page of the
13    Affidavit, I don't object to anything on there. What
14    I had issues with was the references to the other
15    things, for instance, the McQueen and the Hartwick
16    case, you know, his affirmations that our business
17    model was running the same as these other two
18    individuals, when they in fact did not apply at all to
19    our model. I mean, I guess that would be the only
20    thing that I'd disagree with.
21 BY MR. BENSON:
22 Q. Okay. And just for point of clarification, you're on
23    page 2?
24 A. Correct.
25 Q. Okay. Could you just kind of point generally where

**Page 75**

1     we're talking about?
2  A. Yep, pretty much all of this.
3  Q. Okay, thank you. Let me quick look this over.
4        Oh, I see, okay. I got you, okay.
5        You make reference to, it looks like
6     paragraph 8, which is a reference to a Michigan Court
7     of Appeals case People V Hartwick. And I assume you
8     don't disagree with his interpretation of the case,
9     you just disagree with that your business model was
10    similar to People V Hartwick?
11 A. Correct.
12 Q. Okay. Is that also true with the -- excuse me,
13    another case he cites, which is State V McQueen? Do
14    you disagree that State V McQueen is applicable to
15    your case?
16 A. Correct.
17 Q. Okay. And I think you said that was it?
18 A. Yes.
19 Q. Okay. All right.
20 A. Thank you.
21 Q. Sure. Do you know what Detective Dent said to
22    Ms. Conklin in buying the marijuana? He just showed
23    fictitious papers indicating that he either had a card
24    or had applied for a card?
25 A. Correct.

**Page 76**

1  Q. Did he give any additional information other than to
2     show her the card -- or, excuse me, show her the
3     paperwork, to your knowledge?
4  A. Not to my knowledge.
5  Q. Okay. Your attorney was kind enough to provide us
6     with a report of inspection from the State of Michigan
7     Department of Treasury detailing the inspection that
8     occurred on July 9th of 2014. Much of what they
9     described occurred when you were not present. The
10    last paragraph just above the phrase seizure of
11    tobacco products has a paragraph in there that I
12    wonder if you would take a moment to read that
13    paragraph? I'm sorry, it's the one just above -- it's
14    that one right there, yeah, the last paragraph just
15    before seizure of tobacco products?
16 A. Okay, and your question is?
17 Q. Does that accurately describe your encounter with the
18    author of this report?
19 A. Yes. In compact form, yes.
20       MARKED FOR IDENTIFICATION
21       DEPOSITION EXHIBIT 2
22       12:19 p.m.
23 Q. Normally, you do this first, but I'll hand you what's
24    been marked as Exhibit Number 2, and that is the
25    report of inspection. And I had just asked you a

**Page 77**

1     question about that last paragraph.
2        Is Exhibit 2 what you were referring to?
3  A. Yes.
4        MR. BENSON: Okay, I've got nothing
5     further, thank you.
6        EXAMINATION
7  BY MR. SADOWSKI:
8  Q. Mr. Antol, I'm Adam Sadowski, as you know, I represent
9     Defendant Trucks.
10       I've seen your discovery responses, and you
11    would agree that you personally, on behalf of just
12    yourself, are not making any claims against Defendant
13    Trucks, correct?
14 A. Correct. I don't believe I had any encounter with
15    Trucks.
16 Q. Okay.
17 A. To my knowledge. He may have been at the store, but
18    there was probably close to, I don't know, eight or --
19    eight to 12 officers at the store. I couldn't tell
20    who was an officer, who wasn't. Some were in uniform,
21    some were -- you know, they had like open carrying, I
22    guess. There was quite a few people out in the
23    parking lot, some customers, some neighbors. But I
24    honestly don't think I ever encountered Trucks.
25 Q. Okay. So it's your three sons that have claims



DEREK ANTOL
May 10, 2018

## Page 78

1  against Trucks, or is it just Devon and Derek, is it?
2  A. Yeah, I think it would be just Devon and Derek.
3  Q. Okay.
4  A. Or maybe Tryston did, too, because Trucks was at the
5     home.
6  Q. Okay. What did Devon tell you that Defendant Trucks
7     did, or was he able to provide you with that level of
8     detail?
9  A. To me, he hasn't, no. I mean, they -- it's hard to
10    say, because, I mean, we're -- I can't even put a face
11    to the name. I mean, I -- and I wasn't there at the
12    house. To me, it would be different if you were
13    asking the kids and you had a picture of him, and then
14    they'd be able to specify, you know, okay, yeah, I
15    remember this guy, you know, whatever. But as far as
16    me, I wasn't at the home, and Devon and Tryston
17    weren't at the moment either. So as far as I know,
18    with Trucks, it would have only been Derek, to my
19    knowledge. But, I mean, there may be other things
20    ensuing per the -- you know, the -- our alleged
21    illegal search and seizure, you know, things that were
22    -- his room and his due process being violated, that's
23    -- I don't -- I don't believe I'm part of that.
24 Q. Okay. Other than Defendant Trucks being involved in
25    the search of the North Green Creek residence, is

## Page 79

1     there any other claims, to your knowledge, on behalf
2     of any of your kids against Defendant Trucks?
3  A. Here again, to reiterate, we're not sure which one of
4     the officers he is. A picture to my son would help
5     clarify that. He may or may not have been one of the
6     two officers holding a gun at my son. I can't say. I
7     wasn't there. That would be a question for my son.
8         MR. SADOWSKI: Okay. Well, then I have no
9     further questions, thank you.
10         EXAMINATION
11 BY MR. BOSTIC:
12 Q. I just want to clear up a couple things while we're
13    all here together.
14        Look at Exhibit 2.
15        MR. BENSON: That's the inspection right
16    there.
17 A. Me or him?
18 BY MR. BOSTIC:
19 Q. You. The last few pages.
20 A. Yeah, this was the sample of the --
21 Q. Right?
22 A. -- shisha.
23 Q. But what I wanted to clarify for the record was that
24    we have a report, which is seven pages, the first
25    seven pages. The last few pages appear to be printed

## Page 80

1     off the internet. Do you know -- I wanted to clarify
2     whether this is something that you or I printed off?
3  A. I didn't.
4  Q. Or whether it was part of Parolini's report, if you
5     remember?
6  A. I didn't print this off.
7  Q. Okay.
8  A. This isn't anything I did.
9  Q. All right. When we had a break, did we -- you and I
10    have an opportunity to discuss who Michael Tozer might
11    be?
12 A. Yes.
13 Q. What do you think?
14 A. I believe he was my electrician.
15        MR. BENSON: Oh, thank you. I know the
16    reference then, thanks.
17 A. Okay.
18 BY MR. BOSTIC:
19 Q. And the -- looking at your Interrogatory Answers,
20    under number 9, I want to see if you want to correct
21    your answer about whether E was from the same incident
22    in July as -- as D? Do you understand that D was the
23    July 9, 2014 search warrant on all three locations,
24    correct?
25 A. Okay.

## Page 81

1  Q. And then later in that same year, did you have a
2     separate case?
3  A. Yes.
4  Q. Okay. So E was not -- they were resolved together,
5     correct?
6  A. Correct.
7  Q. But they didn't occur together?
8  A. But it was dropped, but they didn't occur together.
9         MR. BOSTIC: Okay, that's all I have.
10        MR. BENSON: I don't have anything further.
11        MR. SADOWSKI: I don't either.
12        (The deposition was concluded at 12:25 p.m.
13    Signature of the witness was not requested by
14    counsel for the respective parties hereto.)



aeba7536-bcfa-40b0-8d6a-02230728d812