# UNITED STATES OF AMERICA

## IN THE WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

Derek Antol, individually and as next friend of      File No: 1:17-cv-613
DSAII, a minor, and Devon S. Antol, and
Tryston Antol,
      Plaintiffs,

v.

Adam Dent, Kate Straus,                      Hon. Janet T. Neff
Casey Bringedahl, Casey Trucks,          U.S. District Court Judge
Pete Kutches, and Western Michigan
Enforcement Team, a public
body organized under the laws of the
State of Michigan,
      Defendants,

_____/

J. Nicholas Bostic (P40653)       Allan C. Vander Laan (P33893)
Attorney for Plaintiffs            Curt A. Benson (P38891)
909 N. Washington Ave.        Cummings, McClorey, Davis & Acho
Lansing MI 48906                Attorneys for Defendants Adam Dent,
517-706-0132                    Kate Straus, Casey Bringedahl & Peter Kutches
                          2851 Charlevoix Dr., S.E. - Suite 327
Adam P. Sadowski P73864      Grand Rapids MI 49546
Assistant Attorney General       616-975-7470
Michigan Dep't of Attorney General   avanderlaan@cmda-law.com
Attorney for Defendant Casey Trucks
525 W. Ottawa St., P.O. Box 30736
Lansing, MI 48909
(517) 335-3655

_____/

## PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANT TRUCKS

Plaintiffs, for their opposition, state that Defendant Trucks violated the clearly established

constitutional rights of Plaintiffs and is not entitled to summary judgment pursuant to Fed.R.Civ.P.

56(a). The attached brief is incorporated herein by reference.

WHEREFORE, Plaintiffs respectfully request this Honorable Court deny the motion for summary judgment filed by Defendant Trucks  and allow these claims to proceed to trial.

11/9/2018                                                */s/ J. Nicholas Bostic*
                                                        J. Nicholas Bostic P40653
                                                        Attorney for Plaintiffs

# UNITED STATES OF AMERICA

## IN THE WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

Derek Antol, individually and as next friend of
DSAII, a minor, and Derek S. Antol, Jr., and
Tryston Antol,
     Plaintiffs,

File No: 1:17-cv-613

v.

Adam Dent, Kate Straus,
Casey Bringedahl, Casey Trucks,
Pete Kutches, and Western Michigan
Enforcement Team, a public
body organized under the laws of the
State of Michigan,
     Defendants,

Hon. Janet T. Neff
U.S. District Court Judge

_____/

## BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANT TRUCKS

### TABLE OF CONTENTS

Table of authorities ................................................................................................ v

Statement of issues presented ............................................................................. viii

Controlling or most appropriate authority ........................................................... ix

Statement of facts.................................................................................................... 1

Argument ................................................................................................................. 2

I.  The entry into the curtilage and dwelling was not based on an exigent
circumstance or probable cause ............................................................................. 2

II. The search warrant was invalid due to the unconstitutionally gather
information and staleness as well as material omissions. ....................................... 9

III. DSA II was seized and arrested based on the totality of circumstances ......................... 10

IV. DSA II was arrested under state law without probable cause ......................................... 12

V. Qualified immunity......................................................................................... 14

Relief requested ................................................................................................ 15

Index of Exhibits ............................................................................................... 15

# TABLE OF AUTHORITIES

CONSTITUTIONAL PROVISIONS

U.S. Const., Amend IV ..........................................................................................1, 3, 9

U.S. SUPREME COURT CASES

*Brigham City v. Stuart*, 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).......................5

*Florida v. Jardines*, 569 US 1, 133 S. Ct. 1409, 185 LEd2d 495 (2013) ..............................1, 2

*Georgia v. Randolph,* 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) ........................6

*G.M. Leasing Corp v. United States*, 429 US 338; 97 SCt 619; 50 LEd2d 530 (1977) ...........12

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ........................14

*Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507,
    19 L.Ed.2d 576 (1967)........................................................................................................1

*Kentucky v. King*, 563 U.S. 452, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) ..........................5, 6

*Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537,
    91 L.Ed.2d 249 (1986)........................................................................................................10

*Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)................................5

*Kentucky v. King*, 563 U.S. 452, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) ..............................5

*Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)........................................5

*Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)..................................8

*Silverman v. United States*, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) ........................2

*United States v. Diebold, Inc*., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)...................8

*United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675,
    83 L.Ed.2d 604 (1985)..........................................................................................................7

*United States v. Leon*, 468 U.S. 897; 104 S.Ct. 3405; 82 L.Ed.2d 677 (1984) .................10, 11

*Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)..............................6

## SIXTH CIRCUIT CASES

*Brown v. Lewis*, 779 F.3d 401 (6th Cir. 2015)...........................................................14

