UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK ANTOL et al.,

    Plaintiffs,

v.

    Case No. 1:17-cv-613

    HON. JANET T. NEFF

ADAM DENT et al.,

    Defendants.
_____/

**OPINION AND ORDER**

This case is before the Court on Defendants Adam Dent, Kate Straus, Casey Bringedahl and Pete Kutches' Motion for Summary Judgment (ECF No. 62) and Defendant Casey Trucks' Motion for Summary Judgment (ECF No. 74). Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court denies Defendants' motions.

**I.    BACKGROUND**

Plaintiff Derek Antol operated "Deuces Wild," a retail shop at 85 East Apple Avenue in Muskegon, Michigan that sells smoking accessories, vapor supplies, e-cigs, vapor juice, and other smoking related products (JSMF[1] ¶ 2). This case arises from the July 9, 2014 searches of Deuces Wild and Derek Antol's residence on Green Creek Road. The other three plaintiffs in this case—

---

[1] Plaintiffs and Defendants Dent, Straus, Bringedahl and Kutches filed a "Joint Statement of Material Facts" (JSMF) (ECF No. 63) on which this Court relies unless otherwise indicated. Defendant Trucks did not join the Joint Statement of Material Facts and included only a brief statement of facts in his supporting brief addressing the competing claims asserted in his and DSA II's affidavits (ECF No. 75 at PageID.637), which are addressed herein in conjunction with Count II.

Devon S. Antol (identified in the Complaint and herein as "DSA"), Tryston Antol (identified in the Complaint and herein as "TAA"), and Derek S. Antol, Jr. (identified in the Complaint and herein as "DSA II")—are Derek Antol's children. DSA II, a minor, is represented by Plaintiff Derek Antol as his Next Friend (ECF No. 38).

The West Michigan Enforcement Team (WEMET) is a multi-agency task force under the direction of the Michigan State Police (JSMF ¶ 1). WEMET is comprised of officers from West Michigan law-enforcement agencies from Ottawa, Muskegon and Allegan counties (*id.*). Defendants Dent, Straus, Bringedahl and Kutches are all police officers assigned to WEMET (Compl. ¶¶ 5-7, ECF No. 1 at PageID.2). Defendant Casey Trucks is a Michigan State Trooper (*id.* ¶ 7). Trucks indicates that he was not "assigned" to WEMET but was simply present at the scene of the search of Derek Antol's home "to help secure the premises at the request of WEMET" (Trucks Br., ECF No. 75 at PageID.637-638).

On June 4, 2013, Defendant Dent, working undercover for WEMET, went to Deuces Wild and displayed to Samantha Conklin, Derek Antol's fiancé and an employee of Deuces Wild, a previously completed application for a medical marijuana card (JSMF ¶ 3). Conklin reviewed the paperwork and concluded it was valid (*id.*). Another employee took Dent into a back room where Dent observed a cash register and approximately twenty-four to thirty jars of marijuana, each labeled with a different name on top (*id.*). Dent purchased $45 worth of marijuana (*id.*). On June 18, 2013, Dent returned to Deuces Wild and paid Conklin $30 for more marijuana (*id.* ¶ 4).

More than one year later, on July 9, 2014, Michigan State Police (MSP) Detective Sergeant Carl Schmitz of the MSP Sixth District Tobacco Team contacted a member of WEMET in reference to an administrative tobacco inspection they were conducting on Deuces Wild (JSMF ¶ 5). The tobacco tax team advised that it observed several jars of suspected marijuana in the rear

2

of the business (*id.*). WEMET arrived at Deuces Wild and also observed the marijuana (*id.*). WEMET obtained three search warrants: one for Deuces Wild, and one for each of the two homes owned by Derek Antol (one located at 423 Farr Road in Norton Shores, Michigan and the other located at 1769 North Green Creek Road in North Muskegon, Michigan) (JSMF ¶ 5; Derek Antol Dep. at 27, ECF No. 64-2 at PageID.434).