*Ellison v. Balinski*, 625 F.3d 953 (6th Cir. 2010) ....................................................10

*Ewolski v. City of Brunswick*, 287 F.3d 492 (6th Cir.2002) .....................................6

*Harris v Klare*, 902 F.3d 630 (6th Cir. 2018)........................................................14

*Hays v. Jefferson County, Ky.*, 668 F.2d 869 (6th Cir. 1982)..................................5

*Smoak v. Hall*, 460 F.3d 768 (6th Cir. 2006).......................................................7, 14

*Thacker v. City of Columbus*, 328 F.3d 244 (6th Cir. 2003).................................6, 14

*Turner v. Scott*, 119 F.3d 425 (6th Cir. 1997).................................................4, 5, 13

*United States v. Czuprynski*, 46 F.3d 560 (6th Cir. 1995) .....................................10

*United States v. Davis*, 430 F.3d 345 (6th Cir. 2005).............................................12

*United States v. McClain*, 444 F.3d 556 (6th Cir. 2005) .......................................12

*United States v. Tucker*, unpublished, #17-3503, Aug. 7, 2018 ...............................12

## OTHER FEDERAL CASES

*Romanelli v. Long Island R. Co.*, 898 F.Supp2d 626 ( S.D.N.Y. 2012)....................8

*United States v. Brown*, 540 F.2d 1048 (10th Cir. 1976).......................................8, 9

*United States v. Davis,* 290 F.3d 1239 (10th Cir.2002).............................................6

*United States v. Neal*, 36 F.3d 1190 (1st Cir.1994) ..................................................8

*United States v. Rodriguez*, 162 F.3d 135 (1st Cir.1998) .........................................8

## MICHIGAN CASES

*Barker v. Anderson*, 81 Mich 508, 45 N.W. 1108 (1890)........................................13

*Burns v. Olde Discount Corp*., 212 Mich.App. 576, 538 N.W.2d 686 (1995)........13

*Cousineau v. Ford Motor Co*., 140 Mich.App. 19, 363 N.W.2d 721 (1985) ..........14

*Donovan v. Guy*, 347 Mich. 457, 80 N.W.2d 190 (1956)..........................................................13

*Lavigne v. Forshee*, 307 Mich. App. 530, 861 N.W.2d 635 (2014) .........................................14

*Lewis v. Farmer Jack Div., Inc*., 415 Mich. 212, 327 N.W.2d 893 (1982) .............................13

*Odom v. Wayne Co*., 482 Mich. 459, 760 N.W.2d 217 (2008)..................................................14

*People v. Beydoun,* 283 Mich App 314; 770 NW2d 54 (2008)..................................................11

*People v. Hartwick*, 303 Mich. App. 247, 842 N.W.2d 545 (2013) .........................................11

*People v. Jenkins*, 472 Mich. 26, 691 N.W.2d 759 (2005).......................................................13

*People v. McQueen*, 493 Mich. 135; 828 N.W.2d 644 (2013) .................................................11

MICHIGAN STATUTES

MCL 205.427.............................................................................................................................11

OTHER

31 Am.Jur.2d, Expert and Opinion Evidence, s 2......................................................................9

Fed.R.Evid. 701 .........................................................................................................................8

Wigmore on Evidence, 3rd Ed., Vol. VII, ss 2078-2081 ..........................................................9

**STATEMENT OF ISSUES PRESENTED**

I. WARRANTLESS ENTRIES INTO DWELLINGS ARE PRESUMED UNREASONABLE. WHERE THE DEFENDANT IS UNABLE TO ARTICULATE ANY FACTS TO CONCLUDE THAT PERSONS WERE IN THE DWELLING OR THAT EVIDENCE WAS ABOUT TO BE OR LIKELY TO BE DESTROYED AND HE ENTERED THE DWELLING OVER TWO HOURS PRIOR TO WARRANTS BEING ACQUIRED, DID DEFENDANT TRUCKS' ENTRY INTO THE CURTILAGE AND DWELLING AT GREEN CREEK ROAD VIOLATE THE FOURTH AMENDMENT?

II. THE FOURTH AMENDMENT REQUIRES A WARRANT OR PROBABLE CAUSE AND A SPECIFIC EXCEPTION BEFORE POLICE MAY ENTER OR SEARCH A PRIVATE RESIDENCE. A WARRANT AFFIDAVIT THAT UTILIZES UNLAWFULLY OBTAINED INFORMATION DOES NOT SATISFY THE FOURTH AMENDMENT. WHERE A TOBACCO TAX TEAM UNLAWFULLY ENTERED A BUSINESS PREMISES AND RELAYED THEIR OBSERVATIONS TO THE AFFIANT AND WHERE THE AFFIDAVIT'S ONLY OTHER INFORMATION WAS STALE, WAS THE SEARCH OF GREEN CREEK ROAD AN UNREASONABLE INVASION OF PRIVACY?