In executing the warrant at Deuces Wild, WEMET seized "a significant amount of marijuana"; approximately $21,000 in U.S. currency; cellphones; computers; surveillance equipment; and a loaded handgun, which was found in Conklin's car (JSMF ¶ 6). At some point while officers were present at Deuces Wild, Derek Antol handed a cell phone to his son, DSA II, who left the scene with his mother (*id.* ¶ 7). When learning from another officer that DSA II had left with a phone, Defendant Dent, in the presence of Derek Antol's attorney, instructed Derek Antol to direct DSA II to return the phone (*id.* ¶ 8). DSA II returned to the scene and gave the phone to his father, who handed it to Dent (*id.*). Plaintiffs allege that Defendant Dent also seized a DVR from Deuces Wild (Compl. ¶ 30, ECF No. 1 at PageID.4).

That same day, July 9, 2014, Defendants Bringedahl, Trucks and Kutches were in front of Plaintiff Derek Antol's Green Creek residence awaiting the arrival of a search warrant (JSMF ¶ 9). While waiting for the search warrant, the officers encountered a man coming from the residence and walking toward a barn (*id.* ¶ 10). Upon questioning, the man said he was an electrician working for Derek Antol (*id.*). He further stated he "did not know" whether anyone else was in the house (*id.*). Based on this information, Bringedahl contacted Straus, who was then a detective sergeant with the Muskegon Police Department, and Straus requested the officers to enter the home to "secure the residence prior to the search warrant" (*id.*). The manner in which the residence was

secured and the search conducted are not part of the parties' joint statement of undisputed material facts but form the crux of Plaintiffs' Complaint.

In July and August of 2014, the Muskegon County Prosecutors Office instituted three civil forfeiture actions in state court (JSMF ¶ 13).[2] The seized surveillance/security equipment and DVR were not listed as items to be forfeited (*id.*). Derek Antol received a Notice of Seizure and Intent to Forfeit made pursuant to MICH. COMP. LAWS § 333.7523 (*id.* ¶ 11). He posted bond pursuant to MICH. COMP. LAWS § 333.7523(1)(c) for the seized items (*id.* ¶ 12; Compl. ¶ 35, ECF No. 1 at PageID.4). On June 29, 2015, the parties to the forfeiture action consented to an order regarding the property seized during the execution of the search warrants (JSMF ¶ 14). Plaintiffs allege that the parties agreed that "[a]ll personal property seized from Claimant and Claimant's minor children that does not contain THC shall be returned to Claimant" (Compl. ¶¶ 38-39, ECF No. 1 at PageID.5). Plaintiffs allege that as of September 14, 2015, Plaintiff Derek Antol had received all property back except the DVR and security cameras (*id.* ¶ 50). On September 18, 2015, after conversations and email exchanges with Senior Assistant Muskegon County Prosecuting Attorney Matthew Roberts, Detective Straus authorized the destruction of the DVR (JSMF ¶ 15; Compl. ¶ 51, ECF No. 1 at PageID.6).

On July 8, 2017, Plaintiffs initiated this civil action for damages,[3] alleging the following six counts:

I. Unlawful Seizure by Destruction (42 U.S.C. § 1983–Fourth Amendment–DVR Recorder)

---

[2] Further, certain criminal marijuana charges were contemporaneously brought in state court against Derek Antol and Conklin, who pleaded guilty (Derek Antol Dep. at 20-21, ECF No. 64-2 at PageID.432-433).
[3] Plaintiffs also named the Western Michigan Enforcement Team as a defendant but subsequently stipulated to dismissing WEMET with prejudice (Order, ECF No. 45).

    II.     Unlawful Search–No Warrant (42 U.S.C. § 1983–Fourth Amendment–Green Creek–initial entry)

    III.    Unlawful Search (42 U.S.C. § 1983–Fourth Amendment–invalid warrant–N. Green Creek)

    IV.    Unreasonable Seizure/False Arrest (42 U.S.C. § 1983–Fourth Amendment–DSA)

    V.     Unreasonable Seizure (42 U.S.C. § 1983–Fourth Amendment–Green Creek–TAA)

    VI.    False Arrest (State Law–Plaintiff DSA)

In October 2018, Defendants Dent, Straus, Bringedahl and Kutches filed their Motion for Summary Judgment (ECF No. 62), to which Plaintiffs filed a response in opposition. Defendants did not file a reply. In December 2018, Defendant Trucks also filed a Motion for Summary Judgment (ECF No. 74). Plaintiffs filed a response in opposition (ECF No. 76), and Defendant Trucks filed a reply (ECF No. 77).