III. INTERPRETATIONS OF THE FOURTH AMENDMENT REQUIRE PROBABLE CAUSE FOR AN ARREST. WHERE A DETENTION IS AUTHORIZED, INTRUSIVENESS THAT EXCEEDS THE REASONABLENESS SUPPORT BY THE FACTS RIPENS A DETENTION INTO AN ARREST. WHERE PLAINTIFF DSA II WAS AWAKENED FROM SLEEP IN HIS BEDROOM, ORDERED AT GUNPOINT TO THE FOOT OF HIS BED, ORDERED TO GO WITH THE OFFICERS, ORDERED TO LEAVE HIS HOME, TOLD WHERE TO SIT AND TURNED OVER TO HIS MOTHER, DID THE BEHAVIOR OF THE DEFENDANTS RESULT IN THE ARREST OF DSA II?

IV. THE INTENTIONAL TORT OF FALSE ARREST IS MADE OUT UNDER MICHIGAN LAW WHERE A PERSON IS RESTRAINED OF HIS LIBERTY WITHOUT LAWFUL AUTHORITY. WHERE DSA II WAS HELD AT GUNPOINT IN HIS BEDROOM OBVIOUSLY UNARMED AND ORDERED TO MOVE ABOUT AND THEN OUTSIDE OF HIS DWELLING WITHOUT PROBABLE CAUSE, DID DEFENDANT TRUCKS HAVE THE OPPORTUNITY AND ABILITY TO PREVENT THIS FALSE ARREST?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Summary judgment standards:

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986) – the record is reviewed in a light most favorable to the non-moving party to identify genuine issues of material fact for trial.

*Hope v. Pelzer*, 536 US 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) - identical fact patterns are not required for conduct to be clearly established as unlawful.

I. The entries were not based on an exigent circumstance or probable cause.

*Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006); *Kentucky v. King*, 563 U.S. 452, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011); *Smoak v. Hall*, 460 F.3d 768 (6th Cir. 2006).

II. The search warrant was invalid due to the unconstitutionally gathered information and staleness as well as material omissions.

*Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930. 385 U.S. 808, 87 S.Ct. 31, 17 L.Ed.2d 50 (1967); *See v. City of Seattle*, 387 U.S. 541, 543; 87 S.Ct. 1737; 18 L.Ed.2d 943 (1967); *Sgro v United States*, 187 US 206, 210; 53 SCt 138; 77 LEd 260 (1932); *City of Los Angeles, Calif. v. Patel*, __ U.S. __, 135 S.Ct. 2443, 2456, 192 L.Ed.2d 435 (2015)

III. DSA II was seized and arrested based on the totality of circumstances.

*Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003); *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir.2000); *Smoak v. Hall*, 460 F.3d 768, 780-781 (6th Cir. 2006).

IV. DSA II was arrested under state law without probable cause.

*People v. Jenkins*, 472 Mich. 26, 691 N.W.2d 759 (2005); *Barker v. Anderson*, 81 Mich 508, 45 N.W. 1108 (1890); *Donovan v. Guy*, 347 Mich. 457, 80 N.W.2d 190 (1956).

## STATEMENT OF FACTS

The general facts asserted in Plaintiffs' Response to Motion for Summary Judgment by Dent, Straus, Bringedahl, and Kutches [Dent Response] (R. 64) are incorporated herein by reference. R. 64, PageID#366. Defendant Trucks was a uniformed Michigan State Trooper not assigned to WEMET who had been tasked to assist them in executing several search warrants on July 9, 2014. See Trucks Motion for Summary Judgment, Affidavit of Casey Trucks, Attachment C, ¶¶1, 3. Defendant Trucks has asserted no independent basis for believing that he had probable cause or exigent circumstances to enter the curtilage or dwelling on Green Creek Road on July 9, 2014 and appears to rely solely on what members of WEMET told him or asked him to do.

Contrary to the claims of Defendant Bringedahl, Defendant Trucks' affidavit does not distinguish between himself, Bringedahl, and Kutches when he asserts that the officers entered the "premises" to secure it pending application for a search warrant. Trucks Motion, Attach C., ¶4.

## LAW/ARGUMENT

**I. THE WARRANTLESS ENTRIES INTO THE CURTILAGE AND DWELLING WERE UNREASONABLE (All Plaintiffs as to Defendant Trucks).**

A.    Fourth Amendment concepts.

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
> U.S. Const., Am. IV.