## II. ANALYSIS

### A. Motion Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Further, after giving notice and a reasonable time to respond, the court may grant summary judgment for a nonmovant. FED. R. CIV. P. 56(f)(1).

The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Resolution Trust Corp. v. Myers*, 9 F.3d 1548, at *2 (6th Cir. 1993) (citing *Anderson*, 477 U.S. at 249). "A dispute is genuine if there is evidence 'upon which a reasonable jury could return a verdict in favor of the non-moving party.'" *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 418 (6th Cir. 2015) (citation omitted). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52).

### B. Discussion

1. ***Count I:*** **Unlawful Seizure by Destruction (42 U.S.C. § 1983–Fourth Amendment–DVR Recorder)**

In Count I, Plaintiffs allege that Defendant Straus violated Plaintiff Derek Antol's Fourth Amendment privacy rights in destroying the DVR on December 8, 2015 (Compl. ¶ 66, ECF No. 1 at PageID.7). Plaintiffs further allege that "[n]o reasonably trained and experienced police officer would have believed that the destruction of the DVR on December 8, 2015 was lawful" (*id.* ¶ 67).

In support of summary judgment on Count I, Defendants Dent, Straus, Bringedahl and Kutches argue that the "undisputed evidence" demonstrates that Defendant Straus acted in good faith when she ordered the DVR destroyed and that she is accordingly entitled to qualified immunity (ECF No. 62 at PageID.326). Defendants argue that where Straus was acting on the instruction of the attorney handling the forfeiture case, her conduct cannot even reasonably be considered negligent; however, even if negligent, Straus is clearly entitled to qualified immunity (*id.* at PageID.328, 332).

Plaintiffs respond that the facts instead establish that Defendant Straus engaged in meaningful interference with Plaintiff Derek Antol's possessory interest in the DVR when she tossed it into an incinerator in violation of a court order and the Fourth Amendment (ECF No. 64 at PageID.367-369). Plaintiffs emphasize that the authorization for destruction (and the destruction itself) occurred after the orders were served and is therefore an unreasonable seizure (*id.* at PageID.369).

Defendants' argument does not entitle Straus to summary judgment.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). To determine whether a defendant is entitled to qualified immunity at the summary judgment stage, courts are required to engage in a two-pronged inquiry. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). The first inquiry asks whether the facts, "[t]aken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a [federal right[.]" *Id.* at 655-56 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second prong of the qualified immunity analysis asks whether the right in question was "clearly established" at the time of the violation. *Id.* at 656 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Governmental actors are "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Hope, supra*). "[T]he salient question . . . is whether the state of law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." *Id.* (quoting *Hope,* 536 U.S. at 741).

7

Courts have discretion to decide the order in which to evaluate those two prongs. *Pearson*, 555 U.S. at 236. However, "under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Cotton*, 572 U.S. at 656. "This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 249).

The Fourth Amendment provides in pertinent part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Const. Amend. IV. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Destruction of property may qualify as meaningful interference constituting a seizure under the Fourth Amendment. *Id.* at 124. Here, the Court determines that there are factual issues surrounding Defendant Straus' decision to destroy the DVR and therefore questions as to the reasonableness of the decision. Defendants have not demonstrated that the evidence is so one-sided as to entitle Defendant Straus to summary judgment on Plaintiffs' Count I against her.