All warrantless searches are presumed to be unreasonable and in violation of the Fourth Amendment unless within a well-delineated exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Florida v. Jardines*, 569 US 1, 133 S.

Ct. 409, 1414, 185 LEd2d 495 (2013), citing *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961).

Defendant Dent asked Defendant Bringedahl to conduct surveillance at Green Creek Road on July 9, 2014. Dent Response, Attach. 6, Bringedahl Dep., R. 64-6, PageID#508. He documented his arrival time at 1:50 p.m. *Id*., PageID#514. When he observed a man walk from the back of the residence to a pole barn, he, Defendant Kutches (different vehicle) and Defendant Trucks (marked vehicle) approached the man (Mr. Tozer). *Id*, PageID#508, 18-19; 19:23-20:7. The man identified himself as an electrician doing work for Plaintiff Antol. *Id*. Defendant Bringedahl notified Defendant Straus about Mr. Tozer's presence on the property and he had agreed to leave. Defendant Straus replied that the Defendants needed to enter the house to prevent destruction of any evidence. *Id*., PageID#508, 20:9-21:13. Defendant Straus did not recall a request from Defendant Bringedahl for guidance. Dent Response, Straus Dep. Attach. 7, R.64-7, PageID#524, 30:4-31:5. Her recollection was that "he" had entered the residence. *Id*., 30:24-31:1. Defendant Bringedahl's report leaves no doubt that Defendant Trucks walked up to confront Mr. Tozer with him. Dent Response, Bringedahl, Dep., Attach. 6, R.64-6, R PageID#514-515.

When Defendant Bringedahl looked at the house from where he confronted Mr. Tozer, he could see two dogs in a window and hear them barking. *Id*, PageID#509, 22:24-23:2. When asked what else is going on with the house, Defendant Bringedahl's answer was "Nothing, in particular." *Id*, 24:21-34. Defendant Bringedahl told Defendant Straus that he was unsure if anyone else was in the house. *Id.*, 24:2-9. Defendant Bringedahl admitted that he did not have a warrant at the time and claimed that Defendants Kutches and Trucks entered the house while he was still outside with Mr. Tozer. Defendant Bringedahl denied entering the house until the warrant was signed. *Id*., PageID#510, 26:7-15.

DSA II turned 17 in August 2018 making him 13 in July 2014. Dent Response, DSA Dep., Attachment 10, R.64-10, PageID#571, 4; 20:6-15. After hockey practice for an hour and one-half at 8:30 a.m., he had a meal and took a nap. He was awakened with the officers in his doorway. He was very specific that there were three officers. *Id*., PageID#572. He described two WEMET officers in front and the state officer in the back. The two in front were in plainclothes and the other was in uniform. *Id.*, PageID##573-575; 577. Both WEMET officers had their guns drawn. *Id*., PageID#572, 577.

When they noticed him moving, they told him to go to the end of his bed. One officer walked toward him and lowered his weapon. The other one went to the closet with his weapon still out and searched it. The officer that searched the closet then searched under the bed. The officer that had walked toward him then searched his dresser. *Id*., PageID#572, 577. They then took him through the house and outside where he called his mother. *Id.* The Defendants directed him to sit in a plastic chair until his mother arrived. *Id*., PageID#574, 14:20-25. DSA II was very unequivocal that the object aimed at him was not a taser and was a firearm. *Id*., PageID#573, 9:5-9.

DSA II explained that he could hear Defendant Trucks going through closets in the bathroom. He was specific and consistent in his explanation of hearing the noises that led him to conclude that the trooper was opening doors and cabinets in the bathroom. *Id*., PageID#573. In light of Defendant Trucks' affidavit where he denies looking into any space where a person could not hide, DSA II has prepared an affidavit specifying the closed spaces in the bathroom and describing the sounds he heard. See Attachment 1 to this Motion response.

The Fourth Amendment violation here is the entry into the curtilage and the house by Defendants Bringedahl, Kutches, and Trucks. Even though they observed Mr. Tozer, they had no reason to believe anyone was alerted to their presence. Surveillance had only been established for

15 minutes and it was simply not possible that substantial work had been done on the warrants in that period of time. The alert to any occupant of police presence was instigated by the police arriving in a marked car and uniform. Mr. Tozer was confronted outside the dwelling and did not know if anyone else was present. The police essentially justified their intrusion on what they did NOT know instead of any reasonable, articulable fact.