2.  *Count II:* **Unlawful Search–No Warrant (42 U.S.C. § 1983–Fourth Amendment–Green Creek–initial entry)**

In Count II, Plaintiffs allege that Defendants Bringedahl, Trucks and Kutches violated the Fourth Amendment by unlawfully entering the Green Creek address before they obtained a search warrant, conducting an illegal warrantless search, and illegally seizing property (Compl. ¶¶ 70-73, ECF No. 1 at PageID.8). Further, Plaintiffs allege that on July 9, 2014, "it was clearly established that a search had to be based on a valid and judicially issued warrant or supported by probable

8

cause and a valid, recognized exception to the warrant requirement," and that "[n]o reasonably trained and experienced police officer would have believed that the entry and search of the Green Creek address on July 9, 2014 was lawful" (*id.* ¶¶ 74-75).

In support of summary judgment in their favor on Count II, Defendants Dent, Straus, Bringedahl and Kutches rely on the legal proposition that a residence may be secured to preserve evidence while a warrant is sought (ECF No. 62 at PageID.328). Defendants explain that "[g]iven the fact an occupant of the house would have seen the WEMET officers in the yard, and that the man was so vague about whether there was someone in the house, the officers made the judgment to enter the home to secure it while they waited for the arrival of the search warrant" (*id.*). Defendants concede that how long the officers were in the house before the arrival of the search warrant is "unclear," although they assert that Plaintiffs bear the burden to "avoid qualified immunity" and "will not be able to present evidence at trial that an unreasonable length of time passed" (*id.*).

In support of his motion for summary judgment on Count II,[4] Defendant Trucks argues that even if Plaintiffs could establish a civil rights violation arising from Trucks' participation in the search of the Green Creek residence, despite the de minimis nature of Trucks' alleged violation and the lack of any "personal knowledge" to refute Trucks' affidavit, Defendant Trucks is entitled to qualified immunity as he did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known (ECF No. 75 at PageID.638-643).

---

[4] Defendant Trucks does not expressly identify the counts to which his motion is directed. While Plaintiffs reference Defendant Trucks in Counts II, III, IV and VI of their Complaint, Defendant Trucks indicates that his motion is intended to address "the main claim being made against Michigan State Trooper Casey Trucks[:] that when he was alone in a bathroom, at Plaintiffs' residence, he searched in an area that a person could not have been hiding in anticipation of a search warrant" (ECF No. 75 at PageID.637), which are the allegations contained in Count II.

9

In response, Plaintiffs argue that the police cannot justify a search on what they do not know and that Defendants in this case did not have information that was either "real" or "immediate" or that could lead to the conclusion that destruction of evidence would "certainly occur" (ECF No. 64 at PageID.369-375). Plaintiffs assert that there is a factual dispute among Defendants as to whether Defendant Straus was even consulted and there is a factual dispute as to whether Defendant Bringedahl entered the dwelling (*id.* at PageID.375).

Specific to Defendant Trucks' motion, Plaintiffs respond that while Defendant Trucks in his affidavit denies looking into any space where a person could not hide, DSA II attests that he could hear Defendant Trucks opening cabinet doors and a closet door in the bathroom, places that were not large enough to hold a person (ECF No. 76 at PageID.674; DSA II Aff., ECF No. 76-1). Plaintiffs argue that DSA II's reliance on his sense of hearing and his own observation and recollection is perfectly admissible under the law (ECF No. 76 at PageID.679-680).

Defendants' arguments do not entitle them to summary judgment.

"Searches of the home must be reasonable." *Johnson v. City of Memphis*, 617 F.3d 864, 867 (6th Cir. 2010). "This reasonableness requirement generally requires that police obtain a warrant based upon a judicial determination of probable cause prior to entering a home." *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003) (citation omitted). A police officer's entry into a home without a warrant is "presumptively unreasonable" under the Fourth Amendment. *Thornton v. City of Columbus*, 727 F. App'x 829, 834 (6th Cir. 2018).