Even Defendant Dent was uncertain if he had enough evidence to get a records-only warrant. The week before he had a meeting with the prosecutor's office. As a result, his goal of the July 8, 2014 surveillance was to "shear" up some addresses and "if I had enough information, possibly seek to obtain a record search warrant based on my prior buys and new surveillance or updated surveillance."[1] Dent Response, Dent Dep., Attach. 4, R. 64-4, PageID#471, 473-474. The surveillance of July 8, 2014 revealed only that Plaintiff Antol and Ms. Conklin left the N. Green Creek residence. *Id*, PageID#471. No evidence has been presented by Defendants that a single gram of marihuana was sold from 885 E. Apple after June 28, 2013. When this information and the two failed attempts in late 2013 are imputed to Defendant Trucks and the illegally observed marihuana from July 9, 2014 is removed from the analysis, there was absolutely no probable cause to believe that evidence of any type was inside the N. Green Creek Road address.

B.   Individual participation, supervisory participation or failure to intervene.

Each individual officer can be liable based upon evidence that he or she (1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force. ***Turner v. Scott***, 119 F.3d 425, 429 (6th Cir.1997). "Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that

---

[1] He probably meant "shore up."

excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner*, 119 F.3d at 429. A supervisory official can be liable if it is shown that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. *Hays v. Jefferson County, Ky*., 668 F.2d 869, 873-874 (6th Cir. 1982), citing *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

In a light most favorable to Plaintiffs, Defendant Trucks entered the curtilage, he entered the dwelling and failed to prevent an improper search before the warrant arrived and without probable cause. He then searched the bathroom including cabinets, drawers and closets too small to hold a person. Attachment 1, Affidavit of DSA II, Dent Response, DSAII Dep. Attach. 10, R.#64-10, PageID#573.

C.     Exigent circumstances exception.

One well-recognized exception applies when " 'the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The Supreme Court has stated that the need to prevent the imminent destruction of evidence has been recognized as a sufficient justification for a warrantless search. *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).

In *Kentucky v. King*, 563 U.S. 452, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011), the U.S. Supreme Court held that the exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable. If the police create the exigency, or threaten to engage in conduct that violates the Fourth Amendment, their conduct will be unreasonable and violate the Fourth Amendment. As a general matter, "the determination of exigent circumstances is normally a question for the jury," unless "a finder of fact could reach but

one conclusion as to the existence of exigent circumstances ... as a matter of law." ***Ewolski v. City of Brunswick***, 287 F.3d 492, 501 (6th Cir.2002).

"The exigent-circumstances exception is narrowly drawn to cover cases of real and not contrived emergencies." ***Welsh v. Wisconsin***, 466 U.S. 740, 752, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (brackets omitted). In a "person in danger" situation, officers have a right "to enter a dwelling to protect a resident from domestic violence; so long as they have good reason to believe such a threat exists." ***Georgia v. Randolph***, 547 U.S. 103, 118, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). But if officers do not have reason to believe that a threat exists inside the home, the officers do not have the right to enter. ***United States v. Davis***, 290 F.3d 1239, 1244 (10th Cir.2002). In a situation where a warrant is going to be acquired for drugs, the Sixth Circuit has previously established its requirements. The Sixth Circuit defines exigent circumstances as "situations where 'real immediate and serious consequences' will 'certainly occur' if the police officer postpones action to obtain a warrant." ***Thacker v. City of Columbus***, 328 F.3d 244, 253 (6th Cir. 2003) (emphasis added) (quoting ***Ewolski v. City of Brunswick***, supra at 501.

In ***United States v. Watson***, Sixth Circuit #11-1331/2012 WL 3055781 (July 6, 2012) (unpublished, Dent Response, Attach. 13, R. 64-13, PageID#603), the Sixth Circuit addressed a situation involving drugs post-***Kentucky v. King***. A traffic stop was conducted on a car that left a house where a controlled buy had occurred. The officers were aware from the informant and the occupants of the car that an unknown man was still in the home. Fearing that someone in the neighborhood would notify the man of the traffic stop to destroy evidence, an officer entered without a warrant, took custody of the occupant, searched his person and searched the home for other persons. The Sixth Circuit upheld suppression of the evidence from the man's person and his

subsequent statements because the conclusion that a call to destroy evidence would be made was speculation.

In the instant case, the officers had only established surveillance for about 15 minutes. The only information they had concerning occupants was observing a man walking from the house. Based on this and nothing more, Defendant Trucks entered the curtilage. Defendant Bringedahl's description of the area where he was speaking to Tozer at the very least creates a jury question as to whether he was within the curtilage. The police cannot justify a search on what they do not know. The information they did have was certainly not "real" or "immediate" and did not lead to a conclusion that destruction would "certainly occur."