Warrantless entries are permitted, however, where "exigent circumstances" exist. *Thornton, supra.* Exigent circumstances exist where there are "'real immediate and serious consequences' that would certainly occur were a police officer to 'postpone[ ] action to get a warrant.'" *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (quoting *Welsh v.*

*Wisconsin*, 466 U.S. 740, 751 (1984)). "The relevant inquiry is whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed." *Id.* Three types of circumstances have traditionally been found to constitute exigent circumstances: "(1) when the officers were in hot pursuit of a fleeing suspect; (2) when the suspect represented an immediate threat to the arresting officers and public; (3) when immediate police action was necessary to prevent the destruction of vital evidence or thwart the escape of known criminals." *Id.* (citation omitted). "[I]n a case where the underlying facts are essentially undisputed, and where a finder of fact could reach but one conclusion as to the existence of exigent circumstances, the issue may be decided by the trial court as a matter of law." *Ewolski, supra* (citation omitted). However, "the determination of exigent circumstances is normally a question for the jury." *Id.*

Here, the Court determines that the issue of exigent circumstances may not properly be decided as a matter of law in this case. The "critical question in determining the appropriate standard of culpability is whether the circumstances allowed the state actors time to fully consider the potential consequences of their conduct." *Ewolski*, 287 F.3d at 510 (internal quotation marks omitted). Particularly given the uncertain time frames, Defendants have not demonstrated that the evidence in this case is so one-sided as to support the legal conclusion that exigent circumstances justified the manner in which the residence was secured. Again, under either prong of the qualified immunity analysis, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. *Cotton*, 572 U.S. at 656. In short, the Court also denies Defendants summary judgment on Plaintiffs' Count II.

3.   *Count III:*  Unlawful Search (42 U.S.C. § 1983–Fourth Amendment–invalid warrant–N. Green Creek)

In Count III, Plaintiffs allege that the search of the Green Creek residence violated their Fourth Amendment privacy rights where the allegations in Dent's affidavit "fail to establish probable cause that evidence of any criminal activity was ongoing on July 9, 2014 at the Green Creek address" (Compl. ¶¶ 78-89, ECF No. 1 at PageID.9-10).

In support of summary judgment in their favor on Count III, Defendants Dent, Straus, Bringedahl and Kutches argue that Count III "springs from the false conclusion that the original search warrant pertaining to Deuces Wild and the marijuana operation was somehow illegal and invalid" (ECF No. 62 at PageID.329).

In response, Plaintiffs argue that the affidavit does not demonstrate probable cause where the information Dent provided concerning marijuana sales in June 2013 is stale and the tobacco tax team inspectors were not lawfully present to make their observations in July 2014 (ECF No. 64 at PageID.376-384).  Plaintiffs also argue that the officers could not, in good faith, rely on the warrant where the affiant mischaracterized case law and omitted facts critical to the probable-cause finding, such as facts about caregiver status, the quantities of marijuana, and the attempts to buy marijuana that were rejected (*id.* at PageID.384-386).

Defendants' argument does not entitle them to summary judgment.

Under the Fourth Amendment, a search warrant may be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the ... things to be seized." U.S. Const. amend. IV.  Probable cause exists if "the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018).  If a search warrant does not comply with the

probable-cause requirements of the Fourth Amendment, 42 U.S.C. § 1983 provides a civil remedy for those whose constitutional rights were violated. *Id.* "In a § 1983 action, it is generally the jury's role to determine whether probable cause supported issuance of a search warrant." *Id.* A district court therefore should grant a defendant's motion for summary judgment on the basis that a search warrant was supported by probable cause "only when the only 'reasonable determination' that a jury could make is that probable cause existed." *Id.* (citation omitted). *See also Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005) ("[T]he facts underlying probable cause, if in dispute, must be submitted to a jury.").

Defendants have not demonstrated that the record in this case supports the conclusion that the "only reasonable determination" that a jury could make is that probable cause existed. Rather, as pointed out by Plaintiffs, factual disputes underlying the probable-cause finding preclude entry of summary judgment in Defendants' favor on Plaintiffs' Count III.

4. *Count IV:* **Unreasonable Seizure/False Arrest (42 U.S.C. § 1983–Fourth Amendment–DSA)**

In Count IV, Plaintiffs allege that Defendants Bringedahl, Trucks, Kutches, and Straus, without a reasonable, articulable suspicion or probable cause to detain or arrest Plaintiff DSA, "ordered Plaintiff DSA from his bedroom at gunpoint, restricted his movements, and detained him while waiting for the search warrant to arrive" (Compl. ¶¶ 95-101, ECF No. 1 at PageID.11-12). Plaintiffs allege that as of July 9, 2014, "it was clearly established law that law enforcement officers who detain, arrest or cause the arrest of citizens without probable cause are violating the Fourth Amendment of the United States Constitution" (*id.* ¶ 102).