Defendant Dent's failure to include the failed attempts to purchase during the last half of 2013 not only should have been included in the warrant affidavit, those failures are imputed to Defendant Trucks. The unlawful behavior of the tax team members to make the initial observations at 885 E. Apple on July 9, 2014 is also imputed to Defendant Trucks. Police officers can act on "collective knowledge" but if the information that is relayed is provided in the absence of probable cause, then the ultimate police action is unconstitutional. In *United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the United States Supreme Court held that a police officer can rely on a flyer or bulletin that has been issued on the basis of articulable facts that support a reasonable suspicion that a person has committed an offense. In the same breath, the Court held that the inverse is also true: if the flyer or bulletin was issued in the absence of reasonable suspicion, then the arrest, stop, or search violate the Fourth Amendment. By analogy, a dispatcher and the officers making a traffic stop based on unsupported assertions from a dispatcher can lead to liability for all persons that cause the deprivation. *Smoak v. Hall*, 460 F.3d 768 (6th Cir. 2006). This is particularly critical for Defendant Trucks because he has asserted

absolutely no independent knowledge or basis for probable cause or an exigency. When he relies on the information from other officers, he relies on all of it.

Even the entry into the curtilage was unlawful but then rather than exercise any patience whatsoever, the officers (may or may not have) consulted with Defendant Straus and decided to enter the home. This would alert any occupants to their presence. There is a factual dispute among the Defendants as to whether Defendant Straus was consulted but this would be a jury question.

Defendant Trucks asserts in his motion that Plaintiffs do not have personal knowledge of his conduct in the bathroom and their claims must therefore fail. This is not the state of the law at the summary judgment stage. Courts are required to view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion." *United States v. Diebold, Inc*., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In qualified immunity cases, this usually means adopting (as the Court of Appeals did here) the plaintiff's version of the facts. A lay person can testify based on first-hand knowledge the identify of substances through sight, taste, and smell. *Romanelli v. Long Island R. Co.*, 898 F.Supp2d 626 ( S.D.N.Y. 2012). Furthermore, personal knowledge can include "inferences and opinions, as long as they are grounded in personal observations and experience." *United States v. Rodriguez*, 162 F.3d 135, 144 (1st Cir.1998) (quoting *United States v. Neal*, 36 F.3d 1190, 1206 (1st Cir.1994)). Fed.R.Evid. 701 allows opinion testimony from lay persons that are rationally based on the witness's perception. There is uniformity among the courts that the testimony of witnesses, both in civil and criminal cases, is admissible if predicated upon concrete facts within their own observation and recollection that is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts. *United States v. Brown*, 540 F.2d 1048, 1053 (10th Cir. 1976),

Cert. denied, 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 549 (1977); Wigmore on Evidence, 3rd Ed., Vol. VII, ss 2078-2081; 31 Am.Jur.2d, Expert and Opinion Evidence, s 2. DSA II's reliance on his sense of hearing and his own observation and recollection is perfectly admissible.

## II. THE WARRANT ULTIMATELY OBTAINED FOR N. GREEN CREEK IS INVALID (all Plaintiffs as to Defendant Trucks).

A.     Fourth Amendment principles.

The Fourth Amendment principles applicable to this issue and the factual details of the events at Deuces Wild in 2013 by Defendant Dent and on July 9, 2014 by the tax team and WEMET members as asserted in the Dent Response are incorporated herein by reference. Dent Response, R. 64, PageID## 375-382. The prominent principles of law to established this constitutional violation are found in *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930. 385 U.S. 808, 87 S.Ct. 31, 17 L.Ed.2d 50 (1967) and *See v. City of Seattle*, 387 U.S. 541, 543; 87 S.Ct. 1737; 18 L.Ed.2d 943 (1967).

B.     State law enforcement officers cannot enforce federal law.

The discussion about the lawful presence of the marihuana at 885 E. Apple Avenue on July 9, 2014 and state law enforcement officers' inability to enforce federal law in the Dent Response is incorporated herein by reference. Dent Response, R. 64, PageID#382-383.

C.     False and misleading statements.

The discussion about the false and misleading statements in the search warrant affidavits in the Dent Response is incorporated herein by reference. Dent Response, R. 64, PageID#383-384.

D.   Good faith exception in reliance on the warrant.

The discussion about the good faith exception regarding the reliance on the search warrant, the tobacco tax team "inspection" and its unlawfulness, the financial incentives of the law enforcement activity on behalf of tobacco manufacturers, and the need for application of the

exclusionary rule in this case in the Dent Response is incorporated herein by reference. Dent Response, R. 64, PageID#384-386.