In support of summary judgment in their favor on Count IV, Defendants Dent, Straus, Bringedahl and Kutches argue that Count IV is "so specious as to border on frivolous" (ECF No.

62 at PageID.330). Defendants argue that "handcuffing of persons at the searched premises is constitutionally reasonable" (*id.*).

In response, Plaintiffs argue that "[t]he use of two firearms aimed at a sleepy 13-year-old child is unreasonable" and that "[t]ransporting a person from where they are found can also result in an arrest" (ECF No. 64 at PageID.387).

Defendants' argument does not entitle them to summary judgment.

"A 'seizure' occurs when police detain an individual under circumstances where a reasonable person would not feel free to leave." *Marcilis v. Twp. of Redford*, 693 F.3d 589, 602 (6th Cir. 2012) (citation omitted). Courts assess the reasonableness of a seizure of an individual based on the totality of the circumstances. *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 9-10 (1985)). Further, courts must assess each officer's liability individually and based on the officer's own actions. *Crawford v. Geiger*, 656 F. App'x 190, 198 (6th Cir. 2016).

In *Michigan v. Summers*, 452 U.S. 692 (1981), the Supreme Court recognized that the execution of a warrant to search for drugs "may give rise to sudden violence or frantic efforts to conceal or destroy evidence." *Id.* at 702-03. The Supreme Court held that "[i]f the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home." *Id.* at 704-05. Thus, for Fourth Amendment purposes, "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Id.* at 705. Additionally, the Supreme Court subsequently held that "[i]nherent in *Summers*' authorization to detain an occupant of the place to be searched is the

authority to use reasonable force to effectuate the detention." *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005).

Here, however, the facts underlying both the probable cause in support of the warrant and the propriety of the search before the warrant even arrived are not well established. Consequently, the Court is not persuaded that Defendants' argument based on the authorization in *Summers* offers a proper basis for summary judgment in their favor on Count IV. Further, the facts surrounding the circumstances of DSA's detainment and each individual officer's role are not well established. "[T]he fact that it is sometimes reasonable to use handcuffs and guns when detaining suspects does not support Defendants' argument that the amount of force used in this case was objectively reasonable. Whether an exercise of force is excessive will vary depending on the facts and circumstances of the specific case." *Binay v. Bettendorf*, 601 F.3d 640, 649-50 (6th Cir. 2010). *See also Muehler,* 544 U.S. at 100 (noting that the search at issue was "no ordinary search" but "an inherently dangerous situation" that involved a search for weapons at the residence of a wanted gang member and the need to detain multiple occupants). Here in particular, the age and compliance of detainees are factors that may affect the balancing of these interests. *Thornton v. Fray*, 429 F. App'x 504, 509 (6th Cir. 2011). In sum, Defendants have not demonstrated that they are entitled to summary judgment on Plaintiffs' Count IV.

5.     *Count V:* **Unreasonable Seizure (42 U.S.C. § 1983–Fourth Amendment–Green Creek–TAA)**

In Count V, Plaintiff alleges that Defendant Dent, without probable cause, court order, or a valid exception to the warrant requirement, seized TAA's phone on July 9, 2014 in violation of TAA's clearly established Fourth Amendment privacy rights (Compl. ¶¶ 107-21, ECF No. 1 at PageID.12-13).

In support of summary judgment in their favor on Count V, Defendants Dent, Straus, Bringedahl and Kutches argue, with no citation to case law, that Count V is "baseless" where the search warrant authorized the seizure of cell phones (ECF No. 62 at PageID.331).