E.      De minimis injury.

Defendant Trucks misconstrues the importance of a constitutional violation – especially a warrantless intrusion into a dwelling. Regardless of what compensatory damages are available, a prevailing plaintiff is entitled to presumed damages. Presumed damages may roughly approximate the harm that a plaintiff suffered and thereby compensate for harm that is difficult or impossible to measure. This harm may include intangible injury to a plaintiff's interest in privacy in his or her home. It may also include noneconomic injuries such as embarrassment, humiliation, or loss of reputation. *Memphis Community School District v. Stachura*, 477 U.S. 299, 310 – 314, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *Ellison v. Balinski*, 625 F.3d 953, 959 - 60 (6th Cir. 2010) (Fourth Amendment search and seizure context).

III. DEFENDANTS' ACTIONS REGARDING DSA II RESULTED IN AN ARREST (DSA II by Plaintiff Derek Antol Sr. as to Defendant Trucks).

The "good-faith inquiry is confined to the objective question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances ... may be considered." *United States v. Leon*, 468 U.S. 897, 922-23 n.23; 104 S.Ct. 3405; 82 L.Ed.2d 677 (1984). All of these officers were highly and specifically trained as well as very experienced. There was no excuse for their disregard of the clearly established principles cited above.

The good-faith defense fails where: "1) the supporting affidavit contains information the affiant knew or should have known is false; 2) the issuing magistrate lacked neutrality and detachment; 3) the affidavit is devoid of information that would support a probable cause determination making any belief that probable cause exists completely unreasonable; or 4) the

warrant is facially deficient." *United States v. Czuprynski*, 46 F.3d 560, 563–64 (6th Cir. 1995) (citing *Leon*, 468 U.S. at 923), opinion supplemented by 65 F3d 169 (6th Cir. 1995).

In the instant case, the police conduct includes the unlawfully obtained observations and misleads the magistrate into believing that the marihuana sales were occurring under the auspices of the Deuces Wild Smoke Shop. The affidavit omits critical facts concerning medical marihuana by failing to acknowledge Defendant's caregiver status, the appropriate quantities of marihuana, the rejected attempts to buy, the decision date in *People v. Hartwick*, 303 Mich. App. 247, 842 N.W.2d 545 (2013) and the nature of the *People v. McQueen*, 493 Mich. 135; 828 N.W.2d 644 (2013).

2.      The Warrantless Search, the Tobacco Products Tax Act and *Beydoun*.

Defendants may assert that the inspection was valid because the tax investigators acted in reliance upon the TPTA and *People v. Beydoun*.[2] The statute is clearly unconstitutional both facially and as applied under the federal standards cited above.

The first and most obvious failure in this case is that for just a routine inspection, it is unreasonable from the outset to use three armed police officers to collect a tax of .10 cents per cigarette. See MCL 205.427(1). The next obvious reason for rejecting application of the TPTA is the existence of the Michigan Medical Marihuana Act. The law clearly contains an immunity provision for persons complying with its provisions. The signs near the door and the verbal information from Ms. Conklin put the tax team on notice that a medical marihuana facility was present. They simply used the pretext of a tax inspection to completely ignore this obvious and objective information. Such conduct is completely lacking in good faith and results from a lack of appropriate time and scope limitations. Where officers have authority to search but they exceed

----

[2] 283 Mich App 314; 770 NW2d 54 (2008).

that authority, their conduct is not in good faith. Their inspection under the TPTA should have been limited to the retail portion of the store.

3.      Financial incentive and State Police budgetary incentives.

D/Sgt. Karl Schmitz of the MSP tax team admitted a budgetary incentive. Dent Response, Dep. of Karl Schmitz, 8:8 to 10:7, R.64-3, PageID##451-452). He admitted to seeing some kind of sign near the door.[3] *Id*, PageID##456. The Fourth Amendment still applies to tax investigations. ***G.M. Leasing Corp v. United States***, 429 US 338; 97 SCt 619; 50 LEd2d 530 (1977).

4.      The exclusionary rule in warrantless searches.

The Sixth Circuit is in a state of conflict as to whether the good faith exception can apply. In ***United States v. McClain***, 444 F.3d 556 (6th Cir. 2005), the good faith exception was applied where initial unlawful observations were placed into a warrant for a subsequent search. ***McClain*** was limited to its unique facts. *Id*., 565-566. In ***United States v. Davis***, 430 F.3d 345 (6th Cir. 2005),[4] the Sixth Circuit – without qualification – held that the exception does not apply to a warrant that relies on illegally seized evidence. *Id*., at 358, n. 4. To further complicate this, in ***United States v. Tucker***, unpublished, #17-3503, Aug. 7, 2018,[5] a panel said that the holding in ***Davis*** about the good faith exception was dicta. The facts in the instant case are closer to ***Davis***. Defendant Dent made several material omissions and his statements about two Michigan cases were misleading.