In response, Plaintiffs agree that "[t]here is no question that the warrant allowed seizure of cellular telephones," but Plaintiffs argue that "the inclusion of items to be searched for and seized must be supported by probable cause contained within the affidavit for the warrant" (ECF No. 64 at PageID.388).  Plaintiffs opine that "the warrant could not have possibly contemplated a cellular telephone owned and used by Tryston Antol that was not at the scene when the warrant was prepared or at any time relevant to the allegations in the affidavit" (*id.*).  Plaintiffs assert that the phone had "absolutely no investigative value" and was "not within the scope of this warrant" (*id.* at PageID.389).

Defendants' argument does not entitle them to summary judgment.

The Fourth Amendment provides in pertinent part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Const. Amend. IV.  "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more."  *Horton v. California*, 496 U.S. 128, 140 (1990).  Defendants' brief argument does not address— let alone demonstrate—whether the seized phone is reasonably related to the offense that formed the basis for the search warrant.  Defendants have not demonstrated that they are entitled to summary judgment on Plaintiffs' Count V.

6.      *Count VI:*  **False Arrest (State Law–Plaintiff DSA)**

Last, in Count VI, Plaintiff alleges that Defendants Bringedahl, Trucks, Kutches, and Straus, without probable cause, court order, or a valid exception to the warrant requirement, arrested or detained Plaintiff DSA on July 9, 2014 in violation of DSA's rights under the Fourth Amendment and state law (Compl. ¶¶ 125-27, ECF No. 1 at PageID.14).

In support of summary judgment in their favor on Count VI, Defendants Dent, Straus, Bringedahl and Kutches argue that Count VI "fails" where it also "stems from the contention that the original search warrants were unlawful and invalid" and the "erroneous belief that the only time an officer may ever detain someone, even for only a few moments, is when the officer reasonably believes the detained person is guilty of a crime" (ECF No. 62 at PageID.331). Defendants emphasize that probable cause existed in this case in support of both the search of the premises and the temporary detainment of DSA (*id.* at PageID.332).

Plaintiffs respond that "Defendants Bringedahl and Kutches cannot justify the legality of the circumstances in which they held DSA [] at gunpoint, removed him from his bed, removed him from his home, and controlled his movements until a parent retrieved him.  He had every right to remain in his home unmolested by the officers until the warrant arrived (assuming it was valid)" (ECF No. 64 at PageID.389-390).

Defendants' argument does not entitle them to summary judgment.

"False arrest or imprisonment is arrest or imprisonment (1) of a person (2) who is innocent of the charge on which he is arrested (3) by the defendant or at his instigation (4) without legal justification."  *Lewis v. Farmer Jack Div., Inc.*, 327 N.W.2d 893, 901 (Mich. 1982).  *See also Walsh v. Taylor*, 689 N.W.2d 506, 513-14 (Mich. Ct. App. 2004) (discussing false imprisonment).

Defendants' argument again rests on the legality of a detainment incident to the search, without close examination of the quality of the evidence that would support judgment as a matter

of law on the claim in Count VI. Like the analysis of Defendants' argument regarding the reasonableness of the seizure claimed in Count IV, whether it was legally justifiable to detain DSA while Defendants searched his home is intertwined with the facts surrounding the probable cause underlying the warrant, the propriety of the officers' warrantless entry, and the extent and manner of the detainment. *Cf. Summers*, 452 U.S. at 701 ("Of prime importance in assessing the intrusion is the fact that the police had obtained a warrant to search respondent's house for contraband."). Defendants have simply not demonstrated that they are entitled to summary judgment on Count VI.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Dent, Straus, Bringedahl and Kutches' Motion for Summary Judgment (ECF No. 62) is DENIED.

**IT IS FURTHER ORDERED** that Defendant Trucks' Motion for Summary Judgment (ECF No. 74) is DENIED.

**IT IS FURTHER ORDERED** that the parties shall, not later than August 8, 2019, file a Joint Notice indicating either

(1) the parties are negotiating a resolution of this case, including a proposed deadline for completion of negotiations; or

(2) the parties formally request Alternative Dispute Resolution (ADR), including the specific form of ADR and a proposed deadline for completion.

Dated: July 11, 2019                                   /s/ Janet T. Neff
                                                                           JANET T. NEFF
                                                                           United States District Judge