Defendant Trucks was present and just a few feet away when Defendants Bringedahl and Kutches aimed their firearms at DSA II. He admits in his affidavit that he entered the dwelling with them. He had the opportunity to see what they saw (a sleeping, unarmed, half-dressed 14-

---

[3] Those signs are at Dent Response, Attach. 2, R.64-2, PageID##419-420.
[4] Issued 10 days before ***McClain***.
[5] See Dent Response, Attachment 13 R.64-13, PageID##597-602.

year-old) and did nothing to stop them. He was in a position to observed or be aware of their actions and he had both the opportunity and the means to prevent it. *Turner*, 119 F.3d at 429.

IV.   State law false arrest claim (Plaintiff DSA II through Derek Antol against Defendant Trucks).

A.      Legal concepts.

A false arrest is an illegal or unjustified arrest, and the guilt or innocence of the person arrested is irrelevant. *Lewis v. Farmer Jack Div., Inc*., 415 Mich. 212, 218, 327 N.W.2d 893 (1982). To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause. *Id*.; *Burns v. Olde Discount Corp*., 212 Mich.App. 576, 581, 538 N.W.2d 686 (1995). In applying these principles, the Michigan Supreme Court uses the seizure definition under Fourth Amendment jurisprudence which is defined as "in view of all the circumstances, a reasonable person would have believed that he was not free to leave." *People v. Jenkins*, 472 Mich. 26, 691 N.W.2d 759 (2005).

In Michigan, a false imprisonment is subsumed in false arrest. *Lewis*, *supra*, at 232. n. 4. In *Barker v. Anderson*, 81 Mich 508, 45 N.W. 1108 (1890), the Michigan Supreme Court held that when a person establishes that he has been restrained of his liberty, there is a presumption that it was unlawful. The burden then switches to the other party to show that it was legally justified. See also *Donovan v. Guy*, 347 Mich. 457, 80 N.W.2d 190 (1956).

B.      Analysis.

Defendants Bringedahl and Kutches cannot justify the legality of the circumstances in which they held DSA II at gunpoint, removed him from his bed, removed him from his home, and controlled his movements until a parent retrieved him. He had every right to remain in his home unmolested by the officers until the warrant arrived (assuming it was valid). Defendant Trucks was the only one in uniform. His presence would prevent an occupant from believing that the

undercover officers were intruders and prevent lawful resistance to the constitutional violation. His lending of this assistance – even if passive – is nonetheless sufficient to extend liability to him. A plaintiff is entitled to recover on a concert of action theory if it proves that a defendant acted tortiously pursuant to a common design and that such action proximately caused the injury. *Cousineau v. Ford Motor Co*., 140 Mich.App. 19, 363 N.W.2d 721, 729 (1985).[6]

V.    Qualified immunity.

Regarding the entry into the southern portion of the building, obtaining compliance through threats of arrest was established as unconstitutional in 1982. *Harlow*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); see also *Lavigne v. Forshee*, 307 Mich. App. 530, 861 N.W.2d 635 (2014). This unconstitutional conduct is imputed to all other Defendants. *Smoak*, *supra*. The requirements of an exigent circumstance to pose a real and immediate threat were established in 2003. *Thacker*, *supra* (2003). The concepts of staleness were established in 1932. *Sgro*, supra. These concepts address Counts 2 and 3. Regarding the seizure of DSA II in his bedroom (Count 4), using a degree of force or other types of intrusive conduct was clearly established as a constitutional violation in July 2014. *Brown v. Lewis*, 779 F.3d 401, 416 (6th Cir. 2015) citing *Smoak*, *supra*, at 782 (2006).

Contrary to the three-part test asserted by Defendant Trucks for qualified immunity, the Sixth Circuit uses a two-part test which asks whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established. *Harris v Klare*, 902 F.3d 630, 638 (6th Cir. 2018). Defendant Trucks has failed to provide any evidence within his personal knowledge or from any other source that a single

---

[6] Defendant Truckss did not raise the affirmative defense of governmental immunity. The burden is on him to raise and prove it. *Odom v. Wayne Co*., 482 Mich. 459, 760 N.W.2d 217 (2008).

fact existed to establish exigent circumstances. The mere presence of a person near a home does not mean evidence is or will be destroyed if delay occurs in obtaining a warrant.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request this Honorable Court deny the motion for summary judgment filed by Defendant Trucks and allow these claims to proceed to trial.

11/9/2018                                          */s/ J. Nicholas Bostic*
                                                   J. Nicholas Bostic P40653
                                                   Attorney for Plaintiffs

## INDEX OF EXHIBITS

1. Affidavit of DSA II